# 25-2079 (L), 25-2250 (CON)

**In the United States Court of Appeals for the Second Circuit**

SOROBAN CAPITAL PARTNERS LP &
SOROBAN CAPITAL PARTNERS GP LLC TAX MATTERS PARTNER,

*Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

On Appeal from the United States Tax Court
Case Nos. 16217-22 & 16218-22

**BRIEF OF AMICUS CURIAE MANAGED FUNDS ASSOCIATION IN SUPPORT OF PETITIONERS-APPELLANTS AND REVERSAL**

*Counsel information on inside cover*

Richard A. Husseini, P.C.
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600

David W. Foster, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
david.foster@kirkland.com

JoAnne Nagjee
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Counsel for Amicus Curiae Managed Funds Association*

## DISCLOSURE STATEMENT

Amicus Curiae Managed Funds Association is a corporation incorporated in the State of Illinois that is described in Internal Revenue Code section 501(c)(6).

Managed Funds Association has no parent corporation, and no publicly held corporation holds 10% or more of its stock.

/s/ David W. Foster, P.C.
David W. Foster, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

# TABLE OF CONTENTS


I. Interest of *Amicus Curiae* .......... 1

II. Summary of Argument .......... 2

III. Argument .......... 7

- A. Congress quashed an abuse of the Social Security system by broadly disqualifying limited partnership income from benefits calculations, and Congress simultaneously made a conforming amendment to the Internal Revenue Code .......... 7
- B. Contemporaneous administrative interpretations confirm that the term “limited partner” turns solely on the existence of limited liability under state law .......... 12
- C. Efforts to amend the SECA taxation rules, as well as court decisions and IRS materials, confirm the plain language meaning of the Social Security Amendments of 1977 .......... 20
- D. The IRS audit campaign and the Tax Court’s decision conflict with the statute .......... 29

IV. Conclusion .......... 33

Certificate of Service .......... 34

Certificate of Compliance .......... 35

Exhibits A-F .......... Exs-1 – Exs-19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquilino v. United States*, 363 U.S. 509 (1960) .......... 32

*Bittner v. United States*, 598 U.S. 85 (2023) .......... 19, 20

*Comm'r v. Estate of Bosch*, 387 U.S. 456 (1967) .......... 32

*Comm'r v. Tower*, 327 U.S. 280 (1946) .......... 30

*Comm'r v. Culbertson*, 337 U.S. 733 (1949) .......... 31

*Johnson v. Comm'r*, 60 T.C. 829 (1973) .......... 11

*Johnson v. Comm'r*, T.C. Memo. 1990-461 .......... 28

*Morgan v. Comm'r*, 309 U.S. 78 (1940) .......... 32

*Perry v. Comm'r*, T.C. Memo. 1994-215 .......... 28

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) .......... 3, 18

*Mohasco Corp. v. Silver*, 447 U.S. 807 (1980) .......... 10

*Renkemeyer, Campbell & Weaver, LLP v. Comm'r*, 136 T.C. 137 (2011) .......... 29

*Schofield v. Saul*, 950 F.3d 315 (5th Cir. 2020) .......... 17

*United States v. Centennial Sav. Bank FSB*, 499 U.S. 573 (1991) .......... 11

*United States v. Woods*, 571 U.S. 31 (2013) .......... 6

### Statutes and Regulations

20 C.F.R. § 404.1002(a) .......................................................................... 16

20 C.F.R. § 404.1080(b)(3) ................................................................ 15, 16

26 U.S.C. § 701 ........................................................................................ 4

26 U.S.C. § 707(c) ............................................................................. 9, 10

26 U.S.C. § 761(a) .................................................................................. 31

26 U.S.C. § 761(b) .................................................................................. 31

26 U.S.C. § 1402(a)(10) ............................................................................ 9

26 U.S.C. § 1402(a)(13) ..........................................1, 5, 7, 10, 20-25, 27-30

26 U.S.C. § 3797(2) (1939) ..................................................................... 31

26 U.S.C. § 7701(a)(2) ............................................................................ 31

42 U.S.C. § 411(a)(9) ................................................................................ 9

42 U.S.C. § 411(a)(12) .................................................................. 8, 15, 21

Social Security Amendments of 1977,
Public Law No. 95-216, 91 Stat. 1509
.................................................. 2- 3, 5, 8, 10-12, 14, 20, 24, 28, 30-31

### Other Authorities

American Jobs and Closing Tax Loopholes Act, H.R. 4213,
111th Cong. (2010) ................................................................................ 22

Antonin Scalia & Bryan A. Garner, READING LAW: THE
INTERPRETATION OF LEGAL TEXTS (2012) ...................................... 10, 11

Definition of Limited Partner for Self-Employment Tax
Purposes, 62 Fed. Reg. 1702 (Jan. 13, 1997) ..................................... 25

Department of the Treasury, Internal Revenue Service, 1975 Instructions for Form 1065, U.S. Partnership Return ............................................ 13, Exs-8-Exs-9

Department of the Treasury, Internal Revenue Service, 1976 Instructions for Form 1065, U.S. Partnership Return .................................................. 13, Exs-5-6

Department of the Treasury, Internal Revenue Service, 1977 Instructions for Form 1065, U.S. Partnership Return ............................................... 13, Exs-11-13

Department of the Treasury, Internal Revenue Service, 2021 Instructions for Form 1065, U.S. Partnership Return....................... 30

Department of the Treasury, Internal Revenue Service, Publication 533, Information on Self-Employment Tax, 1978 Edition, For Use in Preparing 1977 Returns.......... 14, Exs-15-16

Department of the Treasury, Internal Revenue Service, Publication 533, Information on Self-Employment Tax, 1979 Edition, For Use in Preparing 1978 Returns.......... 14, Exs-18-19

Don G. Campbell, "Make Your Money Work," New York Daily News (Dec. 26, 1973) ....................................8, Exs-2

Federal Old-Age, Survivors, and Disability Insurance; Employment, Wages, Self-Employment, and Self-Employment Income, 45 Fed. Reg. 20,074 (March 27, 1980)............................................... 16

Health Security Act, H.R. 3600, 103d Cong. § 7141 (1993).................... 21

H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819 (June 27, 1997)................................................................... 26, 27

H.R. Rep. No. 95-702, pt. I (1977)............................................... 4, 6, 7, 8

IRS Announces Rollout of Five Large Business and International Compliance Campaigns (Mar. 13, 2018)........................................... 29

IRS Tech. Adv. Mem. 9110003 (Dec. 4, 1990) .......................................... 28

Kristen A. Parillo, "Tax Court Judge Explains Why Labels Don't Control in SECA Cases," 183 Tax Notes Federal 2244 (June 17, 2024) ...................................... 30

Oxford English Dictionary ............................................................................ 4

Self-Employment Tax Treatment of Members of Certain Limited Liability Companies, 59 Fed. Reg. 67,253 (December 29, 1994) ....... 24

Social Security Administration, Program Operations Manual System RS 01802.302 Limited Partnerships ................................................ 17

Social Security Administration, Program Operations Manual System RS 01802.304 Partners ................................................................... 18

Staff of the Joint Committee on Taxation, Technical Explanation of the Revenue Provisions Contained in the "American Jobs and Closing Tax Loopholes Act of 2010," For Consideration on the Floor of the House of Representatives, JCX-29-10 (May 28, 2010) ...................................... 23

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 ...................................................... 26

Theodor Schuchat, "Loophole to be plugged in Social Security Act," Boston Globe (Dec. 15, 1974) ..............................8, Exs-3

U.S. Dep't of the Treas., General Explanations of the Administration's Fiscal Year 2015 Revenue Proposals (Mar. 2014) ........................................................................... 23

U.S. Dep't of the Treas., General Explanations of the Administration's Fiscal Year 2022 Revenue Proposals (May 2021) ........................................................................... 23

## I. Interest of *Amicus Curiae*[1]

Managed Funds Association ("MFA") has more than 180 member fund managers (151 of which have offices in this judicial circuit), including traditional hedge funds, credit funds, and crossover funds. Member firms help pension plans, university endowments, charitable foundations, and other institutional investors to diversify their investments, manage risk, and generate attractive returns over time.

Many of MFA's members are organized as limited partnerships and are, like Appellants in this case, subject to the IRS's audit campaign with respect to the exclusion from net earnings from self-employment of the distributive share of income or loss of limited partners in Internal Revenue Code section 1402(a)(13).[2]

---

[1] This brief is submitted under FED. R. APP. P. 29(a) with the consent of all parties. Undersigned counsel certify that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amicus curiae* and its counsel have contributed money for this brief.

[2] The Internal Revenue Code (the "Code") is codified in Title 26 of the United States Code.

## II. Summary of Argument

In the Social Security Amendments of 1977, Congress made two parallel, identical commands in adjacent subsections: "the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments . . . for services actually rendered to or on behalf of the partnership" must be excluded from the definition of "net earnings from self-employment." *Compare* Social Security Amendments of 1977, Public Law No. 95-216, 91 Stat. 1509, 1535, § 313(a) (amending the Social Security Act to exclude limited partnership income from Social Security Act coverage), *with id.* at 1536, § 313(b) (amending the Code to exclude the same income from self-employment taxation).

As detailed below, Congress issued these commands to limit the self-employment income that could be used to qualify for social security benefits. Consistent with its longstanding practice of maintaining parallel treatment between qualifying self-employment income and income subject to self-employment tax, Congress also excluded the same income from Self-Employment Contributions Act ("SECA") taxation.

The Supreme Court recently clarified that "statutes, no matter how impenetrable, do—in fact, must—have a single, best meaning." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266 (2024). Appellants explain why, based on the plain text, the words "limited partner" in the Social Security Amendments of 1977 must be construed to refer to a state law limited partner. The Tax Court erred in holding that the words "limited partner, as such" in the statute require a "functional analysis"—which the court suggested should focus on whether the partner was acting as a true "passive investor" or was instead "a partner who is limited in name only"—even where the partner is indisputably a limited partner under state law. Appellants' Brief SA12.

The Tax Court's judge-made functional analysis test is atextual and relies on a mistaken reading of the words "as such." Contrary to the Tax Court's contention that those words limit the definition of limited partner to one who is "functioning" as a "passive investor," *id.*, the phrase "as such" plays an important role in avoiding statutory ambiguity: Because an individual can hold both a general partner interest and a limited partner interest in the same partnership (a fact

that the Ways and Means Committee explicitly underscored in its report on the legislation), without the words "as such," the statutory text would be ambiguous with respect to coverage of that individual's general-partner share. The words "as such" therefore ensure that "if a person is both a limited partner and a general partner in the same partnership, the distributive share received as a general partner would continue to be covered." H.R. Rep. No. 95-702, pt. I, at 40 (1977). "As such" thus means "in the capacity of" the preceding noun.[3]

MFA submits this brief to provide additional history and context regarding the statutory provisions at issue. For almost fifty years, the plain text of the statute has been understood to exempt from both social security benefits and from SECA taxation the distributive share of income allocated to a partner with limited liability under state law (other than guaranteed payments for services actually rendered),

[3] This is consistent with its meaning in common speech as well as other uses of the phrase "as such" in the Code. *See, e.g.*, Oxford English Dictionary (defining "As such" to mean "As being what the name or description implies; in that capacity"), http://www.oed.com/search/dictionary/?scope=Entries&q=as%20such; Code § 701 ("A partnership *as such* shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." (emphasis added)).

regardless of whether the partner provides services to the partnership and is not merely a passive investor. This well-settled understanding is informed by the provision's context in the Social Security Amendments of 1977, its purpose and legislative history, and contemporaneous interpretations by both the IRS and the Social Security Administration ("SSA"). Moreover, this understanding of the statute has been embraced consistently over the years by Congress, the Treasury Department, the IRS, the SSA, and federal courts.

Should Congress wish to amend the balance it struck between social security and SECA for limited partnership income, Congress has ample authority to do so. The IRS, however, has no such authority. Nevertheless, decades after the 1977 legislation that enacted section 1402(a)(13), the IRS sought to rewrite the phrase "limited partner, as such" for SECA tax purposes to exclude limited partners who provide services to the partnership. The IRS did not do so by asking Congress to amend the statute, or even by working with Treasury and the SSA to promulgate parallel new regulations. Instead, in 2018, it announced a unilateral audit campaign (euphemistically, a "compliance campaign") and thereafter (during this litigation) quietly amended the decades-old

definition of "limited partner" in the instructions for the partnership tax return, IRS Form 1065, to support the novel IRS audit and litigation position.

Following years of audits, administrative appeals, and litigation, the Tax Court, relying on arguments about the words "as such" not advanced by either party, asserted that (for SECA tax purposes) Congress intended for a "limited partner, as such" to "refer to passive investors." Appellants' Brief SA12.[4]

The IRS's audit campaign and the Tax Court's statutory construction have injected substantial and unnecessary uncertainty into the tax system for MFA's members and numerous other small, mid-size and large businesses operating as limited partnerships, with thousands

[4] The Summary section of the House Report states that the purpose of the provision "is to exclude for coverage purposes certain earnings which are basically of an investment nature," H.R. Rep. No. 95-702, pt. I, at 11 (1977), and the description in the House Report (at 40-41) reflects that Congress accomplished this purpose by excluding coverage for the distributive share of all limited partners, not just passive investors, contradicting the Tax Court's conclusion to the contrary. Of course, regardless of what the legislative history suggests, it cannot override the plain text of the statute. *See, e.g.*, *United States v. Woods*, 571 U.S. 31, 46 n.5 (2013) ("Whether or not legislative history is ever relevant, it need not be consulted when, as here, the statutory text is unambiguous.").

of individual owners, in a wide variety of industries, including local stores, manufacturing, construction and services businesses, real estate management companies, and other investment management businesses.

This Court should reverse the judgment of the Tax Court because it cannot be reconciled with the plain language, context, history, purpose, or contemporaneous administrative interpretations of the phrase "limited partner, as such."

## III. Argument

### A. Congress quashed an abuse of the Social Security system by broadly disqualifying limited partnership income from benefits calculations, and Congress simultaneously made a conforming amendment to the Internal Revenue Code

Section 1402(a)(13) originated not as a standalone tax provision defining the scope of *employment taxes*, but instead as a conforming amendment accompanying a change to *limit social security benefits* under the Social Security Act. Prior to 1977, "each partner's share of partnership income [was] includible in his net earnings from self-employment for social security purposes, irrespective of the nature of his membership in the partnership." H.R. Rep. No. 95-702, pt. I, at 40 (1977). The Ways and Means Committee "bec[a]me increasingly

concerned about situations in which certain business organizations solicit investments in limited partnerships as a means for an investor to become insured for social security benefits." *Id.* at 40-41. The solicitations were "directed mainly toward public employees whose employment is covered by public retirement systems and not by social security." *Id.* at 41[5]

To prevent government workers from double-dipping in both retirement systems, Congress broadly excluded the (non-guaranteed payment) distributive share income of all limited partners from the calculation of social security benefits. Specifically, section 313(a) of the Social Security Amendments of 1977, Public Law No. 95-216, 91 Stat. 1509, 1535, amended the Social Security Act, now codified in 42 U.S.C. § 411(a)(12), to exclude "the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments . . .

[5] Attached as Exhibit A are two newspaper articles describing this scheme. Don G. Campbell, "Make Your Money Work," New York Daily News (Dec. 26, 1973); Theodor Schuchat, "Loophole to be plugged in Social Security Act," Boston Globe (Dec. 15, 1974).

for services actually rendered" from self-employment income that could be used to qualify for social security benefits.[6]

The language and structure of this provision are clear. Congress broadly excluded limited partners' distributive shares from the calculation of social security benefits, with one explicit exception—guaranteed payments for services actually rendered. Had Congress intended to exclude only limited partners who were passive investors who provided no services to the partnership, it could and would have used words to that effect.[7] Moreover, had it done so, there would have been no need to exclude guaranteed payments, which since 1954 Congress has defined in the Code as "payments to a partner *for services* or the use of capital" that are "determined without regard to the income

---

[6] Section 313 was included in Title III, Part B of the legislation, which were entitled "Other Changes in Provisions Relating to the Old-Age, Survivors, and Disability Insurance Program," and "Coverage," respectively.

[7] In other circumstances, Congress did make the definition of net earnings from self-employment dependent on whether or not a partner had provided services to the partnership. In two parallel provisions, 42 U.S.C. § 411(a)(9) and Code section 1402(a)(10), Congress excluded from social security benefit calculations and from SECA taxation certain payments to retired partners if, among other requirements, "such partner rendered no services with respect to any trade or business carried on by such partnership."

of the partnership." Code section 707(c) (emphasis added). By definition, a partner receiving a *guaranteed payment for services* rendered to the partnership is not a mere "passive investor."

Having excluded "Certain Limited Partnership Income" from calculation of social security *benefits*, Congress proceeded in section 313(b) of the Social Security Amendments of 1977 to conform the Internal Revenue Code to exclude the same "Certain Limited Partnership Income" from the definition of net earnings from self-employment for purposes of SECA *taxation*. 91 Stat. at 1536 (now codified in Code section 1402(a)(13)).

These adjacent provisions in the same section of the statute should be construed identically. *See generally* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170-73 (2012) (discussing the Presumption of Consistent Usage and citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980), approvingly for refusing to "unreasonably giv[e] the word 'filed' two different meanings in the same section of the statute"). Moreover, reading these adjacent provisions consistently "promotes a symmetrical parallel between the social security eligibility provisions for self-employed persons and the

corresponding income tax provisions for taxing self-employed persons for social security purposes," a longstanding congressional policy recognized and adopted by the Tax Court. *Johnson v. Comm'r*, 60 T.C. 829, 833 (1973).[8]

The congressional focus on limiting social security qualification, combined with the use of identical phrasing in adjacent subsections of the statute, highlight the textual and structural problems with the Tax Court's "functional analysis test." There is no indication whatsoever in the text or structure of the Social Security Amendments of 1977 that Congress intended to allow limited partners to continue to use their limited partnership income to qualify for social security benefits as long as they could prove under a "functional analysis test" that they were acting as more than "passive investors." In fact, the text demonstrates precisely the opposite. Given the parallelism between the adjacent social security benefits and SECA taxation provisions, there is no basis

[8] The careful congressional balance between social security and SECA tax provisions makes this an inappropriate case for invocation of any interpretative canon requiring narrow construction of exclusions from income. *See United States v. Centennial Sav. Bank FSB*, 499 U.S. 573, 583 (1991) (reciting the canon); *see also* READING LAW at 359-63 (examining "[t]he false notion that tax exemptions—or any other exemptions for that matter—should be strictly construed").

for reading a "functional analysis test" into the SECA tax provision either.

### B. Contemporaneous administrative interpretations confirm that the term "limited partner" turns solely on the existence of limited liability under state law

Following the Social Security Amendments of 1977, the IRS and the SSA had twin responsibilities: The SSA was charged with excluding limited partnership income (other than guaranteed payments) from the calculation of social security benefits, and the IRS was charged with the parallel exclusion from SECA taxation. Consistent with the statute's plain text and structure, the SSA and the IRS each adopted contemporaneous interpretations of "limited partner" focused solely on whether the partner was a limited partner (*i.e.*, did it have limited liability?), a question determined solely under state law.

While the legislative proposals regarding social security coverage and SECA taxation for limited partnerships that ultimately were enacted in the Social Security Amendments of 1977 were working their way through the legislative process, the IRS published instructions for preparation of the Form 1065 for the 1976 tax year. For the first time, the annual instructions included a definition for the term "limited

partner": "A limited partner is one who may not be held responsible for partnership debts, and whose potential personal liability is confined to the amount of money or other property that the partner contributed or is required to contribute to the partnership." *See* Exhibit B (IRS Form 1065 instructions for the 1976 tax year); *see also* Exhibit C (IRS Form instructions for the 1975 tax year, which did not include a definition of "limited partner"). The Form 1065 instructions for the 1977 tax year included an identical definition. *See* Exhibit D (IRS Form 1065 instructions for the 1977 tax year). None of these annual instructions contained any suggestion that the term "limited partner" was limited to passive investors, as the IRS now contends nearly fifty years later.

The Tax Court dismissed the import of the IRS's definition of "limited partner" in various iterations of the instructions to Form 1065, stating that "this definition is provided as part of the 'General Instructions' and 'Definitions.' This is not, and does not purport to be, a definition for purposes of self-employment tax." Appellants' Brief SA14. But that is not the point. Instead, the definition reflects the IRS's contemporaneous understanding of the words "limited partner" when

the legislative proposals to create the limited-partner exception were being considered.

Moreover, other contemporaneous guidance the IRS issued solely for purposes of self-employment tax (and indeed, solely for purposes of implementing the Social Security Amendments of 1977) reinforces this understanding. The IRS's Publication 533, "Information on Self-Employment Tax," had previously instructed that "[a] limited or inactive partner will *include* the distributive share of partnership income or loss and any guaranteed payments in determining net earnings from self-employment." *See* Exhibit E (excerpts of Publication 533 for completing 1977 returns) (emphasis added).

In response to the Social Security Amendments of 1977, the IRS amended Publication 533 by adding immediately after the sentence above the instruction that "[a]fter 1977, a limited partner will *exclude* the distributive share of partnership income or loss in determining earnings from self-employment but will include only guaranteed payments, such as salary and professional fees, received for services performed by the limited partner for the partnership." *See* Exhibit F (excerpts of Publication 533 for completing 1978 returns) (emphasis in

original). This revision demonstrates that the IRS recognized three important principles. First, the terms "inactive partners" and "limited partners" do not mean the same thing. Second, limited partners can and do provide services for partnerships. And third, limited partners (not inactive partners) exclude partnership income from net earnings from self-employment.

Shortly thereafter, in 1979, the SSA proposed regulations interpreting the limited partner definition in 42 U.S.C. § 411(a)(12). The regulations, which were finalized in 1980, are consistent with the statute's plain meaning and Congress's broad approach to exclude from social security coverage the distributive share of a limited partner other than guaranteed payments for services actually rendered. The regulations state: "You are a *limited partner* if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." 20 C.F.R. § 404.1080(b)(3)

(first sentence);[9] *see also* Federal Old-Age, Survivors, and Disability Insurance; Employment, Wages, Self-Employment, and Self-Employment Income, 45 Fed. Reg. 20,074, 20,090 (March 27, 1980).

---

[9] 20 C.F.R. § 404.1080(b)(3) provides two clarifications regarding the general rule established by paragraph (b)(1). The general rule is that a partner's distributive share of the income or loss from any trade or business carried on by the partnership (other than as a limited partner) must be included in "net earnings from self-employment." The first sentence of paragraph (b)(3) provides clarity by defining limited partner: "You are a limited partner if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership." The second sentence of paragraph (b)(3)—which states: "Generally, you will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership for the taxable year involved."—clarifies that the income addressed in paragraph (b)(1) needs to be included even if not arising from personal services of the partner. Contrary to Appellee's suggestion in related litigation, the second sentence is not providing that, "Generally, [a limited partner] will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership for the taxable year involved." The term "you" is used throughout the regulation, including § 404.1080, and is defined in § 404.1002(a) to mean "any person whose earnings from employment or self-employment are included or excluded under social security." Thus, the "you" in the second sentence is the same person being addressed throughout paragraph (b)—a member of a partnership that is carrying on a trade or business, as first referenced in paragraph (a)(2) of the regulation, not a limited partner. Also, the words "Generally" and "will not have to perform services" indicate precisely the opposite of what Appellee has suggested—namely, that a partner may (and, indeed, usually will) perform services and participate in the control of the business.

This contemporaneous SSA regulation confirms that the statutory definition of "limited partner" turns on whether the partner's financial liability is limited to the amount of the investment in the partnership, a question determined solely under state law.

Sub-regulatory guidance from the SSA provides further confirmation that the relevant inquiry under the statute for whether someone is a "limited partner" is whether that partner has limited liability under state law. Since at least 1990, the SSA's Program Operations Manual System (the "POMS")—which provides guidance to the SSA employees charged with administering the social security system—has addressed the limited partner exception.[10] The guidance reinforces the reliance on state law definitions of limited liability. First, the POMS explains that "[a] limited partnership is created in accordance with State statutory requirements." *See* RS 01802.302 Limited Partnerships, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802302. Next, it explains that SSA employees should "[r]equest a

[10] This manual "is the operational reference used by SSA staff to conduct SSA's daily business." *See* https://secure.ssa.gov/apps10/poms.nsf/Help?readform. The manual is a "subregulatory-guidance document." *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020).

copy of the certificate of registration when there is a question as to whether someone is a limited partner." *See id.* Finally, it rejects the notion that a limited partner must be a mere passive investor: "The terms 'silent partner' and 'inactive partner' are sometimes confused with limited partner. They are not the same." RS 01802.304 Partners, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802304. The POMS thus directly refutes the Tax Court's assertion that the statutory term "limited partner" must mean a passive investor who is a "silent partner" or "inactive partner."

*Loper Bright* recently explained that "due respect to Executive Branch interpretations of federal statutes . . . was thought especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." 144 S. Ct. at 2257-58. Here, IRS instructions, an SSA regulation, and the manual for SSA employees all confirm the statute's reliance on state law concepts of limited liability for determining whether a partner is a "limited partner."

This case is analogous to the situation that the Supreme Court recently confronted in *Bittner v. United States*, 598 U.S. 85 (2023). In that case, there was a question about how to interpret the statute imposing financial penalties on individuals who had engaged in non-willful non-compliance with the rules requiring disclosure to the government of ownership of foreign bank accounts. Mr. Bittner invoked a series of government pronouncements—“warnings, fact sheets, and instructions”—that were consistent with his interpretation of the statute. *Id.* at 97. Justice Gorsuch’s opinion for the Court observed that “[n]one of these representations about the law’s operation fits easily with the government’s current theory.” *See id.* The Court conceded that “the government’s guidance documents do not control our analysis and cannot displace our independent obligation to interpret the law,” but observed that “the government has repeatedly issued guidance to the public at odds with the interpretation it now asks us to adopt. And surely that counts as one more reason yet to question whether its current position represents the best view of the law.” *Id.* In response to the dissent’s complaints about its reliance on non-binding guidance that did not carry the force of law, the Court clarified:

> Our point is not that the administrative guidance is controlling. Nor is it that the government's guidance documents have consistently endorsed Mr. Bittner's reading of the law. It is simply that, when the government (or any litigant) speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one.

*Id.* at 97 n.5. The comparison between, on the one hand, the historical pronouncements from the IRS and the SSA, and, on the other, the IRS's recent compliance campaign, its current litigating position, and the Tax Court's decision reveals another instance of the government "speak[ing] out of both sides of its mouth." *Id.* MFA respectfully submits that the more recent government utterances are not the "most convincing." *Id.*

### C. Efforts to amend the SECA taxation rules, as well as court decisions and IRS materials, confirm the plain language meaning of the Social Security Amendments of 1977

Beginning in the 1990s, there were various legislative and administrative proposals to revoke or amend the exclusion from SECA taxation for certain limited partner income. These proposals confirm the contemporaneous understanding that "limited partner" in section 1402(a)(13) refers to partners with limited liability under state law.

When the Clinton Administration was formulating its health care reform proposals in 1993–94, it anticipated that the employment tax

rules for determining wages (and net earnings for self-employment of pass-through entities) would be used for purposes of determining the base for health insurance contributions. Understanding that much of the income of limited partners was excluded from net earnings from self-employment, the Clinton Administration proposed legislation that would have amended the current regime to subject non-guaranteed payments of limited partners that perform services to SECA taxation. Specifically, the Clinton Administration's proposed legislation would have replaced the words "limited partner, as such" in both 26 U.S.C. § 1402(a)(13) and 42 U.S.C. § 411(a)(12) with "limited partner who does not materially participate in the activities of the partnership." Health Security Act, H.R. 3600, 103d Cong. § 7141 (1993).[11]

In 2010, Representative Baucus and Senator Levin, the chairs of the Ways and Means Committee and Senate Finance Committee,

[11] The proposed Health Security Act would also have expanded the definition of "net earnings from self-employment" to cover an S corporation shareholder's pro rata share of income or loss under certain circumstances. H.R. 3600, 103d Cong. § 7141 (1993). To date, however, Congress has chosen not to subject to SECA taxation either such an S corporation shareholder's earnings or a limited partner's (non-guaranteed payment) distributive share of partnership income from services performed.

released a series of legislative proposals that they called the American Jobs and Closing Tax Loopholes Act. The legislation addressed the self-employment taxation of individuals engaged in professional service businesses and proposed to subject income earned from those businesses through a partnership or an S corporation to SECA taxation. *See* American Jobs and Closing Tax Loopholes Act, H.R. 4213, 111th Cong. § 413 (2010). The proposed legislation would have left Code section 1402(a)(13) intact but added a new provision (as Code section 1402(m)(2)) providing that, "[i]n the case of any partnership which is engaged in a professional service business, subsection (a)(13) shall not apply to any partner who provides substantial services with respect to such professional service business." *Id.*[12] The Joint Committee on Taxation staff's accompanying explanation states that, "Under the provision, the exclusion from SECA for a limited partner's distributive share of partnership income or loss does not apply to any partner who provides substantial services with respect to a professional service

[12] A similar rule would have applied to S corporation shareholders, and conforming amendments were proposed for the parallel SSA provisions. *Id.*

business in which the partnership is engaged."[13] Thus, the chairs and staff of the congressional tax-writing committees in 2010 understood that section 1402(a)(13) excludes a limited partner's share of partnership income from SECA and intended for that rule to continue to apply except for partners who provide substantial services to professional service businesses.

The Obama and Biden administrations also included legislative proposals to modify section 1402(a)(13) in their respective "Green Books," and Treasury identified those proposals as raising revenue as a result of the change in law.[14]

If section 1402(a)(13) were already limited to only passive investors, none of the foregoing proposals would have been necessary and they would not have raised any revenue.

---

[13] Staff of the Joint Committee on Taxation, Technical Explanation of the Revenue Provisions Contained in the "American Jobs and Closing Tax Loopholes Act of 2010," For Consideration on the Floor of the House of Representatives, JCX-29-10, p. 293 (May 28, 2010).

[14] *See* U.S. Dep't of the Treas., General Explanations of the Administration's Fiscal Year 2015 Revenue Proposals, 185, 283 (Mar. 2014); U.S. Dep't of the Treas., General Explanations of the Administration's Fiscal Year 2022 Revenue Proposals, 66–67, 105 (May 2021).

Regulations proposed in 1994 demonstrate that the Treasury Department and the IRS also shared this understanding of the meaning of "limited partner" in section 1402(a)(13). The proposed regulations were to provide guidance on the application of the exemption to limited liability companies, or "LLCs", which were not limited partnerships under state law. *See* Self-Employment Tax Treatment of Members of Certain Limited Liability Companies, 59 Fed. Reg. 67,253 (December 29, 1994). (The popularity of LLCs as a form of business organization postdated the Social Security Amendments of 1977.)

The proposed regulations provided that, "a member of an LLC will be treated as a limited partner only if – (i) The member is not a manager of the LLC, and (ii) The entity could have been formed as a limited partnership rather than an LLC in the same jurisdiction, and the member could have qualified as a limited partner in that limited partnership under applicable law." *See id.* at 67,254 (proposing a new Treas. Reg. § 1.1402(a)-18(b)). The preamble to the proposed regulations explains that "applicable law" is the relevant state partnership law; that one objective of the proposed regulation "is to make clear that a business operating through an LLC does not obtain a

result for self-employment tax purposes that it would not be able to achieve by operating as a limited partnership"; and that a second objective is to ensure that a member of an LLC can qualify for self-employment tax benefits as a limited partner only if it could have qualified as a limited partner under applicable state law if the entity had been organized as a limited partnership. *Id.* at 67,253-54. Thus, the proposed regulations reflected Treasury's and the IRS's understanding that state partnership law determines whether a member is a "limited partner, as such" for purposes of Code section 1402(a)(13).

In 1997, the Treasury Department and the IRS withdrew the 1994 proposed regulations and proposed new regulations that consciously departed from "[s]tate law characterizations of an individual as a 'limited partner' or otherwise," and, for the first time, sought to adopt a test applicable to all types of entities that expressly aimed to define a limited partner under section 1402(a)(13) "regardless of the state law characterization of the entity." Definition of Limited Partner for Self-Employment Tax Purposes, 62 Fed. Reg. 1702, 1703 (Jan. 13, 1997).

In response, Congress enacted a moratorium on the Treasury Department's ability to finalize the proposed regulations before July 1, 1998. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 935, 111 Stat. 788, 882. In connection with that moratorium, the Senate adopted a "Sense of the Senate Resolution" that the Treasury Department should withdraw the proposed regulations and that, "Congress, not the Department of the Treasury or the Internal Revenue Service, should determine the tax law governing self-employment income for limited partners," because "the Senate is concerned that *the proposed change in the treatment of individuals who are limited partners under applicable State law exceeds the regulatory authority of the Treasury Department* and would effectively change the law administratively without congressional action;" and "the proposed regulations address and raise significant policy issues and the proposed definition of a limited partner may have a substantial impact on the tax liability of certain individuals and may also affect individuals' entitlement to social security benefits." H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819 (June 27, 1997).

The Tax Court dismissed the import of Congress's moratorium by noting that the proposed regulations "had several criteria that might have led to a limited partner's earnings' being subject to self-employment tax, even if the person was a passive investor" such as "merely being personally liable for partnership debts." Appellants' Brief SA13. But this criterion simply restated the rule in the statute—*i.e.*, a person cannot be a "limited partner" under section 1402(a)(13) if he is personally liable for the partnership's debts. Thus, Congress could not have been referring to this part of the proposed regulations as the basis for its moratorium because it in no way "would effectively change the law." The other criteria in the proposed regulations were (a) having the authority to contract on behalf of the partnership and (b) participating in the partnership's trade or business for more than 500 hours during the taxable year. Congress' objection to the proposed regulations was that excluding state law limited partners from section 1402(a)(13) on the basis of those criteria (i.e., on the basis of a limited partner providing services to the partnership) would have changed the law and exceeded Treasury's regulatory authority. *See* H.R. 2014, 105th Cong., 143 Cong. Rec. S6694, S6774, S6819 (June 27, 1997).

The Clinton health care proposals, H.R. 4213, the Obama and Biden Green Book proposals, the 1994 proposed regulations, the 1997 proposed regulations and the congressional moratorium all serve to confirm that the words "limited partner, as such" in the 1977 Social Security Amendments must be construed to mean a partner with limited liability under state law, and that a person is not excluded from the limited partner exception under section 1402(a)(13) by reason of providing services and not being merely a passive investor.

Finally, throughout this period, the IRS and the Tax Court routinely looked to state law definitions of "limited partner" to determine if a taxpayer qualified for the limited partner exception under section 1402(a)(13).[15]

[15] *See, e.g.*, *Johnson v. Comm'r*, T.C. Memo. 1990-461 (acknowledging that "limited partnerships are creatures of agreement cast in the form prescribed by state law" and holding that the taxpayer—despite being a passive investor—was not a limited partner because she "did not take the necessary steps to comply with Texas law"); *Perry v. Comm'r*, T.C. Memo. 1994-215 (holding that the taxpayer was not a limited partner notwithstanding the "nature of his interest" because "[s]tate law requires that certain formalities be observed to create a limited partnership," and that "[t]here is no evidence of such formalities having been observed"); IRS Tech. Adv. Mem. 9110003 (Dec. 4, 1990) (holding that because taxpayer had failed to comply with state law filing requirements for limited partnership, the taxpayer was not a limited partner under section 1402(a)(13)).

### D. The IRS audit campaign and the Tax Court's decision conflict with the statute

To our knowledge, from 1977 until 2018, there were no congressional, judicial, or administrative developments questioning the understanding that "limited partner, as such" in section 1402(a)(13) means a limited partner under state law and that a person is not excluded from the limited partner exception by reason of providing services and not being merely a passive investor.[16]

In 2018, the IRS launched the audit campaign that led to this appeal. The IRS announced the new campaign on its website and thereafter (during this litigation) amended the longstanding definition of limited partner in the instructions for partnership tax returns, Form 1065. *See* IRS Announces Rollout of Five Large Business and International Compliance Campaigns (Mar. 13, 2018), http://www.irs.gov/businesses/irs-lbi-compliance-campaigns-mar-13-2018; IRS, *Instructions for Form 1065*, at 3, 39 (2021),

[16] In *Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137 (2011), the Tax Court asked a separate question related to section 1402(a)(13)—should the exclusion for limited partners in that provision be extended to taxpayers who are not state-law limited partners, such as members of a limited liability partnership? It is not relevant here, where the taxpayer is a limited partner under state law.

http://www.irs.gov/pub/irs-prior/i1065--2021.pdf (adding new language in the "limited partner" definition in the 2021 instructions stating, "However, whether a partner qualifies as a limited partner for purposes of self-employment tax depends upon whether the partner meets the definition of a limited partner under section 1402(a)(13).").

The IRS's audit campaign caused significant uncertainty for limited partners who had long relied on the plain text of the Social Security Amendments of 1977 to understand that their distributive share of limited partnership income neither counted for calculating social security benefits nor subjected them to SECA taxation.

In remarks at the Texas Federal Tax Institute, the author of the Tax Court decision purported to offer additional defenses of the opinion against some of these criticisms. *See* Kristen A. Parillo, "Tax Court Judge Explains Why Labels Don't Control in SECA Cases," 183 Tax Notes Federal 2244 (June 17, 2024). According to the press report, the author asserted that taxpayers were arguing that "when we label somebody a limited partner, you can't question that." *Id.* at 2244-45. He invoked two Supreme Court cases, *Commissioner v. Tower*, 327 U.S.

280 (1946), and *Commissioner v. Culbertson*, 337 U.S. 733 (1949), which hold that federal courts must look past labels to determine whether an arrangement is a bona fide partnership and the purported members bona fide partners for purposes of the Code. However, then (as now) the Code contained detailed definitions of "partnership" and "partner" that are not dependent upon state law status. *See* Code § 3797(2) (1939), now codified at Code § 7701(a)(2); *see also* Code § 761(a) and (b).

No one questions the bona fides of the partnership or the partners in this case; nor does anyone question the Tax Court's ability to probe those bona fides. The Tax Court's author's references to "labels" misunderstand the arguments here. The taxpayer's argument here is not about labels. Instead, the argument is that in the Social Security Amendments of 1977, for purposes of both social security benefits and SECA taxation, Congress made federal law dependent on a concept that is a pure creature of state statutory law—"limited partner," and did not provide a federal tax law definition of "limited partner".

Congress legislated into a framework developed decades earlier by the Supreme Court: State law determines whether, and to what extent, a taxpayer has "property" or "rights to property" subject to taxation,

and federal law determinates how the property is taxed. *Aquilino v. United States*, 363 U.S. 509 (1960); *Morgan v. Comm'r*, 309 U.S. 78 (1940). Moreover, the Supreme Court explained in *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967), that where "the underlying substantive rule involved is based on state law," "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* at 465.

A partner's status as a limited partner is a property right created by state law. Congress has neither provided for creation of limited partnerships under federal law, nor has it adopted a federal definition of the term "limited partner" (as it has done for "partnership" and "partner" more generally). Instead, Congress supplied an "underlying substantive rule" that "is based on state law" by making an exclusion from federal social security benefits entitlement and corresponding SECA taxation contingent on a status which exists solely under state law—"limited partner" status. The Tax Court's task here was to determine whether, under state law, Soroban Capital Partners LP's individual limited partners had that status. The parties do not dispute that they did.

## IV. Conclusion

For the foregoing reasons, the Court should reverse the Tax Court.

December 15, 2025

Respectfully submitted,

/s/ David W. Foster, P.C.

David W. Foster, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
david.foster@kirkland.com

Richard A. Husseini, P.C.
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3600

JoAnne Nagjee
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000

*Counsel for Amicus Curiae*
*Managed Funds Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the December 15, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants, resulting in service upon all counsel of record.

/s/ *David W. Foster, P.C.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 29(a)(5) because this brief contains 6,409 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ *David W. Foster, P.C.*

December 15, 2025

# Exhibit A

Don G. Campbell, "Make Your Money Work," New York Daily News (Dec. 26, 1973).

Theodor Schuchat, "Loophole to be plugged in Social Security Act," Boston Globe (Dec. 15, 1974).

# Make Your Money Work

By DON G. CAMPBELL
THE NEWS Financial Editor

**Q. There are some retired people in my area who are not eligible for Social Security—Federal government employes for example. Most of these people would like to work on their own to qualify for Social Security—if only to make them eligible for Medicare. For the past few years I have understood that an individual could arrange his investment program in a way that would make him a dealer (or whatever the nomenclature was) in stocks, thereby becoming self-employed and thus qualifying for Social Security. I have been trying to run this down for years but, alas, nobody seems to have any idea what I am talking about. My efforts to get some information on this program from Social Security have been equally unrewarding.**



A. I don't wonder at your bafflement because the strategy isn't widely known. In amending the Social Security law back in the 1950s to clarify, and broaden, the definition of "self-employed," Congress opened up a loophole and now seems to be stuck with it. The original purpose for the change in the law was to make it possible for those persons not covered by Social Security (such as Federal government employes) to get benefits, anyway, by moonlighting at a second job long enough to qualify.

Income from dividends, interest and rents doesn't make you a "moonlighter," of course, but, somewhere along the way, somebody discovered that income from a "limited partnership"—as long as the income from it amounts to at least $400 a year—does, indeed, qualify you for Social Security and Medicare once you have established the required number of quarters (a "quarter," not illogically, being four-to-the-year).

This has triggered a rash of new companies built around this approach and offering limited partnerships in a variety of ventures—the buying and leasing of oil properties being one example, and real estate syndication being another.

Essentially, it's a one-time investment—of, say, $10,000—on which you will receive a yield of at least $400 a year. Legally, this makes you a moonlighter rather than an investor and, after X number of years under the plan, you qualify for Social Security benefits.

It makes no difference whether you are already retired under some other non-Social Security plan, or whether—as a worker not covered by Social Security—you are anticipating future retirement.

How long before you qualify? Depends on your age. In the case of a worker born in 1908 and retiring in 1973, for instance, he would have to receive at least $400 a year under his limited partnership—and pay into Social Security—for 22 quarters (you have to round that out to 6 years) in order to qualify for the benefits. And $400 a year, of course, buys you only minimum Social Security coverage—currently, $84.50 a month for a single person, of $126.80 a month for a man and wife.

---

**Campbell welcomes reader mail, but can give detailed answers only in his column. He cannot accept telephone inquiries.**

# Loophole to be plugged in Social Security Act

By Theodor Schuchat
North American Newspaper Alliance

WASHINGTON — A loophole in the Social Security Act, little noticed for two decades, has finally been found by Wall Street promotors — and Congress.

The loophole is a provision in the 1950 Social Security amendments that extended coverage for the first time to self-employed persons. Limited Partners — those who merely invest a certain amount in a business — were classified as self-employed.

Four years ago, promoters began offering limited partnerships in oil and gas drilling programs and real estate investment trusts, promising purchasers they could obtain Social Security coverage without working.

It was and is true — but probably not for much longer. Under present law, if a limited partner's investment yields $400 a year, the partner will earn four quarters of Social Security coverage for that year.

Thus a limited partnership is potentially valuable to teachers, government employes and others who have no way of gaining Social Security credits.

The Social Security Administration cites as an example the case of Martin T., born July 19, 1957, who has been blind since birth. He needed only six quarters of coverage to gain eligibility for a disability benefit under Social Security.

"By an investment of $5000 he became a limited partner late in 1972. He was credited with four quarters of coverage in 1973 and four quarters of coverage in 1974 on the basis of $400 income in each year from the limited partnership," a government document reports.

"Martin became entitled to disability benefits effective this September," it continues. "Yet he has paid a total of $63.60 to gain insured status. His monthly Social Security benefit is $93.80 and as a disability beneficiary he will be covered under Medicare in 1976, two years after he began receiving benefits."

No wonder Social Security Commissioner James B. Cardwell wrote recently that "The current intense promotions of such investment activity for the purpose of gaining Social Security coverage have the potential for great inequity to those who contribute to the system through their work."

The Securities and Exchange Commission has scrutinized many limited partnership promotions. Of 40 formed since 1970, none has returned $400 a year on a $5000 investment. Only five have generated $400 a year on investment of $10,000.

The SEC now requires the literature about limited partnerships to include notification of "uncertainties of coverage under Social Security."

In effect, that is a warning to investors that both the Social Security Administration and the Treasury Department have asked Congress to plug up the limited partnership loophole in the Social Security Act.

There is still this year for Congress to add a proviso of this kind to some other piece of pending legislation. Otherwise, the loophole will almost certainly be closed early next year.

**Stop & Shop Companies Inc.** of Boston reported net income for the 12 weeks ended Nov. 9 of $3,562,000 or $1.13 a share versus $1,667,000 or 53 cents for the same period last year. Net income for the latest period includes an extraordinary gain of $1,886,000 or 60 cents a share as a result of an insurance settlement on Stop & Shop's distribution center in Readville, which was destroyed by fire in August, 1969. Sales were $293.4 million versus $247.6 million.

Net income for the 40 weeks ended Nov. 9 was $6,885,000 or $2.18 a share versus $3,881,000 or $1.23. The latest period includes the extraordinary gain. Sales were $911.6 million versus $794.8 million.

# Exhibit B

Department of the Treasury, Internal Revenue Service,

1976 Instructions for Form 1065, U.S. Partnership Return

(Form 1065 Instructions Pages 1 and 2)

(Definition of "Limited Partner" in section S "Definitions and Special Rules" in middle of far right column of Page 2)

# 1976 Department of the Treasury Internal Revenue Service

# Instructions for Form 1065 U.S. Partnership Return

**The term "partnership" includes a limited partnership, syndicate, group, pool, joint venture, or other unincorporated organization, through or by which any business, financial operation, or venture is carried on, and which is not, within the meaning of the Internal Revenue Code, a corporation, trust, estate, or sole proprietorship. The term "partner" means a member of a partnership.**

*(Section references are to the Internal Revenue Code unless otherwise specified)*

## Highlights for 1976

Please note these important changes that have been made because of revisions in the tax law.

**Organization Fees.**—Amounts paid or incurred to organize a partnership are not deductible as current expenses. See page 2.

**Additional First-year Depreciation.**—The amount of additional first-year depreciation that the partnership can distribute has been reduced to a maximum of $2,000. See page 4.

**Investment Interest.**—The information required to be supplied the partners for interest on investment indebtedness has been revised to reflect the new provisions that reduce the amount of such interest allowable as a deduction by the partners. See pages 3 and 7 and Schedule K, line 17.

**Prepaid Interest.**—Deductions for interest prepayments must be allocated over the period of the loan. See page 3.

**Construction Period Interest and Taxes.**—New provisions limit the deductions for construction period interest and taxes in the case of nonresidential real property. See page 3.

**Distributive Shares.**—Under the new, more restrictive provisions, income or (loss) is allocable to a partner only for the portion of the year that person is a member of the partnership. See page 5.

**Special Allocations.**—New, stricter rules apply for special allocations to be made if the partners' distributive shares are not provided for in the partnership agreement. See page 5.

**Limitation on Deductible Losses.**—New limitations (based on the amount at which the partner is "at risk") have been placed on losses that can be deducted from certain farming, leasing, motion picture film or video tape, and oil and gas activities. See page 6.

**Minimum Tax.**—Additional tax preference items for intangible drilling costs and the partners' excess itemized deductions have been added. See page 7 and Schedule K, line 16.

**New Depreciation Recapure Rules** apply to dispositions of depreciable residential real estate. See Instructions for Form 4797.

**New Rules Apply for Recapture of Intangible Drilling and Development Costs** on oil and gas properties. See Instructions for Form 4797.

## General Instructions

**Note:** It is important that the partnership's name be shown the same on all tax returns and other documents filed. Use the label provided. If the partnership's name, address or empoyer identification number is wrong as shown on the label, make the necessary corrections right on the label. If the partnership did not receive a label, show the correct employer identification number in item D on page 1. If the partnership does not have a number, you must apply for one on Form SS-4, available at any Social Security Administration or Internal Revenue Service office.

**A. Who must file.**—Every partnership (see general instruction I(1) for exceptions) engaged in a trade or business or having income from sources within the United States must file Form 1065. It must do so whether or not its principal place of business is outside the United States or all its members are nonresident aliens. If you file for a syndicate, pool, joint venture, or similar group, attach to the return a copy of the agreement and all amendments, unless you have previously filed a copy.

**File only one return for each partnership. Mark "duplicate copy" on each copy you give to an individual partner.**

**B. Time and place for filing.**—A resident partnership must file Form 1065 on or before the 15th day of the 4th month following the close of the taxable year. A foreign partnership whose partners are nonresident aliens must file its return on or before the 15th day of the 6th month following the close of the taxable year.

| If the partnership's principal place of business or principal office or agency is located in | Use the following Internal Revenue Service Center address |
|---|---|
| New Jersey, New York City and counties of Nassau, Rockland, Suffolk, and Westchester | 1040 Waverly Avenue Holtsville, New York 11799 |
| New York (all other counties), Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont | 310 Lowell Street Andover, Mass. 01812 |
| Delaware, District of Columbia, Maryland, Pennsylvania | 11601 Roosevelt Boulevard Philadelphia, Pa. 19155 |
| Alabama, Florida, Georgia, Mississippi, South Carolina | 4800 Buford Highway Chamblee, Georgia 30006 |
| Michigan, Ohio | Cincinnati, Ohio 45298 |
| Arkansas, Kansas, Louisiana, New Mexico, Oklahoma, Texas | 3651 S. Interregional Highway Austin, Texas 78740 |
| Alaska, Arizona, Colorado, Idaho, Minnesota, Montana, Nebraska, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wyoming | 1160 West 1200 South St. Ogden, Utah 84201 |
| Illinois, Iowa, Missouri, Wisconsin | 2306 East Bannister Road Kansas City, Missouri 64170 |
| California, Hawaii | 5045 East Butler Avenue Fresno, California 93888 |
| Indiana, Kentucky, North Carolina, Tennessee, Virginia, West Virginia | 3131 Democrat Road Memphis, Tenn. 38110 |

A partnership without a principal office or agency or principal place of business in the United States must file its return with the Internal Revenue Service Center, 11601 Roosevelt Boulevard, Philadelphia, Pennsylvania 19155.

**C. Period covered by return.**—File the return for the calendar year 1976 or other taxable year beginning in 1976. A partnership's taxable year shall be determined as though the partnership were a taxpayer.

**D. Change in, or adoption of, accounting period.**—A change by any partnership from one taxable year to another, or a new partnership's adoption of an initial taxable year, must meet the provisions of section 706(b). A change by a principal partner from one taxable year to another must meet the provisions of sections 706(b) and 442. A principal partner is one who has an interest of 5 percent or more in the partnership profits or capital. For the taxable years of partnerships resulting from a merger or division of other partnerships, see sections 706(b) and 708(b)(2).

**E. Signature.**—One partner must sign the return. If a receiver, trustee in bankruptcy, or assignee is in control of the organization's property or business, that person must sign the return.

Any person, firm, or corporation preparing a partnership return for compensation must also sign to verify the return. However, a verifying signature is not required if the return is prepared by a regular, full-time partnership employee, such as a clerk, secretary, or bookkeeper. If a firm or corporation prepares the return, it should be signed in the name of the firm or corporation.

**F. Penalties.**—The law provides severe penalties for willful failure to file a return on time and for willful attempt to evade or defeat payment of any tax due.

**G. Accounting methods.**—Compute ordinary income by the accounting method regularly used in maintaining the partnership's books and records. The method should clearly reflect income. (See section 446). Unless the law specifically permits, a taxpayer may not change the accounting method used to report income in prior years (for income as a whole or for any material item) without first getting consent on Form 3115, Application for Change in Accounting Method.

*Rounding off to whole-dollar amounts.*—You may show the money items on your return and accompanying schedules as whole-dollar amounts. To do so eliminate any amount less than 50 cents and increase any amount from 50 cents through 99 cents to the next higher dollar.

**H. Recordkeeping.**—Your records must be retained as long as their contents may be material in the administration of any Internal Revenue law. Records that support an item of income or a deduction appearing on your return should be kept until the statute of limitations expires for that return. Usually this is 3 years from the date the return was due or filed. Some records must be kept indefinitely. Records of transactions relating to the basis of property should be retained as long as they are material in determining the basis of the original or replacement property. Copies of your filed tax returns should also be retained as part of your records. Obtain **Publication 552,** Recordkeeping Requirements and A Guide to Tax Publications, for further details.

**I. Information returns.**—Every partnership shall file information returns if it makes, in the course of its trade or business

(30)

ness during the calendar year, payments of interest (other than under the $10 rule), rents, commissions, or other fixed or determinable income totaling $600 or more to any one person.

For example, if the partnership makes interest payments totaling $10 or more on bank deposits and savings and loan association accounts, it must file Form 1099–INT.

Use Form 1096 to summarize and transmit information returns to your Internal Revenue Service Center. For more information about filing information returns and exceptions therefrom, see the instructions for Form 1096.

**J. Foreign bank, securities and other financial accounts, and grantors, transferors or beneficiaries of foreign trusts, etc.**—Be sure to answer questions G and H on page 4 of Form 1065. If either of the "Yes" blocks is checked, attach **Form** 4683, U.S. Information Return on Foreign Bank, Securities, and Other Financial Accounts, and Foreign Trusts. Check "Yes," for Question G if the partnership owns more than 50 percent of the stock in any corporation that owns one or more foreign bank accounts.

Please note that this year Form 4683 must be filed by a partnership having any interest in a foreign trust. In prior years this form was required to report an interest in a trust only if the interest was more than a 50-percent interest.

A U.S. partnership that transfers property to a foreign trust may be required to include the income attributable to such property in the partnership's taxable income, if during 1976, such trust had a U.S. beneficiary. (See section 679.)

If the partnership transfers property to a foreign corporation as paid-in surplus or as a contribution to capital, or to a foreign trust or partnership, there is imposed an excise tax as computed under section 1491 (see Form 926, Transferor of Property to a Foreign Corporation, Foreign Trust, or Foreign Partnership). In lieu of this excise tax, the partnership may elect to treat such transfer as a taxable sale or exchange as specified in section 1057.

**K. Balance sheets.**—The partnership balance sheets must be completed. These balance sheets, Schedule L, should agree with the account books. Any differences should be explained in an attached statement.

If any of the liabilities reflected on Schedule L are nonrecourse loans (as defined in General Instruction S(4)), be sure to report the amounts in the spaces provided on Form 1065, page 4, question L.

Partnerships reporting to the Interstate Commerce Commission or to any national, State, municipal, or other public officer, may submit, instead of Schedule L, copies of their balance sheets prescribed by the Commission or State or municipal authorities, as of the beginning and end of the taxable year.

**L. Elections.**—*(1)* An unincorporated organization qualifying under section 761(a) as an investing partnership or as participating in the joint production, extraction, or use of property under an operating agreement, may elect to be excluded from treatment as a partnership under section 1.761-2 of the Regulations. The unincorporated organization may make the election in a statement attached to Form 1065 for the first year for which it wants the exclusion. (See section 1.761-2 of the Regulations.)

*(2)* Generally, the partnership shall make the elections affecting the computation of taxable income from its operations. Examples of such elections are the accounting method employed, depreciation methods, etc. However, certain elections are made by a partner separately on the partner's individual income tax return rather than by the partnership. These elections are made under section 901 (foreign tax credit), section 617 (deduction and recapture of certain mining exploration expenditures, paid or incurred), section 57(c) (definition of net lease), and section 163(d) (limitation on interest on investment indebtedness).

*(3)* Section 1033 provides for the nonrecognition of gain where property is compulsorily or involuntarily converted into other property or into money. Section 754 provides rules concerning the election a partnership may file to adjust the basis of its remaining assets in the event assets distributed to a partner have increased or decreased in value and also to adjust the basis of its assets to reflect the purchase price paid by a new partner for the new partner's interest, or as a result of the death of a partner. Information about other elections may be found under the applicable sections of Chapter 1, subchapter K of the Code and the Regulations.

**M. Section 702(a) items.**—The partners are required by the Code to take into account separately their distributive shares of certain specific items enumerated in the Code as follows: (1) gains and losses from sales and exchanges of capital assets held for not more than six months; (2) gains and losses from sales and exchanges of capital assets held for more than six months; (3) gains and losses from sales and exchanges of property described in section 1231; (4) charitable contributions; (5) qualifying dividends; (6) taxes described in section 901; (7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations (see instructions for Schedule K); and (8) taxable income or loss (ordinary income) exclusive of items 1 through 7, above.

**N. Distribution of unrealized receivables and inventory items.**—If a partner receives a distribution of unrealized receivables or substantially appreciated inventory items in exchange for all or part of that partner's interest in other partnership property (including money), treat the transaction as a sale or exchange between the partner and the partnership. Treat the partnership gain or loss as ordinary income or loss. In computing the partners' distributive shares of such ordinary income or loss, allocate it only to partners other than the distributee partner who will take such amount into account separately under section 702(a)(8). See section 751 and related Regulations.

**O. Net operating loss deduction.**—A partnership is not allowed the deduction for net operating losses. Partners computing their own net operating loss or taxable income for any taxable year for the purposes of the computation required by section 172, must take into account their share of the partnership's income and losses, subject to the limitations in sections 465(a) and 704(b) and (d).

**P. Specially allocated items.**—Allocate distributive shares of income, gain, loss, deduction, or credit among the partners under the partnership agreement for sharing income or loss generally. If the partners agree, specific items may be allocated among them in a ratio different than that for sharing income or loss generally and such allocations may be recognized under provisions of section 704. For instance, if the net income exclusive of specially allocated items is divided evenly among three partners but some special items are allocated 50 percent to one, 30 percent to another, and 20 percent to the third partner, report the special items on Schedule K, line 15, instead of on the numbered lines on page 1 of the form. (See instructions for Schedules K and K–1.)

**Q. Attachments.**—If you need more space on forms or schedules, attach separate sheets and use the same arrangement as the printed forms, but show your totals on the printed forms. Be sure to put the partnership's name and employer identification number on these separate sheets.

**R. Information regarding Schedule K–1.**—Prepare and furnish Schedules K–1 to all partners. Schedule K–1 reflects the amounts on Schedule K that are allocated to each partner.

**S. Definitions and Special Rules.**—

*(1) General partner.*—A general partner is a member of the organization who, except as provided in section 301.7701–2 (d)(2) of the Regulations, is personally liable for the obligations of the partnership.

*(2) Limited partner.*—A limited partner is one who may not be held responsible for partnership debts, and whose potential personal liability is confined to the amount of money or other property that the partner contributed or is required to contribute to the partnership.

*(3) Limited partnership.*—A limited partnership is one composed of at least one general partner and one or more limited partners, organized under the Uniform Limited Partnership Act or comparable State statute.

*(4) Nonrecourse loans.*—Nonrecourse loans are those liabilities of the partnership for which none of the partners have any liability.

*(5) Organization fees.*—Amounts paid or incurred to organize a partnership or promote the sale of an interest in a partnership are capital expenditures subject to section 263, and as such are not deductible. Include these amounts on Schedule L—Balance Sheets. See the note in specific instruction 14 for the treatment of such amounts paid to a partner. Also see section 709 for further details.

*(6)* For the special treatment of certain expenditures incurred in the production of films, books, records, or similar property, see section 280.

## Specific Instructions

These instructions correspond with line numbers on the first page of the return, and with schedules appearing on its other pages.

**1. Gross receipts.**—Enter gross receipts or sales from all business operations except those required to be reported on lines 4 through 11.

*Installment sales.*—If, under section 453, you use the installment method, attach a schedule showing separately for the current year and the three preceding years the following: *(a)* gross sales; *(b)* cost of goods sold; *(c)* gross profits; *(d)* percentage of gross profits to gross sales; *(e)* amount collected; and *(f)* gross profit on amount collected.

# Exhibit C

Department of the Treasury, Internal Revenue Service,

1975 Instructions for Form 1065, U.S. Partnership Return

(Form 1065 Instructions Pages 1 and 2)

(As compared to the 1976 Instructions in Exhibit B, not including a "Definitions and Special Rules" section)

# 1975 Department of the Treasury Internal Revenue Service

# Instructions for Form 1065 U.S. Partnership Return

**The term "partnership" includes a limited partnership, syndicate, group, pool, joint venture, or other unincorporated organization, through or by which any business, financial operation, or venture is carried on, and which is not, within the meaning of the Internal Revenue Code, a corporation, trust, estate, or sole proprietorship. The term "partner" means a member of a partnership.**

*(Section references are to the Internal Revenue Code unless otherwise specified)*

## General Instructions

**Note:** If the partnership's employer identification number is wrong on the label or if the partnership did not receive a label, show the correct number in item D on page 1. If the partnership does not have a number you must apply for one on Form SS-4, available at any Social Security Administration or Internal Revenue Service office.

**A. Who must file.**—Every partnership (see general instruction K(1) for exceptions) engaged in a trade or business or having income from sources within the United States must file Form 1065. It must do so whether or not its principal place of business is outside the United States or all its members are nonresident aliens. If you file for a syndicate, pool, joint venture, or similar group, attach to the return a copy of the agreement and all amendments, unless you have previously filed a copy.

**File only one return for each partnership. Mark "duplicate copy" on each copy you give to an individual partner.**

**B. Time and place for filing.**—A resident partnership must file Form 1065 on or before the 15th day of the 4th month following the close of the taxable year. A foreign partnership whose partners are nonresident aliens must file its return on or before the 15th day of the 6th month following the close of the taxable year.

| If the partnership's principal place of business or principal office or agency is located in | Use this address |
|---|---|
| New Jersey, New York City and counties of Nassau, Rockland, Suffolk, and Westchester | Internal Revenue Service Center<br>1040 Waverly Avenue<br>Holtsville, New York 11799 |
| New York (all other counties), Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont | Internal Revenue Service Center<br>310 Lowell Street<br>Andover, Mass. 01812 |
| Delaware, District of Columbia, Maryland, Pennsylvania | Internal Revenue Service Center<br>11601 Roosevelt Boulevard<br>Philadelphia, Pa. 19155 |
| Alabama, Florida, Georgia, Mississippi, South Carolina | Internal Revenue Service Center<br>4800 Buford Highway<br>Chamblee, Georgia 30006 |
| Michigan, Ohio | Internal Revenue Service Center<br>Cincinnati, Ohio 45298 |
| Arkansas, Kansas, Louisiana, New Mexico, Oklahoma, Texas | Internal Revenue Service Center<br>3651 S. Interregional Highway<br>Austin, Texas 78740 |
| Alaska, Arizona, Colorado, Idaho, Minnesota, Montana, Nebraska, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wyoming | Internal Revenue Service Center<br>1160 West 1200 South St.<br>Ogden, Utah 84201 |
| Illinois, Iowa, Missouri, Wisconsin | Internal Revenue Service Center<br>2306 East Bannister Road<br>Kansas City, Missouri 64170 |
| California, Hawaii | Internal Revenue Service Center<br>5045 East Butler Avenue<br>Fresno, California 93888 |
| Indiana, Kentucky, North Carolina, Tennessee, Virginia, West Virginia | Internal Revenue Service Center<br>3131 Democrat Road<br>Memphis, Tenn. 38110 |

A partnership without a principal office or agency or principal place of business in the United States must file its return with the Internal Revenue Service Center, 11601 Roosevelt Boulevard, Philadelphia, Pennsylvania 19155.

**C. Period covered by return.**—File the return for the calendar year 1975 or other taxable year beginning in 1975. A partnership's taxable year shall be determined as though the partnership were a taxpayer.

**D. Change in, or adoption of, accounting period.**—A change by any partnership from one taxable year to another, or a new partnership's adoption of an initial taxable year, must meet the provisions of section 706(b). A change by a principal partner from one taxable year to another must meet the provisions of sections 706(b) and 442. A principal partner is one who has an interest of 5 percent or more in the partnership profits or capital.

For the taxable years of partnerships resulting from a merger or division of other partnerships, see sections 706(b) and 708(b)(2).

**E. Signature.**—One partner must sign the return. If a receiver, trustee in bankruptcy, or assignee is in control of the organization's property or business, that person must sign the return.

Any person, firm, or corporation preparing a partnership return for compensation must also sign to verify the return. However, a verifying signature is not required if the return is prepared by a regular, full-time partnership employee, such as a clerk, secretary, or bookkeeper. If a firm or corporation prepares the return, it should be signed in the name of the firm or corporation.

**F. Penalties.**—The law provides severe penalties for willful failure to file a return on time and for willful attempt to evade or defeat payment of any tax due.

**G. Accounting methods.**—Compute ordinary income by the accounting method regularly used in maintaining the partnership's books and records. The method should clearly reflect income. (See section 446). Unless the law specifically permits, a taxpayer may not change the accounting method used to report income in prior years (for income as a whole or for any material item) without first getting consent on Form 3115, Application for Change in Accounting Method.

*Rounding off to whole-dollar amounts.*—You may show the money items on your return and accompanying schedules as whole-dollar amounts. To do so eliminate any amount less than 50 cents and increase any amount from 50 cents through 99 cents to the next higher dollar.

**H. Items exempt from tax.**—Items exempt from tax are listed in sections 101 through 122. For example:

(1) *Interest on government obligations.*—The interest on obligations of a State, or U.S. possession, any of their political subdivisions, or the District of Columbia, is exempt subject to the exceptions described in section 103.

(2) *Proceeds of insurance policies.*—In general, the proceeds of life insurance policies paid to the partnership on the death of a partner are exempt. If the insurer holds any of the proceeds under an agreement to pay interest, the interest is taxable.

(3) *Income from improvements by lessee.*—Income other than rent derived by a lessor of real property upon the termination of a lease, representing the value of such property attributable to buildings erected or other improvements made by the lessee, is excludable unless it represents a liquidation in kind of lease rentals.

**I. Information returns.**—Every partnership shall file information returns if it makes, in the course of its trade or business during the calendar year, payments of interest (other than under the $10 rule), rents, commissions, or other fixed or determinable income totaling $600 or more for any one person.

For example, if the partnership makes interest payments totaling $10 or more on bank deposits, corporate bonds, stockholder's accounts, and savings and loan association accounts, it must file Form 1099–INT.

Use Form 1096 to summarize and transmit information returns to your Internal Revenue Service Center. For more information about filing information returns and exceptions therefrom, see the instructions for Form 1096.

If the partnership had a financial interest in, or signature authority or other authority over a bank, securities, or other financial account in a foreign country at any time in 1975, you must complete **Form 4683** and attach it to the partnership return.

**J. Balance sheets.**—The partnership balance sheets must be completed. These balance sheets, Schedule L, should agree with the account books. Any differences should be explained in an attached statement. Partnerships reporting to the Interstate Commerce Commission or to any national, State, municipal, or other public officer, may submit, instead of Schedule L, copies of their balance sheets prescribed by the Commission or State or municipal authorities, as of the beginning and end of the taxable year.

**K. Elections.**—*(1)* An unincorporated organization qualifying under section 761(a) as an investing partnership or as participating in the joint production, extraction, or use of property under an operating agreement, may elect to be excluded from treatment as a partnership under section 1.761 of the Regulations. The unincorporated organization may make the election in a statement attached to Form 1065 for the first year for which it wants the exclusion. For more detailed in-

formation see section 1.761 of the Regulations.

(2) Generally, the partnership shall make the elections affecting the computation of taxable income from its operations. Examples of such elections are the accounting method employed, depreciation methods, etc. However, certain elections are made by a partner separately on the partner's individual income tax return rather than by the partnership. These elections are made under: section 901, relating to foreign tax credit, section 617, relating to deduction and recapture of certain mining exploration expenditures, paid or incurred; section 57(c), relating to definition of net lease, and section 163(d), relating to limitation on interest on investment indebtedness.

(3) Section 1033 provides for the nonrecognition of gain where property is compulsorily or involuntarily converted into other property or into money. Section 754 provides rules concerning the election a partnership may file to adjust the basis of its remaining assets in the event assets distributed to a partner have increased or decreased in value and also to adjust the basis of its assets to reflect the purchase price paid by a new partner for the new partner's interest, or as a result of the death of a partner. Information about other elections may be found under the applicable sections of Chapter 1, subchapter K of the Code and the Regulations.

**L. Section 702(a) items.**—The partners are required by the Code to take into account separately their distributive shares of certain specific items enumerated in the Code as follows: (1) gains and losses from sales and exchanges of capital assets held for not more than six months; (2) gains and losses from sales and exchanges of capital assets held for more than six months; (3) gains and losses from sales and exchanges of property described in section 1231; (4) charitable contributions; (5) qualifying dividends; (6) taxes described in section 901; (7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations (see instructions for Schedule K); and (8) taxable income or loss (ordinary income) exclusive of items 1 through 7, above.

**M. Distribution of unrealized receivables and inventory items.**—If a partner receives a distribution of unrealized receivables or substantially appreciated inventory items in exchange for all or part of that partner's interest in other partnership property (including money), treat the transaction as a sale or exchange between the partner and the partnership. Treat the partnership gain or loss as ordinary income or loss. In computing the partners' distributive shares of such ordinary income or loss, allocate it only to partners other than the distributee partner who will take such amount into account separately under section 702(a)(8). See section 751 and related Regulations.

**N. Net operating loss deduction.**—A partnership is not allowed the deduction for net operating losses provided by section 172. Partners computing their own net operating loss or taxable income for any taxable year for the purposes of the computation required by section 172, must take into account their share of the partnership's income and losses, subject to the limitation of section 704(d).

**O. Specially allocated items.**—Allocate distributive shares of income, gain, loss, deduction, or credit items among the partners under the partnership agreement for sharing income or loss generally. If the partners agree, specific items may be allocated among them in a ratio different than that for sharing income or loss generally and such allocations may be recognized under provisions of section 704. For instance, if the net income exclusive of specially allocated items is divided evenly among three partners but some special items are allocated 50 percent to one, 30 percent to another, and 20 percent to the third partner, report the special items on Schedule K, line 15, instead of on the numbered lines on page 1.

**P. Attachments.**—You may use attachments to your return if the lines on the form schedules are insufficient for your needs. The attachments must contain all required information, follow the format of the official schedules, and must be attached to the return in the same sequence as the schedules appear on the official forms. If you use an attachment in place of a schedule having a summary line on page 1 of the form, you need not enter the total on the official schedule, but must enter it on page 1.

**Q. Information regarding Schedule K–1.**—Prepare and furnish a Schedule K–1 to all partners. It reflects the amounts on Schedule K that are allocated to them. Since all items on Schedule K–1 are not applicable to every partnership, a substitute schedule, listing only applicable items may be submitted for the official Schedule K–1. Identify amounts reported on the substitute by the official line number and letter designation as well as by a sufficient portion of the official line title to identify each amount. In addition, include all information from the official Schedule K–1 that relates to the partnership and partner. Insert the title, "Substitute Schedule K–1 (Form 1065)," and the partnership's taxable year at the top of each substitute.

## Specific Instructions

These instructions correspond with line numbers on the first page of the return, and with schedules appearing on its other pages.

**1. Gross receipts.**—Enter gross receipts or sales from all business operations except those required to be reported on lines 4 through 11.

*Installment sales.*—If, under section 453, you use the installment method, attach a schedule showing separately for the current year and the three preceding years the following: (a) gross sales; (b) cost of goods sold; (c) gross profits; (d) percentage of gross profits to gross sales; (e) amount collected; and (f) gross profit on amount collected.

*Farmer's income schedule.*—For farm income, attach Schedule F (Form 1040). (See instruction 9.)

**2. Cost of goods sold (Schedule A).**—If the production, manufacture, purchase, or sale of merchandise is an income-producing factor in the trade or business, inventories of merchandise on hand should be taken at the beginning and end of the taxable year. They may be valued at (a) cost, (b) cost or market, whichever is lower, or (c) any other method approved by the Commissioner. The valuing method you adopt for the first year is controlling, and can be changed only after you obtain permission from the Commissioner. To apply for a change, file Form 3115 with the Commissioner within 180 days after the beginning of the taxable year in which you want to make the change.

If the partnership wants to adopt the LIFO inventory method provided in section 472, it must file application to do so on Form 970 or attach a statement that contains all the information required by Form 970.

Items withdrawn from inventory or purchases for the personal use of individual partners should not be included as part of the cost of goods sold. Account for them in Schedules M and K–1.

*Cost of operations (where inventories are not an income-determining factor).*—If the amount you enter on line 2 includes an amount applicable to cost of operations, complete Schedule A.

**4. Ordinary income (loss) from other partnerships, syndicates, etc.**—If one partnership, (partnership A) is a partner in another partnership (partnership B), partnership A will enter on this line its distributive share of ordinary income (loss) from B. If the distributive share is a loss, it must be limited to the amount of the adjusted basis of A's interest in partnership B as of the end of partnership B's year in which the loss occurred. If A's taxable year does not coincide with the annual accounting period of partnership B, include in A's return the distributive share of the ordinary income (loss) for the accounting period of partnership B ending within the period for which A's return is filed.

Partnership A will consider its distributive share of other items (see general instruction L (1) through (7)) from partnership B as if such items were realized directly from the source from which realized by partnership B or incurred in the same manner as incurred by partnership B. For example, partnership A's distributive share of partnership B's capital gains or (losses) should be reported on Schedule D (Form 1065), lines 2 and 5. As another example, partnership A's distributive share of partnership B's specially allocated ordinary gains or (losses) should be entered on Form 4797, line 8.

**5. Nonqualifying dividends.**—Nonqualifying dividends are taxable dividends which are included in ordinary income and for which the individual partner is NOT entitled to an exclusion. Such dividends are derived from the following sources:

(a) Corporations organized under the China Trade Act (section 941);

(b) Corporations which, for their taxable year in which the distribution is made or for their next preceding taxable year, are—

- (i) exempt from tax under section 501 (charitable, etc., organizations) or section 521 (farmers' cooperatives); or
- (ii) corporations to which section 931 (income from sources within U.S. possessions) applies;

(c) Mutual savings banks, cooperative banks, domestic building and loan associations, domestic savings and loan associations, Federal savings and loan associations, on deposits or withdrawable accounts. Report dividends from these organizations as interest.

(d) Regulated investment companies, except to the extent designated by the company to be taken into account as a dividend for these purposes.

# Exhibit D

Department of the Treasury, Internal Revenue Service,

1977 Instructions for Form 1065, U.S. Partnership Return

(Form 1065 Instructions Pages 1 through 3)

(Definition of "Limited Partner" in
section S "Definitions" in middle of page 3)

# 1977

Department of the Treasury
**Internal Revenue Service**

(147)

# Instructions for Form 1065

## U.S. Partnership Return

**The term "partnership" includes a limited partnership, syndicate, group, pool, joint venture, or other unincorporated organization, through or by which any business, financial operation, or venture is carried on, and which is not, within the meaning of the Internal Revenue Code, a corporation, trust, estate, or sole proprietorship. The term "partner" means a member of a partnership.**

*(Section references are to the Internal Revenue Code unless otherwise specified)*

## Highlights for 1977

Please note these important changes that have been made.

**Business Code Number.**—The basis for determining the business code number to enter in block C has been changed from "total receipts" to "total assets". See page 10.

**Organization Expenses.**—You may elect to amortize organization expenses paid or incurred in taxable years beginning after December 31, 1976. See page 3.

PROOF AS OF OCT 25

**Architectural and Transportation Barriers.**—You may elect to deduct the cost of removing such barriers for the handicapped and elderly. See page 4.

**Group Legal Services Plans.**—You may deduct certain contributions to qualified group legal services plans established for the benefit of employees and their families. See page 5.

**Capital Gains and Losses.**—The holding period for long-term capital gains and losses and section 1231 treatment of transactions has been increased to 9 months. See page 5 and Instructions for Form 4797.

**Amortization.**—Schedules K and K-1 have been revised to combine various types of amortization into a single line for reporting such amounts as tax preference items. See page 9.

**New Jobs Credit.**—The salaries and wages reported by the partnership on Form 1065, line 14 and elsewhere must be reduced by the amount of the new jobs credit entered on Schedule K, line 11. See pages 4 and 8.

**Schedule K-1 (Form 1065).**—Significant revisions have been made to Schedule K-1.

## General Instructions

It is important that the partnership's name be shown the same on all tax returns and other documents filed. Use the label provided. If the partnership's name, address or employer identification number is wrong as shown on the label, make the necessary corrections right on the label. If the partnership did not receive a label, show the correct employer identification number in item D on page 1. If the partnership does not have a number, you must apply for one on Form SS-4, available at any Social Security Administration or Internal Revenue Service office.

**A. Who Must File.**—Every partnership (see general instruction L(1) for exceptions) engaged in a trade or business or having income from sources within the United States must file Form 1065. It must do so whether or not its principal place of business is outside the United States or all its members are nonresident aliens. If you file for a syndicate, pool, joint venture, or similar group, attach to the return a copy of the agreement and all amendments, unless you have previously filed a copy.

*File only one return for each partnership. Mark "duplicate copy" on each copy you give to an individual partner.*

Form 1065 is required to be filed by religious and apostolic organizations which are exempt under section 501(d).

**B. Time and place for filing.**—A resident partnership must file Form 1065 on or before the 15th day of the 4th month following the close of the taxable year. A foreign partnership whose partners are nonresident aliens must file its return on or before the 15th day of the 6th month following the close of the taxable year. Use the addressed envelope that came with your return or use the Internal Revenue Service Center address for the State where the partnership's principal place of business or principal office or agency is located.

**Alabama**—Atlanta, GA 31101
**Alaska**—Ogden, UT 84201
**Arizona**—Ogden, UT 84201
**Arkansas**—Austin, TX 73301
**California**—Fresno, CA 93888
**Colorado**—Ogden, UT 84201
**Connecticut**—Andover, MA 05501
**Delaware**—Philadelphia, PA 19255
**District of Columbia**—Philadelphia, PA 19255
**Florida**—Atlanta, GA 31101
**Georgia**—Atlanta, GA 31101
**Hawaii**—Fresno, CA 93888
**Idaho**—Ogden, UT 84201
**Illinois**—Kansas City, MO 64999
**Indiana**—Memphis, TN 37501
**Iowa**—Kansas City, MO 64999
**Kansas**—Austin, TX 73301
**Kentucky**—Memphis, TN 37501
**Louisiana**—Austin, TX 73301
**Maine**—Andover, MA 05501
**Maryland**—Philadelphia, PA 19255
**Massachusetts**—Andover, MA 05501
**Michigan**—Cincinnati, OH 45999
**Minnesota**—Ogden, UT 84201
**Mississippi**—Atlanta, GA 31101
**Missouri**—Kansas City, MO 64999
**Montana**—Ogden, UT 84201
**Nebraska**—Ogden, UT 84201
**Nevada**—Ogden, UT 84201
**New Hampshire**—Andover, MA 05501
**New Jersey**—Holtsville, NY 00501
**New Mexico**—Austin, TX 73301
**New York**
*New York City and Counties of Nassau, Rockland, Suffolk and Westchester—Holtsville, NY 00501*
*All Other Counties—Andover, MA 05501*
**North Carolina**—Memphis, TN 37501
**North Dakota**—Ogden, UT 84201
**Ohio**—Cincinnati, OH 45999
**Oklahoma**—Austin, TX 73301
**Oregon**—Ogden, UT 84201
**Pennsylvania**—Philadelphia, PA 19255
**Rhode Island**—Andover, MA 05501
**South Carolina**—Atlanta, GA 31101
**South Dakota**—Ogden, UT 84201
**Tennessee**—Memphis, TN 37501
**Texas**—Austin, TX 73301
**Utah**—Ogden, UT 84201
**Vermont**—Andover, MA 05501
**Virginia**—Memphis, TN 37501
**Washington**—Ogden, UT 84201
**West Virginia**—Memphis, TN 37501
**Wisconsin**—Kansas City, MO 64999
**Wyoming**—Ogden, UT 84201

235-089-1

(148)

*A partnership without a principal office or agency or principal place of business in the United States must file its return with the Internal Revenue Service Center, Philadelphia, PA 19255.*

**C. Period Covered by Return.**—File the return for the calendar year 1977 or other taxable year beginning in 1977.

**D. Change in, or Adoption of, Accounting Period.**—To change any partnership from one taxable year to another, or a new partnership's adoption of an initial taxable year, see section 706(b) and Form 1128, Application for Change in Accounting Period. A change by a principal partner from one taxable year to another must meet the provisions of sections 706(b) and 442. A principal partner is one who has an interest of 5 percent or more in the partnership profits or capital. For the taxable years of partnerships resulting from a merger or division of other partnerships, see sections 706(b) and 708(b)(2).

**E. Signature.**—One partner must sign the return. If a receiver, trustee in bankruptcy, or assignee is in control of the organization's property or business, that person must sign the return.

PROOF AS OF OCT. 36

An individual who prepares your return for pay must manually sign the return as preparer. Signature stamps or labels are not acceptable.

If more than one person prepares the return, the individual preparer with the primary responsibility for the overall accuracy of the return must sign as preparer. The preparer required to sign the return shall also enter his or her social security number to the right of that signature. If the preparer is self-employed, he or she must write "SE" to the right of the preparer's social security number.

If the individual is paid by another to prepare (or is a partner in a partnership preparing) your return, the payer's (or partnership's) name and identification number must be entered below the preparer signature line. (Special rules apply to identification numbers for foreign tax return preparers. Such preparers should see sections 1.6109–2(a) and 301.7701–15(a)(5) of the regulations).

The return must also show, below the preparer's signature, the address of the preparer's place of business where the return was completed. However, if this place of business is not maintained on a year-round basis, the return should show the address of such preparer's principal business location which is maintained on a year-round basis, or, if none, the preparer's residence.

The preparer must give you a copy of your return in addition to the copy filed with IRS. Employers, partnerships, and self-employed preparers must file Form 5717, Annual List of Income Tax Return Preparers.

**Note:** *A $25 penalty may be charged a paid preparer who does not give you a copy of your return in addition to the copy filed with IRS. A penalty may also be charged a preparer required to sign who does not show an original signature or a photocopy of the original signature in the space provided. A penalty may be charged a self-employed preparer who does not show his or her identifying number in the space provided.*

If the individual is paid by another to prepare (or is a partner in a partnership preparing) your return, the payer or partnership may be charged a penalty if the return does not show the individual's social security number and the payer's (or partnership's) employer identification number.

If your return is prepared by your regular, full-time employee, such as a clerk, secretary or bookkeeper, or by your partner, that person is not subject to the above rules.

**F. Penalties.**—The law provides severe penalties for willful failure to file a return on time and for willful attempt to evade or defeat payment of any tax due.

**G. Accounting Methods.**—Compute ordinary income by the accounting method regularly used in maintaining the partnership's books and records. The method should clearly reflect income. (See section 446). Unless the law specifically permits, a taxpayer may not change the accounting method used to report income in prior years (for income as a whole or for any material item) without first getting consent on **Form 3115**, Application for Change in Accounting Method.

*Rounding Off to Whole-Dollar Amounts.*—You may show the money items on your return and accompanying schedules as whole-dollar amounts. To do so eliminate any amount less than 50 cents and increase any amount from 50 cents through 99 cents to the next higher dollar.

**H. Recordkeeping.**—Your records must be retained as long as their contents may be material in the administration of any Internal Revenue law. Records that support an item of income or a deduction appearing on your return should be kept until the statute of limitations expires for that return. Usually this is 3 years from the date the return was due or filed. Some records must be kept indefinitely. Records of transactions relating to the basis of property should be retained as long as they are material in determining the basis of the original or replacement property. Copies of your filed tax returns should also be retained as part of your records. Obtain **Publication 552**, Recordkeeping Requirements and A Guide to Tax Publications, for further details.

**I. Information Returns.**—Every partnership shall file information returns if it makes, in the course of its trade or business during the calendar year, payments of rents, commissions, or other fixed or determinable income totaling $600 or more to any one person. Dividend or interest payments are reportable if they total $10 or more.

For example, if the partnership pays a person $600 or more in any calendar year to perform services under a sub-contract type of arrangement, where no employment taxes are withheld, the partnership must file Form 1099–MISC.

Use Form 1096 to summarize and transmit information returns to your Internal Revenue Service Center. For more information about filing information returns and exceptions therefrom, see the **Instructions for Form 1096.**

**J. Foreign Bank, Securities and Other Financial Accounts, and Grantors of, or Transferors to, Foreign Trusts, etc.**—Be sure to answer questions K and L on page 4 of Form 1065. Check "Yes," for Question K if the partnership owns more than 50 percent of the stock in any corporation that owns one or more foreign bank accounts.

If the "Yes" block is checked for question K, you must file Treasury Department Form 90–22.1, Report of Foreign Bank, Securities, and Other Financial Accounts.

This form, which is due before July 1, 1978, should be filed with the U.S. Treasury Department at P.O. Box 28309, Central Station, Washington, D.C. 20005.

Form 90–22.1, which replaces Internal Revenue Service Form 4683, U.S. Information Return on Foreign Bank, Securities and Other Financial Accounts, and Foreign Trusts, may be obtained from Internal Revenue Service offices or by writing to the above address.

A U.S. partnership that transfers property to a foreign trust may be required to include the income attributable to such property in the partnership's taxable income, if during 1977, such trust had a U.S. beneficiary. (See section 679.)

If the partnership transfers property to a foreign corporation as paid-in surplus or as a contribution to capital, or to a foreign trust or partnership, there is imposed an excise tax as computed under section 1491 (see Form 926, Transferor of Property to a Foreign Corporation, Foreign Trust, or Foreign Partnership). In lieu of this excise tax, the partnership may elect to treat such transfer as a taxable sale or exchange as specified in section 1057.

**K. Balance Sheets.**—The partnership balance sheets must be completed. These balance sheets, Schedule L, should agree with the partnership's books and records. Any differences should be explained in an attached statement.

Partnerships reporting to the Interstate Commerce Commission or to any national, State, municipal, or other public officer, may submit, instead of Schedule L, copies of their balance sheets prescribed by the Commission or State or municipal authorities, as of the beginning and end of the taxable year.

**L. Elections.**—

*(1)* Generally, the partnership shall make the elections affecting the computation of taxable income from its operations. Examples of such elections are the accounting method employed, depreciation methods, etc. However, certain elections are made by a partner separately on the partner's individual income tax return rather than by the partnership. These elections are made under section 901 (foreign tax credit), section 617 (deduction and recapture of certain mining exploration expenditures, paid or incurred), section 57(c) (definition of net lease), and section 163(d)(6) (limitation on interest on investment indebtedness).

*(2)* Section 1033 provides for the nonrecognition of gain where property is compulsorily or involuntarily converted into other property or into money.

*(3)* Section 754 provides rules concerning the election a partnership may file to adjust the basis of its remaining assets in the event assets distributed to a partner have increased or decreased in value and also to adjust the basis of its assets to reflect the purchase price paid by a new partner for the new partner's interest, or a change in basis of a partnership interest upon the death of a partner.

*(4)* An unincorporated organization qualifying under section 761(a) as an investing partnership or as participating in the joint production, extraction, or use of property under an operating agreement, may elect to be excluded from treatment as a partnership under section 1.761–2 of the Regulations. The unincorporated organization may make the election in a statement attached to Form 1065 for the first year for which it wants the exclusion. (See section 1.761–2 of the Regulations.)

*(5)* Information about other elections may be found under the applicable sections of Chapter 1, subchapter K of the Code and the Regulations.

**M. Section 702(a) Items.**—The partners are required by the Code to take into account separately their distributive shares of certain specific items enumerated in the Code as follows: (1) gains and losses



235-089-1

from sales and exchanges of capital assets held for not more than 9 months; (2) gains and losses from sales and exchanges of capital assets held for more than 9 months; (3) gains and losses from sales and exchanges of property described in section 1231; (4) charitable contributions; (5) qualifying dividends; (6) taxes described in section 901; (7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations (see instructions for Schedule K); and (8) taxable income or loss (ordinary income) exclusive of items 1 through 7, above.

**N. Distribution of Unrealized Receivables and Inventory Items.**—If a partner receives a distribution of unrealized receivables or substantially appreciated inventory items in exchange for all or part of that partner's interest in other partnership property (including money), treat the transaction as a sale or exchange between the partner and the partnership. Treat the partnership gain or loss as ordinary income or loss. In computing the partners' distributive shares of such ordinary income or loss, allocate it only to partners other than the distributee partner who will take such amount into account separately under section 702(a)(8). See section 751 and related Regulations.

**O. Net Operating Loss Deduction.**—A partnership is not allowed the deduction for net operating losses. Partners computing their own net operating loss or taxable income for any taxable year for the purposes of the computation required by section 172, must take into account their share of the partnership's income and losses, subject to the limitations in sections 465(a) and 704(b) and (d).

**P. Specially Allocated Items.**—Allocate distributive shares of income, gain, loss, deduction, or credit among the partners under the partnership agreement for sharing income or loss generally. If the partners agree, specific items may be allocated among them in a ratio different than that for sharing income or loss generally and such allocations may be recognized under provisions of section 704. For instance, if the net income exclusive of specially allocated items is divided evenly among three partners but some special items are allocated 50 percent to one, 30 percent to another, and 20 percent to the third partner, report the special items on Schedule K, line 15, instead of on the numbered lines on page 1 of the form. (See instructions for Schedules K and K–1 on page 6.)

**Q. Attachments.**—If you need more space on forms or schedules, attach separate sheets and use the same arrangement as the printed forms, but show your totals on the printed forms. Be sure to put the partnership's name and employer identification number on these separate sheets.

**R. Information Regarding Schedule K–1.**—Prepare and furnish Schedules K–1 to all partners. Schedule K–1 reflects the portion of the total distributive amounts on Schedule K that are allocated to each partner.

PROOF AS OF OCT 25

**S. Definitions.**—

*(1) General Partner.*—A general partner is a member of the organization who, except as provided in section 301.7701–2 (d)(2) of the Regulations, is personally liable for the obligations of the partnership.

*(2) Limited Partner.*—A limited partner is one who may not be held responsible for partnership debts, and whose potential personal liability is confined to the amount of money or other property that the partner contributed or is required to contribute to the partnership.

*(3) Limited Partnership.*—A limited partnership is one composed of at least one general partner and one or more limited partners, organized under the Uniform Limited Partnership Act or comparable State statute.

*(4) Nonrecourse Loans.*—Nonrecourse loans are those liabilities of the partnership for which none of the partners have any liability.

**T. Special Rules.**—

*(1) Organization and Syndication Expenses.*—Amounts paid or incurred to organize a partnership or promote the sale of an interest in a partnership are capital expenditures subject to section 263, and as such are not deductible. The partnership may elect to amortize the organization expenses over a period of 60 or more months, beginning with a month in which the partnership begins business. Include the unamortized organization balance and the amount for syndication expenses on Schedule L—Balance Sheets. See the note in specific instruction 14 for the treatment of such amounts paid to a partner.

*(2) Contributions to the Partnership.*—Generally, no gain or loss is recognized to the partnership or any of the partners when property is contributed to the partnership in exchange for an interest in the partnership. This rule does not apply to any gain realized on a transfer of property to a partnership that would be treated as an investment company (within the meaning of section 351) if the partnership were incorporated.

*(3) Production Costs of Films, Books, Records, or Similar Property.*—Except in the case of production costs charged to a capital account, amounts attributable to the production of a film, sound recording, book, or similar property are deductible only in those taxable years ending during the period within which the partnership reasonably may expect to receive substantially all of the income from such property. See section 280 for definitions and the method of computing the deduction allowed for the year. If a corporation is a member of the partnership, consult an Internal Revenue Service office for assistance.

# Specific Instructions

These instructions correspond with line numbers on the first page of the return, and with schedules appearing on its other pages.

**1. Gross Receipts.**—Enter gross receipts or sales from all business operations except those required to be reported on lines 4 through 11.

*Installment Sales.*—If, under section 453, you use the installment method, attach a schedule showing separately for the current year and the three preceding years the following: *(a)* gross sales; *(b)* cost of goods sold; *(c)* gross profits; *(d)* percentage of gross profits to gross sales; *(e)* amount collected; and *(f)* gross profit on amount collected.

*Farmer's Income Schedule.*—For farm income, attach Schedule F (Form 1040). (See instruction 9.)

**2. Cost of Goods Sold (Schedule A).**—If the production, manufacture, purchase, or sale of merchandise is an income-producing factor in the trade or business, inventories of merchandise on hand should be taken at the beginning and end of the taxable year. They may be valued at cost; cost or market, whichever is lower; or any other method approved by the Commissioner. The valuing method you adopt for the first year is controlling, and can be changed only if you obtain permission from the Commissioner.

If the partnership wants to adopt the LIFO inventory method provided in section 472, it must file application to do so on Form 970 or attach a statement that contains all the information required by Form 970.

Items withdrawn from inventory or purchases for the personal use of individual partners should not be included as part of the cost of goods sold. Account for them in Schedules M and K–1.

*Cost of Operations (Where Inventories are not an Income-determining Factor).*—If the amount you enter on line 2 includes an amount applicable to the cost of operations, complete Schedule A.

**4. Ordinary Income (Loss) from Other Partnerships and Fiduciaries.**—If one partnership, (partnership A) is a partner in another partnership (partnership B), partnership A will enter on this line its distributive share of ordinary income (loss) as reported on the Schedule K–1 issued to partnership A by partnership B. If the distributive share is a loss, it must be limited to the amount of the adjusted basis of A's interest in partnership B as of the end of partnership B's year in which the loss occurred. If A's taxable year does not coincide with the annual accounting period of partnership B, include in A's return the distributive share of the ordinary income (loss) for the accounting period of partnership B ending within the period for which A's return is filed.

Partnership A will consider its distributive share of other items separately reported on the Schedule K–1 issued by partnership B (see general instruction M (1) through (7)) as if such items were realized directly from the source from which realized by partnership B or incurred in the same manner as incurred by partnership B. For example, partnership A's distributive share of partnership B's capital gains or (losses) should be reported on Schedule D (Form 1065), lines 2 and 5.

**5. Nonqualifying Dividends.**—Nonqualifying dividends are taxable dividends which are included in ordinary income and for which the individual partner is **not** entitled to an exclusion. Such dividends are derived from the following sources:

*(a)* Corporations which, for their taxable year in which the distribution is made or for their next preceding taxable year, are exempt from tax under section 501 (charitable, etc., organizations) or section 521 (farmers' cooperatives).

*(b)* Mutual savings banks, cooperative banks, domestic building and loan associations, domestic savings and loan associations, Federal savings and loan associations, on deposits or withdrawable accounts. Report dividends from these organizations as interest.

*(c)* Regulated investment companies, except to the extent designated by the company to be taken into account as a dividend for these purposes.

*(d)* Certain real estate investment trusts under sections 856 to 858.

*(e)* Foreign corporations, including your share from a controlled foreign corporation.

Qualifying dividends are taxable dividends received from domestic corpora-

# Exhibit E

Department of the Treasury, Internal Revenue Service, Publication 533, Information on Self-Employment Tax, 1978 Edition, For Use in Preparing 1977 Returns

(Publication 533 Pages 1 and 2)

(In the far right column of page 2, instructing limited and inactive partners (for a tax year prior to the applicability of the Social Security Amendments of 1977) to "include the distributive share of partnership income or loss and any guaranteed payments in determining net earnings from self-employment)

Publication 533

# Information on Self-Employment Tax

FLORIDA LIBRARIES 1977 DEC DOCUMENTS DEPT.

1978 Edition

For use in preparing 1977 Returns

Department of the Treasury
**Internal Revenue Service**



## Introduction

The self-employment tax is part of the system for providing social security coverage for persons who work for themselves. Each self-employed person must pay self-employment tax on part or all of his or her income to help finance social security benefits, which are payable to self-employed persons as well as wage earners.

You must have a social security account number if you are subject to the self-employment tax. If you do not have one, apply for it on Form SS-5, *Application for a Social Security Number,* available at any Social Security office, most post offices, and Internal Revenue offices. Fill it out and mail it to the Social Security office serving your area. If you already have a social security account number, do not apply for another one, even though you may have obtained your number while you were an employee.

If you had a number and lost it, file Form SS-5 indicating the State and approximate date you applied for your number originally. This way you will obtain the original number, ***not*** a new one.

You must file an income tax return and pay self-employment tax if you have net earnings from self-employment of $400 or more, even though you are not otherwise required to file an income tax return. Self-employment tax is computed on separate Schedule SE (Form 1040).

**Estimated income tax.** Your declaration of estimated income tax must include, in addition to your estimated income tax, the self-employment tax attributable to your estimated self-employment income. If, in addition to being self-employed, you receive wages subject to withholding, you may arrange with your employer to increase your withholding to cover the estimated self-employment tax.

You may be subject to a penalty for failure to pay in full a correct installment of estimated tax on or before its due date. For more information obtain Publication 505, *Tax Withholding and Declaration of Estimated Tax,* from any Internal Revenue office.

**U.S. citizens abroad** are subject to the self-employment tax. However, these self-employed citizens may earn a limited amount without incurring a self-employment tax liability if they meet the bona fide residence test. See Publication 54, *Tax Guide for U.S. Citizens Abroad,* available from any Internal Revenue office.

**For an explanation of the benefits** available to you and your family under the social security program, consult your nearest Social Security Administration office.

## Who Is Liable For This Tax

If you carry on a trade or business as a ***sole proprietor,*** are a ***member of a partnership,*** render service as an ***independent contractor,*** or are otherwise ***in business for yourself,*** you are probably liable for self-employment tax and eligible for participation in the social security program.

**Generally, a trade or business** is an activity carried on for livelihood or for profit. An activity may be considered a trade or business if it is entered into and carried on in good faith for the purpose of making a profit. Two characteristic elements of a trade or business are regularity of activities and transactions and the production of income.

***Example 1.*** The income that a doctor, as a sole practitioner, receives from the practice of medicine would be considered earnings from a trade or business and subject to self-employment tax for social security purposes.

***Example 2.*** A member's distributive share of the income from an ***investment club partnership*** whose activities are limited to investment in savings certificates, stock, or securities and the collection of interest or dividends for its members' accounts is ***not*** earnings from self-employment for social security purposes because the partnership is not engaged in a trade or business.

***Note.*** The facts in each case determine whether or not the activity is a trade or business for self-employment tax purposes.

***If you have more than one trade or business,*** your net earnings from self-employment are the combined net earnings from all your businesses. Thus, a loss sustained in one business will reduce the income derived from another.

Even if you are fully insured under the Social Security Act, you must pay the proper amount of self-employment tax on your annual earnings.

**Self-employed** means more than regular full-time business activities. It also covers certain part-time work including what you do at home or on the side in addition to your regular job. Some examples of self-employment are as follows.

***Bookkeeping.*** An individual performing bookkeeping and related services for several clients as an ***independent contractor*** is engaged in a trade or business. The income from this source is self-employment income.

***Sideline.*** T. V. Jones is employed full-time as a clerk by the Green Co., but in his spare time he services televisions and radios. Mr. Jones has ***his own shop,*** equipment and tools, and obtains customers through advertising and the recommendation of former customers. The income from the television and radio service is self-employment income.

***An executor's or administrator's fees*** for administering a deceased person's estate are earnings from self-employment if the fiduciary (that is, the executor or administrator) is

1) A professional fiduciary;

2) A nonprofessional fiduciary who administers an estate that includes an active trade or business, but only if:
   a) Such person actively participates in the operation of the business; and
   b) The fees received are related to the operation of the trade or business; *or*
3) A nonprofessional fiduciary of a single estate, the administration of which requires extensive managerial activities on his or her part over a long period of time, but only if these activities are sufficient in scope and duration to constitute the carrying on of a trade or business.

***Research grants.*** An individual who receives under a research grant funds which are taxable, and who is free from the control and direction of the grantor is an independent contractor. Such funds are included in the individual's net earnings from self-employment.

***Rentals from real estate.*** The rentals that an individual receives from real estate and from personal property leased with the real estate are not net earnings from self-employment unless the individual is engaged in a trade or business as a real estate dealer.

Payments for the use or occupancy of ***hotels, boarding houses, or apartment houses*** furnishing hotel services do not constitute rentals from real estate if services are provided for the occupants; consequently, these payments are included in determining net earnings from self-employment. Generally, services are considered rendered for the occupants if the services are primarily for the convenience of the occupants and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes a service for the convenience of the occupants. However, services, such as the furnishing of heat and light, the cleaning of stairways, exits, and lobbies, and the collection of trash are not considered services furnished for the convenience of the occupants.

***Trailer park owners*** providing land, services, and facilities for trailer owners must include all amounts received from this activity in computing net earnings from self employment. These amounts are not rentals from real estate, as explained previously.

***Certain members of the crew*** performing services on a boat that is engaged in the catching of fish or other forms of aquatic life are considered self-employed if:

1) The members do not receive nor are entitled to any cash remuneration;
2) The members receive shares of the boat's catch of fish or shares of the proceeds from the sale of the catch;
3) The amount of each member's share depends on the amount of the boat's catch of fish, and
4) The operating crew of the boat is normally made up of fewer than 10 individuals.

If these conditions are met the members of the crew are responsible for self-employment tax and estimated tax payments. For further information see Publication 595, *Tax Guide for Commercial Fishermen.*

***Community income.*** If any of the income from a trade or business is community income under State community property laws, all the gross income and related deductions are generally treated as gross income and deductions of the husband for self-employment tax purposes. However, if the wife exercises substantially all the management and control over the business, all the gross income and related deductions are treated as income and deductions of the wife. A wife is not considered a self-employed person unless she has her own business or unless she is an actual member of a partnership.

***Joint returns.*** Even though you file a joint income tax return, your spouse is not considered to be a self-employed person with respect to your net earnings from your self-employment. Thus, your spouse cannot qualify for Social Security coverage on the basis of your self-employment earnings. If your spouse has self-employment income, it is subject to the self-employment tax. If you both have self-employment income, each of you must file a separate Schedule SE.

**Partnerships.** If you are a partner you must include your distributive share of partnership income or loss in computing your net earnings from self-employment.

**Guaranteed payments** you receive from your partnership should be included, plus your share of earnings or minus your share of losses.

***If your tax year is different*** from that of your partnership, you must include your distributive share of partnership income or loss for the partnership tax year that ends within your tax year.

***Example.*** You file your return on the calendar-year basis and your partnership uses the fiscal year ending January 31. You must include your distributive share of partnership earnings and your guaranteed payments for the fiscal year ending January 31, 1977, in your return for the calendar year 1977.

***If a partner dies*** within the partnership tax year, the decedent's self-employment income will include his or her distributive share of the income earned by the partnership through the end of the month in which his or her death occurs. This is true even though the decedent's estate or heirs may succeed to rights in the partnership. For this purpose, the partnership income for the year is considered to be earned ratably each month.

For example, suppose that a partner's distributive share of profits for the partnership year ending June 30, 1977, was $2,000. The partner, who filed a return on a calendar-year basis, died on August 18, 1977. For the partnership year ending June 30, 1978, assume that the distributive share of the partner and the partner's estate was $3,000. The deceased partner's self-employment income to be shown on his or her 1977 return will be $2,000 plus $500 (2/12 of $3,000), or $2,500.

***A limited or inactive partner*** will include the distributive share of partnership income or loss and any guaranteed payments in determining net earnings from self-employment.

**Corporations.** The performance of services as an officer or employee of a corporation does not subject you to self-employment tax even though you may own most or all of the corporate stock.

Fees received for performing services as a ***director*** of a corporation are includible in self-employment income. It is immaterial whether remuneration is received for attending directors' meetings or for serving on committees.

***Subchapter S corporations.*** You are not liable for self-employment tax on income taxed to you as a shareholder of a Subchapter S corporation.

**Unincorporated organizations.** Generally, you are not considered self-employed if you are a member of an unincorporated organization that has certain corporate characteristics and is classified as an association taxable as a corporation. See the discussion of such organizations in Publication 542, *Corporations and the Federal Income Tax,* which you may obtain from any Internal Revenue office.

## Exceptions

In general, every individual carrying on a ***trade, business,*** or ***profession,*** either individually or in partnership, is subject to the self-employment tax, with the following exceptions.

**Public officials,** elected or appointed, and State employees are generally not subject to the self-employment tax on income derived from their positions.

For example, an elected tax collector who accounts for and turns over all collected taxes to the treasurer of the taxing authority and who is compensated from State funds on the basis of a fixed percentage of the taxes collected is not engaged in a trade or business and does not have income from self-employment.

However, if an employee of a State or its political subdivision is compensated ***solely*** on a fee basis for services not covered under a Federal-State social security agreement, the fee is self-employment income unless, before the due date of the employee's 1968 tax return, that individual elected not to have the fee covered under the self-employment provisions.

**Nonresident aliens** are not subject to the self-employment tax. ***Residents of the Virgin Islands, Puerto Rico, Guam, or American Samoa,*** however, are not considered nonresident aliens for self-employment tax purposes and are therefore subject to this tax.



Digitized by Google

# Exhibit F

Department of the Treasury, Internal Revenue Service, Publication 533, Information on Self-Employment Tax, 1979 Edition, For Use in Preparing 1978 Returns

(Publication 533 Pages 1 and 2)

(In the far right column of page 2, instructing limited partners (but not inactive partners) to "exclude the distributive share of partnership income or loss in determining earnings from self-employment but will include only guaranteed payments, such as salary and professional fees, received for services performed by the limited partner for the partnership")

Publication 533

# Information on Self-Employment Tax

## 1979 Edition

For use in preparing 1978 Returns

Department of the Treasury
**Internal Revenue Service**



### Introduction

**The self-employment tax is part of the system for providing social security coverage for persons who work for themselves. Each self-employed person must pay self-employment tax on part or all of his or her income to help finance social security benefits, which are payable to self-employed persons as well as wage earners.**

You must have a social security account number if you are subject to the self-employment tax. If you do not have one, you should apply for it on Form SS-5, *Application for a Social Security Number,* which is available at any Social Security office, most post offices, and Internal Revenue Service offices. Complete the form and mail it to the Social Security office serving your area. If you already have a social security account number, you should not apply for another one, even though you may have obtained your number while you were an employee.

UNIVERSITY OF FLORIDA LIBRARIES DOCUMENTS DEPT.

If you had a number and lost it, you should file Form SS–5, indicating the State in which and the approximate date on which you originally applied for your number. This way you will obtain the original number and *not* a new one.

You must file an income tax return and pay self-employment tax if you have net earnings from self-employment of $400 or more, even though you are not otherwise required to file an income tax return. Self-employment tax is computed on a separate Schedule SE (Form 1040).

**Estimated income tax.** Your declaration of estimated income tax must include, in addition to your estimated income tax, the self-employment tax attributable to your estimated self-employment income. If, in addition to being self-employed, you receive wages subject to withholding, you may arrange with your employer to increase your withholding to cover the estimated self-employment tax.

You may be subject to a penalty for failure to pay in full a correct installment of estimated tax on or before its due date. For more information obtain Publication 505, *Tax Withholding and Declaration of Estimated Tax,* from any Internal Revenue Service office.

**U.S. citizens abroad** are subject to the self-employment tax. However, these self-employed citizens may earn a limited amount without incurring a self-employment tax liability if they meet the bona fide residence test. See Publication 54, *Tax Guide for U.S. Citizens Abroad,* available from any Internal Revenue Service office.

**U.S. citizens operating a business in U.S. possession.** A U.S. citizen who owns and operates a business in Puerto Rico, Guam, Northern Mariana Islands (beginning January 1, 1979), American Samoa, or the Virgin Islands must pay tax on self-employment income (if it amounts to $400 or more) from those sources whether or not it is exempt from U.S. income taxes (or whether or not a U.S. income tax return is required). Unless one of the following special income tax rules applies, attach Schedule SE (Form 1040) to your U.S. income tax return. For self-employment income from sources within Guam and the Northern Mariana Islands (beginning January 1, 1979), or self-employment income from sources within American Samoa that is exempt from U.S. income taxes, or income of bona fide residents of the Virgin Islands, the tax on which is not paid to the United States, compute self-employment tax on Form 1040SS. For self-employment income from sources within Puerto Rico, file Form 1040SS or Form 1040PR if appropriate. These forms must be filed with the Internal Revenue Service Center, Philadelphia, PA 19255. For more information on U.S. citizens in U.S. possession see Publication 570, *Tax Guide for U.S. Citizens Employed in U.S. Possessions.*

**Social Security benefits.** For an explanation of the benefits available to you and your family under the social security program, consult your nearest Social Security Administration office.

## Who Is Liable

If you carry on a trade or business as a ***sole proprietor,*** are a ***member of a partnership,*** render service as an ***independent contractor,*** or are otherwise ***in business for yourself,*** you are probably liable for self-employment tax and eligible for participation in the social security program.

**A trade or business** is generally an activity carried on for livelihood or for profit. An activity may be considered a trade or business if it is entered into and carried on in good faith for the purpose of making a profit. Two characteristic elements of a trade or business are regularity of activities and transactions and the production of income.

***Example 1.*** The income that a doctor, as a sole practitioner, receives from the practice of medicine would be considered earnings from a trade or business and subject to self-employment tax for social security purposes.

***Example 2.*** A member's distributive share of the income from an ***investment club partnership*** whose activities are limited to investment in savings certificates, stock, or securities and the collection of interest or dividends for its members' accounts is ***not*** earnings from self-employment for social security purposes because the partnership is not engaged in a trade or business.

The facts in each case determine whether or not the activity is a trade or business for self-employment tax purposes.

***If you have more than one trade or business,*** your net earnings from self-employment are the combined net earnings from all your businesses. Thus, a loss sustained in one business will reduce the income derived from another.

Even if you are fully insured under the Social Security Act, you must pay the proper amount of self-employment tax on your annual earnings.

**Self-employed** means more than regular full-time business activities. It also covers certain part-time work including what you do at home or on the side in addition to your regular job.

Digitized by Google

Some examples of self-employment are as follows.

***Bookkeeping.*** An individual performing bookkeeping and related services for several clients as an ***independent contractor*** is engaged in a trade or business. The income from this source is self-employment income.

***Sideline.*** T. V. Jones is employed full-time as a clerk by the Green Co., but in his spare time he services televisions and radios. Mr. Jones has ***his own shop,*** equipment and tools, and obtains customers through advertising and the recommendation of former customers. The income from the television and radio service is self-employment income.

***An executor's or administrator's fees*** for administering a deceased person's estate are earnings from self-employment if the fiduciary (that is, the executor or administrator) is:

1) A professional fiduciary;
2) A nonprofessional fiduciary who administers an estate that includes an active trade or business, but only if:
   a) Such person actively participates in the operation of the business, and
   b) The fees received are related to the operation of the trade or business; *or*
3) A nonprofessional fiduciary of a single estate, the administration of which requires extensive managerial activities on the part of the executor or administrator over a long period of time, but only if these activities are sufficient in scope and duration to constitute the carrying on of a trade or business.

***Research grants.*** An individual who receives under a research grant funds, which are taxable, and who is free from the control and direction of the grantor is an independent contractor. Such funds are included in the individual's net earnings from self-employment.

***Rentals from real estate.*** The rentals that an individual receives from real estate and from personal property leased with the real estate are not net earnings from self-employment, unless the individual is engaged in a trade or business as a real estate dealer.

Payments for the use or occupancy of ***hotels, boarding houses, or apartment houses*** that furnish hotel services do not constitute rentals from real estate if services are provided for the occupants. These payments are included in determining net earnings from self-employment. Generally, services are considered rendered for the occupants if the services are primarily for the convenience of the occupants and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes a service for the convenience of the occupants. However, services, such as the furnishing of heat and light, the cleaning of stairways, exits, and lobbies, and the collection of trash are not considered services furnished for the convenience of the occupants.

***Trailer park owners*** providing land, services, and facilities for trailer owners must include all amounts received from this activity in computing net earnings from self employment. These amounts are not rentals from real estate, as explained previously.

***Certain members of the crew*** performing services on a boat that is engaged in the catching of fish or other forms of aquatic life are considered self-employed if:

1) The members do not receive nor are they entitled to receive any cash remuneration;
2) The members receive shares of the boat's (or the boats' in an operation involving more than one boat) catch of fish or shares of the proceeds from the sale of the catch;
3) The amount of each member's share depends on the amount of the boat's (or the boats' in an operation involving more than one boat) catch of fish, and
4) The operating crew of the boat is normally made up of fewer than ten individuals.

If these conditions are met the members of the crew are responsible for self-employment tax and estimated tax payments. For further information see Publication 595, *Tax Guide for Commercial Fishermen.*

***Community income.*** If any of the income from a trade or business is community income under State community property laws, all the gross income and related deductions are generally treated as gross income and deductions of the husband for self-employment tax purposes. However, if the wife exercises substantially all the management and control over the business, all the gross income and related deductions are treated as income and deductions of the wife. A wife is not considered a self-employed person unless she has her own business or unless she is an actual member of a partnership.

***Joint returns.*** Even though you file a joint income tax return, your spouse is not considered to be a self-employed person with respect to your net earnings from your self-employment. Thus, your spouse cannot qualify for Social Security coverage on the basis of your self-employment earnings. If your spouse has self-employment income, it is subject to the self-employment tax. If you both have self-employment income, each of you must file a separate Schedule SE (Form 1040).

**Partnerships.** If you are a partner, you must include your distributive share of partnership income or loss in computing your net earnings from self-employment.

**Guaranteed payments** you receive from your partnership should be included, plus your share of earnings or minus your share of losses.

***If your tax year is different*** from that of your partnership, you must include your distributive share of partnership income or loss for the partnership tax year that ends within your tax year.

***Example.*** You file your return on the calendar-year basis and your partnership uses the fiscal year ending January 31. You must include your distributive share of partnership earnings and your guaranteed payments for the fiscal year ending January 31, 1978, in your return for the calendar year 1978.

***If a partner dies*** within the partnership tax year, the decedent's self-employment income will include his or her distributive share of the income earned by the partnership through the end of the month in which his or her death occurs. This is true even though the decedent's estate or heirs may succeed to rights in the partnership. For this purpose, the partnership income for the year is considered to be earned ratably each month.

For example, suppose that a partner's distributive share of profits for the partnership year ending June 30, 1978, was $2,000. The partner, who filed a return on a calendar-year basis, died on August 18, 1978. For the partnership year ending June 30, 1979, assume that the distributive share of the partner and the partner's estate was $3,000. The deceased partner's self-employment income to be shown on his or her 1978 return will be $2,000 plus $500 (2/12 of $3,000), or $2,500.

***A limited or inactive partner*** will include the distributive share of partnership income or loss and any guaranteed payments in determining net earnings from self-employment. After 1977, a limited partner will ***exclude*** the distributive share of partnership income or loss in determining earnings from self-employment but will include only guaranteed payments, such as salary and professional fees, received for services performed by the limited partner for the partnership.

**Corporations.** The performance of services as an officer or employee of a corporation does not subject you to self-employment tax even though you may own most or all of the corporate stock.

Fees received for performing services as a ***director*** of a corporation are includible in self-employment income. It is immaterial whether remuneration is received for attending directors' meetings or for serving on committees.

***Subchapter S corporations.*** You are not liable for self-employment tax on income taxed to you as a shareholder of a Subchapter S corporation.

**Unincorporated organizations.** Generally, you are not considered self-employed if you are a member of an unincorporated organization that has certain corporate characteristics and is classified as an association taxable as a corporation. See the discussion of such organizations in Publication 542, *Corporations and the Federal Income Tax,* which you may obtain from any Internal Revenue Service office.

## Exceptions

In general, every individual carrying on a ***trade, business,*** or ***profession,*** either individually or in partnership, is subject to the self-employment tax, with the following exceptions.

**Public officials,** elected or appointed, and State employees are generally not subject to the self-employment tax on income derived from their positions.

For example, an elected tax collector who accounts for and turns over all collected taxes to the treasurer of the taxing authority and who



Digitized by Google