# 25-2079 (L), 25-2250 (Con)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SOROBAN CAPITAL PARTNERS LP,
SOROBAN CAPITAL PARTNERS GP LLC TAX MATTERS PARTNER,

Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

ON APPEAL FROM THE DECISION OF
THE UNITED STATES TAX COURT

## ANSWERING BRIEF FOR THE APPELLEE

BRETT A. SHUMATE
*Assistant Attorney General*
JOSHUA WU
*Deputy Assistant Attorney General*

ELLEN PAGE DELSOLE (202) 514-8128
NORAH E. BRINGER (202) 307-6224
*Attorneys, Tax Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Post Office Box 502, Washington, D.C. 20044*

## TABLE OF CONTENTS

Page

Table of contents ... i
Table of authorities ... iv
Glossary ... xii
Statement of jurisdiction ... 1
Statement of the issues ... 1
Statement of the case ... 3

A. Factual Background ... 4

1. Soroban's ownership and governance ... 4

2. The Principals' pivotal roles in Soroban ... 4

3. Soroban's payments to the Principals and tax reporting ... 6

4. IRS administrative determinations ... 7

B. Tax Court proceedings ... 7

1. The Tax Court decides the legal test ... 7

2. The Tax Court applies the test in other cases ... 9

3. The Tax Court applies the test to Soroban ... 10

Summary of argument ... 12
Argument ... 16

I. Soroban's computation of net earnings from self-employment is a partnership item ... 16

Standard of review ... 16

A. Introduction: TEFRA and partnership items ... 16

B. Net earnings from self-employment is a partnership item ... 19

1. Net earnings from self-employment must be "taken into account" for Soroban's taxable year under subtitle A .......... 19

2. Net earnings from self-employment are more appropriately determined at the partnership level .......... 24

C. Net earnings from self-employment do not depend on siloed facts about each Principal .......... 28

II. The Tax Court correctly found that Soroban's Principals were not "limited partners, as such" under §1402(a)(13) .......... 32

Standard of review .......... 32

A. Social Security and self-employed individuals .......... 32

B. Fundamental principles of federal taxation dictate the approach taken by the Tax Court .......... 36

1. Federal—not state—law controls the interpretation of a federal tax statute .......... 36

2. Federal tax law is concerned with economic realities .......... 41

3. Federal tax law should be uniform nationwide .......... 43

C. The Tax Court's functional analysis is consistent with the ordinary meaning of "limited partner" in 1977 .......... 45

1. Historically, a limited partner did not participate in conducting, much less controlling, the partnership's business .......... 46

2. The statutory purpose, context, and scheme confirm this reading .......... 54

3. Legislative history provides further support ..... 56

4. The Fifth Circuit's opinion in *Sirius* is fundamentally flawed and unpersuasive ........... 58

D. Soroban's and *amici*'s remaining arguments lack merit ........ 61

1. There is no conflict between the Tax Court's analysis and other Code provisions .................... 61

2. IRS and SSA publications do not support Soroban ........ 69

3. The 1997 congressional moratorium does not undermine the Commissioner's position ............ 73

E. Soroban has forfeited any challenge to the Tax Court's factual findings ........ 74

Conclusion ........ 78
Certificate of compliance ........ 79
Statutory addendum ........ 80
Addendum ........ 96

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*In re Adelphia Commc'ns Corp*,
376 B.R. 87 (Bankr. S.D.N.Y. 2007) ..... 53
*Alexander v. IRS*,
72 F.3d 938 (1st Cir. 1995) ..... 25
*Alphonso v. Commissioner*,
708 F.3d 344 (2d Cir. 2013) ..... 40-41
*Altria Grp., Inc. v. United States*,
658 F.3d 276 (2d Cir. 2011) ..... 42, 52
*Aquilino v. United States*,
363 U.S. 509 (1960) ..... 40
*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) ..... 23
*Baylin v. United States*,
30 Fed. Cl. 248 (1993) ..... 29
*Bedrosian v. Commissioner*,
940 F.3d 467 (9th Cir. 2019) ..... 27
*Bergeson v. Life Ins. Corp. of Am.*,
170 F. Supp. 150 (D. Utah 1958) ..... 48-49
*Boulware v. United States*,
552 U.S. 421 (2008) ..... 42
*Burchell v. Helvering*,
115 F.2d 681 (2d Cir. 1940) ..... 40
*Burk-Waggoner Oil Ass'n v. Hopkins*,
269 U.S. 110 (1925) ..... 38
*Burnet v. Harmel*,
287 U.S. 103 (1932) ..... 36-37
*Callaway v. Commissioner*,
231 F.3d 106 (2d Cir. 2000) ..... 16-18, 24-25
*Chimblo v. Commissioner*,
177 F.3d 119 (2d Cir. 1999) ..... 27
*Commissioner v. Culbertson*,
337 U.S. 733 (1949) ..... 39, 76
*Commissioner v. Groetzinger*,
480 U.S. 23 (1987) ..... 21

**Cases (cont'd): Page(s)**

*Commissioner v. Tower*,
327 U.S. 280 (1946) .......... 39
*Delaney v. Fid. Lease Ltd.*,
526 S.W.2d 543 (Tex. 1975) .......... 48, 65
*Denham Cap. Mgmt. LP v. Commissioner*,
T.C. Memo. 2024-114, 2024 WL 5200039 (2024) .......... 9, 75
*Dolan v. U.S. Postal Serv.*,
546 U.S. 481 (2006) .......... 54
*Donroy Ltd. v. United States*,
196 F. Supp. 54 (N.D. Cal. 1961) .......... 48
*Estate of Ellsasser v. Commissioner*,
61 T.C. 241 (1973) .......... 34
*Exec. Hotel Assocs. v. Elm Hotel Corp.*,
245 N.Y.S.2d 929 (Civ. Ct. 1964) .......... 48
*Field v. United States*,
328 F.3d 58 (2d Cir. 2003) .......... 26
*Foxfield Villa Assocs., LLC v. Robben*,
967 F.3d 1082 (10th Cir. 2020) .......... 53
*Frigidaire Sales Corp. v. Union Properties, Inc.*,
562 P.2d 244 (Wash. 1977) .......... 49-50, 65
*Gerstenbluth v. Credit Suisse Secs. (USA) LLC*,
728 F.3d 139 (2d Cir. 2013) .......... 69
*Gluck v. Commissioner*,
2022 WL 802766 (2d Cir. Mar. 17, 2022) .......... 18, 25
*Grainger v. Antoyan*,
313 P.2d 848 (Ca. 1957) .......... 49
*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) .......... 67
*Hardy v. Commissioner*,
T.C. Memo. 2017-16 .......... 63
*Harper v. Del. Valley Broadcasters, Inc.*,
743 F. Supp. 1076 (D. Del. 1990) .......... 53
*Heiner v. Mellon*,
304 U.S. 271 (1938) .......... 39
*Hewlett-Packard Co. v. Commissioner*,
875 F.3d 494 (9th Cir. 2017) .......... 76

**Cases (cont'd):** **Page(s)**

*Holzman v. de Escamilla*,
86 Cal. App. 2d 858 (1948) .......... 49
*Huff v. Commissioner*,
138 T.C. 258 (2012) .......... 23
*Katz v. Commissioner*,
335 F.3d 1121 (10th Cir. 2003) .......... 29
*Keener v. United States*,
551 F.3d 1358 (Fed. Cir. 2009) .......... 19-20, 27
*Knetsch v. United States*,
364 U.S. 361 (1960) .......... 52
*Life Care Centers of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496 (6th Cir. 1996) .......... 53
*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 18
*Losantiville Country Club v. Commissioner*,
906 F.3d 468 (6th Cir. 2018) .......... 76
*Lyeth v. Hoey*,
305 U.S. 188 (1938) .......... 36, 43-45
*Maier v. Commissioner*,
360 F.3d 361 (2d Cir. 2004) .......... 16
*Marin TV Servs. Partners, Ltd. v. FCC*,
993 F.2d 261 (D.C. Cir. 1993) .......... 53
*Marlin Broad. of Cent. Fla., Inc. v. FCC*,
952 F.2d 507 (D.C. Cir. 1992) .......... 53
*Martin v. Commissioner*,
149 T.C. 293 (2017) .......... 27
*Marx v. Gen. Rev. Corp.*,
568 U.S. 371 (2013) .......... 67
*Mayo Found. for Med. Educ. & Rsch. v. United States*,
562 U.S. 44 (2011) .......... 32
*Mellouli v. Lynch*,
575 U.S. 798 (2015) .......... 55
*Monti v. United States*,
223 F.3d 76 (2d Cir. 2000) .......... 21, 26
*Moore v. United States*,
602 U.S. 572 (2024) .......... 38

**Cases (cont'd):** **Page(s)**

*Morgan v. Commissioner*,
309 U.S. 78 (1940) ....................36-38
*Off. Create Corp. v. Planet Ent., LLC*,
140 F.4th 96 (2d Cir. 2025) ....................32, 74
*Perrin v. United States*,
444 U.S. 37 (1979) ....................45
*Plasteel Prods. Corp. v. Eisenberg*,
170 F. Supp. 100 (D. Mass.) ....................48
*PPL Corp. v. Commissioner*,
569 U.S. 329 (2013) ....................42-43
*Renkemeyer, Campbell & Weaver, LLP v. Commissioner*,
136 T.C. 137 (2011)....................75
*RJT Invs. X v. Commissioner*,
491 F.3d 732 (8th Cir. 2007) ....................20
*Saltzman v. Commissioner*,
131 F.3d 87 (2d Cir. 1997)....................41
*Schweiker v. Hansen*,
450 U.S. 785 (1981) ....................72
*Silvola v. Rowlett*,
272 P.2d 287 (Colo. 1954)....................49
*Sirius Sols., L.L.L.P. v. Commissioner*,
165 F.4th 374 (5th Cir. 2026)..........9, 15, 52, 58-61, 66, 69, 71, 75
*Skolny v. Richter*,
124 N.Y.S. 152 (App. Div. 1910) ....................46
*Soc. Sec. Bd. v. Nierotko*,
327 U.S. 358 (1946) ....................32
*Soni v. Commissioner*,
76 F.4th 49 (2d Cir. 2023) ....................32
*Stevenson v. Commissioner*,
T.C. Memo. 1989-357....................72
*Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*,
943 F.3d 49 (1st Cir. 2019)....................41
*Tallal v. Commissioner*,
778 F.2d 275 (5th Cir. 1985) ....................21

**Cases (cont'd):** **Page(s)**

*Tejada v. Apfel*,
167 F.3d 770 (2d Cir. 1999) ........ 72
*TIFD III-E, Inc. v. United States*,
459 F.3d 220 (2d Cir. 2006) ........ 42, 76
*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989) ........ 53-54
*United States v. Hoskins*,
902 F.3d 69 (2d Cir. 2018) ........ 56-57
*United States v. Josephberg*,
562 F.3d 478 (2d Cir. 2009) ........ 69
*United States v. National Bank of Commerce*,
472 U.S. 713 (1985) ........ 40
*United States v. Pelzer*,
312 U.S. 399 (1941) ........ 43
*United States v. Woods*,
571 U.S. 31 (2013) ........ 17, 29, 31
*Weiner v. United States*,
389 F.3d 152 (5th Cir. 2004) ........ 27
*Wesemann v. Commissioner*,
35 T.C. 1164 (1961) ........ 41

**U.S. Constitution:**

art. I, §8, cl. 1 ........ 36
art. VI, cl. 2 ........ 36

**Statutes:**

Internal Revenue Code (26 U.S.C.):

§ 162 ........ 76
§ 183 ........ 76
§ 212 ........ 29, 76
§ 469 ........ 66-68
§ 701 ........ 16-17

**Statutes (cont'd):** **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 702 .......... 17, 22, 29
§ 703 .......... 17, 22, 29
§ 704 .......... 17, 23
§ 707(a) .......... 6, 63-64
§ 751(a) .......... 29-30
§ 901(b)(1) .......... 42
§ 1401 .......... 1, 12, 19-20, 33
§ 1402 .......... *passim*
§ 1403 .......... 1, 12, 19-20, 33
§ 3101 .......... 1, 32
§ 3102 .......... 1
§ 3111(a) .......... 32
§ 6031(a) .......... 16, 23
§ 6221 .......... 17
§ 6222(a) .......... 17
§ 6223 .......... 1, 17
§ 6225 .......... 17
§ 6226 .......... 1, 17
§ 6229 .......... 27
§ 6230 .......... 17
§ 6231 .......... 12-13, 17-20, 23-24, 28-29
§ 7482(a)(1) .......... 1
§ 7483 .......... 1
§ 7701 .......... 38

42 U.S.C. §405(c)(2)(A) .......... 72

Social Security Act Amendments of 1950,
Pub. L. No. 81-734, 64 Stat. 477 .......... 33
Social Security Amendments of 1965,
Pub. L. No. 89-97, 79 Stat. 286 .......... 34
Social Security Amendments of 1967,
Pub. L. No. 90-248, 81 Stat. 821 (1968) .......... 67

**Statutes (cont'd):** **Page(s)**

Social Security Amendments of 1977,
Pub. L. No. 95-216, 91 Stat. 1509 .......... 35
Tax Equity and Fiscal Responsibility Act of 1982,
Pub. L. No. 97-248, 96 Stat. 324 .......... 1
Tax Reform Act of 1986,
Pub. L. No. 99-514, 100 Stat. 2085 .......... 67
Taxpayer Relief Act of 1997,
Pub. L. No. 105-34, 111 Stat. 788 .......... 73

Del. Code Ann. tit. 6, §17-303 .......... 60, 66

**Legislative materials:**

Sense of the Senate,
143 Cong. Rec. 13168 (June 27, 1997) .......... 73

H.R. Rep. No. 81-1300 .......... 33-34
H.R. Rep. No. 90-544 .......... 68
H.R. Rep. No. 95-702 .......... 8, 34-35, 57, 59, 65, 68
S. Rep. No. 99-313 .......... 68

**Regulations and related materials:**

20 C.F.R. §404.1080(b)(3) .......... 71

Treasury Regulations (26 C.F.R.):

§ 1.702-1(a)(8)(i) .......... 29
§ 1.1401-1(a) .......... 27
§ 1.1402(a)-1(b) .......... 21
§ 301.6231(a)(3)-1 .......... 13, 18, 24-27, 30
§ 301.7701-1(a)(1) .......... 38

51 Fed. Reg. 13212 (April 18, 1986) .......... 27
62 Fed. Reg. 1702 (Jan. 13, 1997) .......... 73

**Other materials:** **Page(s)**

Henry Campbell Black, *A Law Dictionary* (2d ed. 1910) ............46-47
*Black's Law Dictionary* (Rev. 4th ed. 1968)....................................51
*Black's Law Dictionary* (5th ed. 1979) .......................................51-52
Stewart Rapalje & Robert L. Lawrence, *Dictionary of American and English Law* (1888) ..........................................47

*Bromberg and Ribstein on Partnership* (3d. ed. 2025-2 Supp.)................................................................66
*Crane and Bromberg on Partnership* (1968)...................................48
Francis J. Troubat, *The Law of Commandatary and Limited Partnership in the United States* (1853).........................46
Harold Gil Reuschlein & William A. Gregory, *Handbook on the Law of Agency and Partnership* (1979)............................48
Harold P. Packer & George J. Leibowitz, *Coverage of the Self-Employed Under the Old-Age & Survivors Insurance Program*, 36 Calif. L. Rev. 61 (1948)..........................33
J. William Callison & Maureen A. Sullivan, *Partnership Law & Practice: General & Limited Partnerships* (2025-2026) ..........................................................................50
William Draper Lewis, *The Uniform Limited Partnership Act*, 65 U. Pa. L. Rev. 715 (1917) ..............................................46

Revised Uniform Limited Partnership Act (RULPA) (1976) ...........................................................50-51, 65
Uniform Limited Partnership Act (1916) ...........................47, 50, 65

2016 Form 1065 Instructions, https://www.irs.gov/pub/irs-prior/i1065--2016.pdf..................69-70
2017 Form 1065 Instructions, https://www.irs.gov/pub/irs-prior/i1065--2017.pdf.......................70
Partnership Questionnaire, Form SSA-7104, https://www.ssa.gov/forms/ssa-7104.pdf....................................72
Self-employment tax (Social Security and Medicare taxes), https://www.irs.gov/businesses/small-businesses-self-employed/self-employment-tax-social-security-and-medicare-taxes.....................................................58

# GLOSSARY

| **Term** | **Definition** |
|---|---|
| Br. | Soroban's brief |
| FPAA | Final Partnership Administrative Adjustment |
| I.R.C. | Internal Revenue Code (Title 26, U.S.C.) |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| Limited-partner exception | 26 U.S.C. (I.R.C.) §1402(a)(13) |
| MFA.Br. | *Amicus* brief of the Managed Funds Association |
| Partnership-item regulation | 26 C.F.R. (Treas. Reg.) §301.6231(a)(3)-1 |
| POMS | Social Security Administration's Program Operations Manual System |
| Principals | Eric Mandelblatt, Gaurav Kapadia, and Scott Friedman |
| RER.Br. | *Amicus* brief of the Real Estate Roundtable |
| RULPA | Revised Uniform Limited Partnership Act (1976) |
| Soroban | Soroban Capital Partners LP (called "Soroban" by the Tax Court) |
| Soroban GP | Soroban Capital Partners GP LLC (called "petitioner" by the Tax Court) |
| SA | Special Appendix |
| SSA | Social Security Administration |
| TEFRA | Tax Equity and Fiscal Responsibility Act of 1982 |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |
| ULPA | Uniform Limited Partnership Act (1916) |

## STATEMENT OF JURISDICTION

The IRS issued, on April 25, 2022, notices of Final Partnership Administrative Adjustment ("FPAA") for the 2016 and 2017 tax years of Soroban Capital Partners LP ("Soroban").[1] (JA64; JA77-90.) I.R.C. §6223(a)(2). Soroban Capital Partners GP LLC ("Soroban GP"), Soroban's general partner, timely petitioned the Tax Court for readjustment. (JA1-42; *see* SA21 & n.3.) I.R.C. §6226(a)(1). The Tax Court had jurisdiction under I.R.C. §6226(f).

On May 28, 2025, the Tax Court (Judge Buch) entered decisions for the Commissioner. (SA44-45.) Petitioners timely appealed. (JA3521-23.) I.R.C. §7483. This Court has jurisdiction under I.R.C. §7482(a)(1). *See also* I.R.C. §6226(g).

## STATEMENT OF THE ISSUES

Social Security and Medicare are funded by taxes on employees' wages and self-employed persons' "net earnings from self-employment." I.R.C. §§3101-3102 (employee provisions), 1401-1403 (self-employment

---

[1] The FPAAs were issued under the "TEFRA" procedures in effect for 2016 and 2017, and all statutory and regulatory citations are to the provisions for those years. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324. Congress has since repealed the TEFRA procedures. (See SA20 n.2.)

provisions). Net earnings from self-employment include a taxpayer's distributive share of ordinary income from any trade or business carried on by a partnership of which he is a member. I.R.C. §1402(a).

In 1977, Congress was troubled by schemes in which taxpayers obtained Social Security coverage—not by working—but by passively investing small sums in limited partnerships and paying small sums of self-employment tax. Congress therefore enacted the "limited-partner exception," excluding from net earnings from self-employment "the distributive share of any item of income or loss of a limited partner, as such[.]" I.R.C. §1402(a)(13).

That created a new problem: individuals like Soroban's individual partners Eric Mandelblatt, Gaurav Kapadia, and Scott Friedman (collectively, "Principals") evade self-employment tax by relying on their state-law "limited partner" status, despite controlling the business and working full-time in it. This appeal raises two issues:

1. Whether the Tax Court correctly determined that the net earnings from self-employment that Soroban was required to report on its partnership returns was a "partnership item."

2. Whether the Tax Court correctly determined that Soroban's Principals were not "limited partners, as such" under I.R.C. §1402(a)(13).

## STATEMENT OF THE CASE

On its 2016 and 2017 partnership returns, Soroban included—and, notably, excluded—certain items in reporting its partners' net earnings from self-employment, which are subject to self-employment taxes that fund Social Security and Medicare. Soroban *included* a total of only $2.5 million for salary-like "guaranteed payments" to its Principals, plus Soroban GP's share of Soroban's ordinary income. (SA23.)[2] But Soroban *excluded* the Principals' distributive shares of Soroban's ordinary income—totaling $141.5 million—on the theory that this outsized amount fell under §1402(a)(13)'s limited-partner exception for net earnings from self-employment. (*See* SA23.)

After an examination, the IRS increased Soroban's net earnings from self-employment to include the Principals' shares of $141.5 million. (SA31; JA82-83; JA89-90.) The Tax Court upheld the

---

[2] Amounts are rounded. Appellants do not challenge any factual findings, so we primarily reference the Tax Court's second opinion (SA19-42).

adjustment because "Soroban's limited partners were limited partners in name only," under state law, and did not qualify for the limited-partner exception under the federal tax statute (§1402(a)(13)). (SA42; SA44-45.)

### A. Factual Background

#### 1. Soroban's ownership and governance

Soroban was a Delaware limited partnership, and Soroban GP was its general partner. (SA20-21; JA63.) For federal tax purposes, the Principals were *both* Soroban's state-law "limited partners" *and* members of Soroban GP.[3] (SA21; JA66-67.) Mandelblatt and Kapadia had the power to manage Soroban GP, with Kapadia's authority subject only to Mandelblatt's. (SA21, SA28; JA249-50; JA1176.)

#### 2. The Principals' pivotal roles in Soroban

In 2016 and 2017, Soroban derived its entire income, totaling $247 million, from investment-management services. (SA24-25; JA1177-79.) Funds that Soroban managed compensated Soroban based on performance and asset value. (SA24; JA1177-78.) The Principals

[3] Two Principals owned interests through entities that are disregarded for federal tax purposes. (SA21-22; JA66-67.)

"played an essential role in generating this income," and their "unique skills and experience were indispensable to the business." (SA20, SA24-31.) They "managed both the investments and the operations of Soroban and the funds it managed." (SA25; *see* JA1174-76.) They "exercised managerial control over Soroban and worked full time with Soroban" for 2,300-2,500 hours annually. (SA20, SA28-29; JA1173.)

Mandelblatt was Soroban's Managing Partner and Chief Investment Officer, and Kapadia was Co-Managing Partner. (SA25; JA1174.) They "led the investment process" (SA26), and Mandelblatt had "final veto power." (SA25-26; JA1174.) Friedman was Head of Trading and Risk Management. (SA25; JA1174.) Soroban told investors that Mandelblatt "generally managed the funds," and in his absence, Kapadia and Friedman would do so. (SA31.) Mandelblatt's death or permanent absence would be a "Key-Man Event," allowing investors to withdraw their investments. (SA31.) If all Principals were unavailable, the funds would liquidate. (SA31.)

Although Soroban had other managers and employees, "[t]he Principals nonetheless exercised control over the daily business operations," including hiring and firing. (SA27-28; JA1170-76.) The

Principals also served on all but one of Soroban's committees. (SA26-27; JA1183-86.) As the Tax Court found, "[b]ut for the three Principals, Soroban would not exist." (SA31.)

### 3. Soroban's payments to the Principals and tax reporting

This dispute concerns amounts that Soroban included—or, more to the point, excluded—as net earnings from self-employment on its partnership returns. For 2016 and 2017, Soroban *included* (1) $2.5 million for the Principals' salary-like "guaranteed payments" for services (*see* I.R.C. §§1402(a)(13), 707(c)) and (2) $1.4 million in ordinary income allocated to Soroban GP and then to its members, *i.e.*, Soroban's Principals. (SA22-23.) Soroban *excluded* $141.5 million in distributive shares of ordinary income allocated to the Principals, based on their claimed status as "limited partners." (SA23; JA67.) The Principals "contributed little to no capital relative to their shares of income."[4] (SA20.)

[4] Through 2017, only Mandelblatt made cash capital contributions to Soroban, totaling $4.3 million. (SA29; JA1172.)

#### 4. IRS administrative determinations

Following an examination, the IRS issued FPAAs to Soroban. (SA31; JA64; JA77-83 (2016 FPAA); JA84-90 (2017 FPAA).) The IRS made partnership-level adjustments, increasing Soroban's net earnings from self-employment by the $141.5 million allocated to the Principals. (SA31; JA82-83; JA89-90.)[5] No partner-level adjustments—*e.g.*, any downstream adjustments to the Principals' individual self-employment tax liabilities—are at issue here.

### B. Tax Court proceedings

Soroban challenged the FPAAs through petitions filed in the Tax Court (JA1-JA42), which consolidated the cases (JA1148-49).

#### 1. The Tax Court decides the legal test

Soroban moved for summary judgment, positing that the Principals qualified for §1402(a)(13)'s limited-partner exception, and that Soroban properly excluded from net earnings from self-employment the Principals' $141.5 million in distributive shares of ordinary income. As the Tax Court observed, Soroban argued its Principals qualified for

---

[5] For similar reasons, the Commissioner adjusted "gross nonfarm income." (*See* JA82-83; JA89-90.) As Soroban's brief does not specifically address this issue, we will not address it.

the exclusion "merely by virtue of the partners' being labeled limited partners." (SA4.) Soroban also challenged the Tax Court's jurisdiction to decide this issue in this partnership-level proceeding. (SA6.) The Commissioner filed a cross-motion regarding jurisdiction. (SA6.)

The Tax Court issued a precedential opinion in the Commissioner's favor. (SA2-17, reported at 161 T.C. 310 (2023) ("*Soroban I*").) The court concluded that the limited-partner exception did "not apply to a partner who is limited in name only." (SA12.) The court recognized that Congress enacted the exception in 1977 "[e]ssentially" "to exclude earnings that are of an investment nature." (SA9 & n.6 (citing H.R. Rep. No. 95-702, pt. 1, at 11, 40-41 (1977)).) The court also explained that §1402(a)(13)'s text—"limited partner, *as such*"—clarified that the exception "applies only to a limited partner who is functioning as a limited partner." (SA12.) And it concluded that that determination "necessarily requires an inquiry into the functions and roles of the limited partners" (SA4), through a "functional analysis" focused on whether the partners' shares of partnership income "arose from" services the partners performed or "as a return on the partners' investments" (SA10 (internal quotations omitted)).

The Tax Court rejected Soroban's jurisdictional challenge, holding that the determination of net earnings from self-employment was a "partnership item" that was "more appropriately determined at the partnership level." (SA14-16.)

### 2. The Tax Court applies the test in other cases

While this litigation proceeded, the Tax Court applied *Soroban I* in two other cases, finding that the state-law "limited partners" in those cases did not qualify for §1402(a)(13)'s limited-partner exception. Both decisions were appealed. In January, the Fifth Circuit issued an opinion that disagreed with *Soroban I* and held "that a 'limited partner' in §1402(a)(13) is a limited partner in a state-law limited partnership that is afforded limited liability." *Sirius Sols., L.L.L.P. v. Commissioner*, 165 F.4th 374, 388 (5th Cir. 2026) (*see infra* pp.58-61). Time remains for the Government to pursue further review in *Sirius*. And in February, the First Circuit heard oral argument in *Denham Cap. Mgmt. LP v. Commissioner*, T.C. Memo. 2024-114, 2024 WL 5200039 (2024), *appeal docketed*, No. 25-1349 (1st Cir. argued Feb. 5, 2026).

### 3. The Tax Court applies the test to Soroban

Meanwhile, in *Soroban*, the Tax Court granted the parties' motion to submit the case without trial. (JA2476.) The court then applied *Soroban I*'s functional analysis to the stipulated facts and evidence, evaluating "how the partnership generated the income in question and the partners' roles and responsibilities in doing so." (SA20 (internal quotations omitted).) "Th[at] test is designed to be a comprehensive inquiry into whether the Principals were *generally* akin to passive investors." (SA34 (internal quotations omitted).) And it "is a facts and circumstances test that takes into account all relevant facts and circumstances." (SA37.)

The Tax Court found that, "[f]unctionally, Soroban's limited partners were not acting as limited partners," and thus were not "limited partners, as such" under §1402(a)(13). (SA20, SA42.) The court considered the Principals' inter-connected relationships with the partnership, each other, and Soroban's overall business. The Tax Court found, for example (SA20, SA42), that the Principals:

- "played an essential role in generating [Soroban's] income" (SA35);

- provided "unique skills and experience [that] were indispensable to the business" (SA35-36);
- "exercised managerial control over Soroban" and "oversaw day-to-day management" (SA35-36);
- "worked full time with Soroban" (SA36); and
- "contributed little to no capital relative to their shares of income," such that "[t]heir capital accounts make clear that their earnings were not of an investment nature" (SA36-37).

Based on these and other facts, the Tax Court found that "Soroban's limited partners were limited partners in name only" and "are not limited partners within the meaning of section 1402(a)(13)." (SA42.) The court also rejected Soroban's reliance on the "fiction" that the Principals "acted with authority delegated to them by the general partner, which they in turn had the authority to manage." (SA38.) It explained: that kind of legal fiction "is precisely why application of federal tax law to the economic arrangement of the parties controls, and not mere state law classifications." (SA38.)

The court entered decisions in the Commissioner's favor, increasing Soroban's net earnings from self-employment by a total of $141.5 million. (*See* SA44-45.)

## SUMMARY OF ARGUMENT

The Tax Court correctly determined that Soroban's net earnings from self-employment is a partnership item, and that it thus had jurisdiction to determine that issue. On the merits, it correctly found that the Principals were not "limited partners, as such" under §1402(a)(13). Soroban thus must include, in net earnings from self-employment, $141.5 million of ordinary income allocated to the Principals—income derived from investment-management services over which the Principals exerted near-total control.

1. Net earnings from self-employment is a partnership item under I.R.C. §6231(a)(3), and the Tax Court had jurisdiction to determine that issue in this partnership proceeding.

First, net earnings from self-employment are "required to be taken into account" by the partnership and by partners "for the partnership's taxable year under [provisions] of subtitle A." I.R.C. §6231(a)(3). Subtitle A includes §§1401-1403, which impose self-employment tax on

net earnings from self-employment. Section 1402 hinges the net-earnings-from-self-employment determination, first, on the partnership's activities. Section 1402 requires the partnership to compute the partners' distributive shares of net earnings from self-employment, which the IRS has long required partnerships to report on their returns.

Second, net earnings from self-employment are "more appropriately determined at the partnership level," §6231(a)(3), under Treas. Reg. §301.6231(a)(3)-1. Net earnings from self-employment characterize the partnership's income. Such "characterization" and the "legal and factual determinations that underlie" it, like the application of §1402(a)(13), are partnership items under §301.6231(a)(3)-1(a) and (b).

2. The Tax Court was also correct on the merits. Soroban's Principals were not "limited partners, as such" under §1402(a)(13). The Tax Court's functional analysis is consistent with fundamental principles of federal taxation, the plain language of the statute, statutory context, and Congress's purpose for enacting the limited-partner exception in 1977.

Three fundamental principles of federal taxation support the Tax Court's interpretation: (i) federal—not state—law controls the interpretation of federal tax statutes; (ii) tax law deals in economic realities, not legal abstractions; and (iii) federal tax laws establish a uniform system of federal taxation. The Tax Court's approach looks past state-law labels and asks whether, in reality, an individual is acting more like a self-employed person, generating income from his labors, or more like a "limited partner, as such," as that concept was understood when Congress enacted the limited-partner exception.

When Congress enacted §1402(a)(13) in 1977, limited partners did not control the business and were generally akin to passive investors. Congress enacted the limited-partner exception, moreover, to close a loophole that had allowed limited partners who invested a small amount in a business to obtain Social Security coverage without working. The distinction between income from work (included in net earnings from self-employment) and income from investment (excluded) runs through §1402's self-employment-tax scheme. By excepting a "limited partner, *as such*," Congress indicated that the excepted "limited partners" were those who functioned like limited partners, as

the term was understood in 1977—not those who would control and work full-time in a business but claim state-law "limited partner" status and use that status to avoid self-employment tax.

In *Sirius*, a different case concerning the limited-partner exception, the Fifth Circuit majority recently (and erroneously) held that similar state-law "limited partners" could take advantage of §1402(a)(13)'s exception to avoid characterizing distributive shares of partnership income as net earnings from self-employment (and downstream, avoid self-employment tax). 165 F.4th at 388. But the majority's simplistic analysis "misses the mark." *Id.* at 393 (dissent). The majority, *inter alia,* heavily relied on cherry-picked dictionary definitions and informal agency publications, allowed state law to control a federal tax statute, and ignored overwhelming authority regarding the contemporaneous understanding of "limited partner" in 1977.

Soroban and *amici* advance similar contentions. Neither the *Sirius* majority nor the remaining arguments raised here overcome §1402(a)(13)'s text and Congress's intent when it enacted the statute—to exclude from net earnings from self-employment only the income of

those who do not control a business and are generally akin to passive investors, which Soroban's Principals indisputably were not.

Soroban does not challenge any of the Tax Court's factual findings, and it thus is undisputed that Soroban's Principals controlled its investment-management business, which generated all of its income; were critical to Soroban's very existence; and did not function anything like limited partners, as that concept was understood in 1977, when Congress enacted §1402(a)(13). This Court should affirm.

## ARGUMENT

### I. Soroban's computation of net earnings from self-employment is a partnership item

#### Standard of review

This Court reviews the Tax Court's jurisdiction *de novo*. *Maier v. Commissioner*, 360 F.3d 361, 363 (2d Cir. 2004).

#### A. Introduction: TEFRA and partnership items

A partnership pays no income tax but reports its tax items, like income and losses, on an information return each year (an IRS Form 1065). I.R.C. §§701, 6031(a); *Callaway v. Commissioner*, 231 F.3d 106, 107 (2d Cir. 2000). Partnership tax items "pass through" to partners,

who account for their "distributive share[s]" in computing and paying their taxes. I.R.C. §§701-704; *Callaway*, 231 F.3d at 107.

To increase consistency and efficiency, TEFRA established "a single, unified" procedure for correcting partnership tax errors. *United States v. Woods*, 571 U.S. 31, 38-39 (2013); *see Callaway*, 231 F.3d at 107-08. TEFRA required that the "tax treatment of any partnership item *** be determined at the partnership level." I.R.C. §6221. Partners are bound by the partnership's "treatment" of partnership items, I.R.C. §6222(a), and adjustments to partnership items occur in partnership proceedings (like this one), I.R.C. §§6223, 6226. Adjustments flow through to the partners via "computational adjustment[s]," I.R.C. §§6225, 6230, 6231(a)(6); *Callaway*, 231 F.3d at 109-10. After partnership-level proceedings, further partner-level proceedings may or may not be necessary. *See Callaway*, 231 F.3d at 109-10. But either way, a partnership-level adjustment is adjudicated in a partnership proceeding. *See Woods*, 571 U.S. at 40-41.

"[T]he threshold question for the application of the TEFRA procedures"—and for the Tax Court's jurisdiction in a partnership proceeding—is whether a tax item is a "partnership item." *Callaway*,

231 F.3d at 108. The Code "broadly" defines "partnership item," *Gluck v. Commissioner*, 2022 WL 802766, at *2 (2d Cir. Mar. 17, 2022) (summary order), and empowers the IRS to further define such items. A partnership item is one that is (1) "required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent" that (2) Treasury Regulations "provide that *** such item is more appropriately determined at the partnership level than at the partner level." I.R.C. §6231(a)(3). Subtitle A covers "Income taxes" and spans over 1,000 sections. *See* I.R.C. §§1-1563. And §6231(a)(3) authorizes the IRS to "give meaning to" the term "partnership item." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-95 (2024). The IRS has exercised that authority in Treas. Reg. §301.6231(a)(3)-1 ("partnership-item regulation"), which Soroban has not challenged. As explained *infra*, pp.24-28, that regulation is broad and encompasses net earnings from self-employment.

## B. Net earnings from self-employment is a partnership item

### 1. Net earnings from self-employment must be "taken into account" for Soroban's taxable year under subtitle A

Soroban argues that net earnings from self-employment is not a partnership item because "[n]othing in the Tax Code requires a partnership to take [it] into account *** as part of its taxable year." (Br.6; *see also* Br.22 (similar).) This is incorrect for several reasons.

**a.** First, a partnership item includes "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A," §6231(a)(3), and subtitle A imposes the self-employment tax on net earnings from self-employment, I.R.C. §§1401-1403.

Section 6231(a)(3) employs a passive verb and does not specify *who* must take the item "into account," but both partnerships and partners must take into account net earnings from self-employment. A partnership is required to compute and report such earnings on its partnership return. (*See infra* pp.21-23.) And partners, like Soroban's Principals, must take them into account on their tax returns. *See Keener v. United States*, 551 F.3d 1358, 1363-64 (Fed. Cir. 2009)

(finding "more reasonable and appropriate" an interpretation of §6231(a)(3) that "while subtitle A encompasses substantive rules for a *partner's* income tax, subtitle A's provisions make clear that this income is derived *from the partnership* during the partnership's taxable year, as defined by this subtitle" (emphasis added; internal quotations omitted)). Those "tak[ings] into account" by the partnership and partners are "for the partnership's taxable year" and "under any provision of subtitle A"—specifically §§1401-1403, which impose the self-employment tax on net earnings from self-employment.

Of course, location alone does not determine the partnership-item status of net earnings from self-employment. (*Cf.* Br.24.) *See Keener*, 551 F.3d at 1364 (explaining that it would "make[] little sense" to "categorically exclude[]" as a partnership item "anything in subtitles B-J"). Section 6231(a)(3)'s "language itself provides room for partnership items that, even in the absence of an explicit subtitle A reference, are nevertheless necessary for income tax calculation purposes," as is net earnings from self-employment. *See RJT Invs. X v. Commissioner*, 491 F.3d 732, 736 (8th Cir. 2007). But location in subtitle A removes any doubt that net earnings from self-employment fit with Congress's

understanding of partnership items. *Cf. Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000) (citing several reasons to support holding that individual partners' alleged deprivation of right to settlement terms consistent with other individual partners was not a partnership item, including location of that right in subtitle F).

**b.** Second, §1402(a) makes net earnings from self-employment contingent on partnership activities. Net earnings from self-employment include a partner's "distributive share *** of income or loss *** from any trade or business *carried on by a partnership* of which he is a member[.]" I.R.C. §1402(a) (emphasis added); *see* I.R.C. §1402(c). The characterization of net earnings from self-employment depends on whether the *partnership* is engaged in a trade or business, not the partner. Treas. Reg. §1.1402(a)-1(b). This undisputedly is a partnership-level determination, *e.g.*, *Tallal v. Commissioner*, 778 F.2d 275, 276 (5th Cir. 1985), that asks whether the partnership is "involved in [an] activity with continuity and regularity," and whether its "primary purpose for engaging in the activity" is "income or profit," *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987).

**c.** Third, §1402(a) directs partnerships to compute their partners' net earnings from self-employment, applying any relevant exceptions. Under §1402(a), "net earnings from self-employment" includes a partner's "distributive share" of partnership income or loss. The statute provides: "except that *in computing* *** such distributive share of partnership ordinary income or loss" that is net earnings from self-employment, a list of items shall be "excluded," "not *** allowed," "allowed," or applied. I.R.C. §1402(a) (emphasis added). This list includes §1402(a)(13)'s limited-partner exception, which starts: "there shall be excluded the distributive share of any item of income or loss of a limited partner, as such[.]" Thus, §1402(a) requires that a partner's distributive share of net earnings from self-employment be "comput[ed]," excluding income subject to the limited-partner exception.

Partnerships compute their partners' distributive shares. Using the same verb as §1402(a), §703(a) requires that a partnership "compute[]" its "taxable income" "in the same manner as *** an individual," but also "separately state[]" "the items described in section 702(a)." Section 702(a), in turn, enumerates items, the "distributive share" of which "each partner" must "separately" "take

into account" "[i]n determining his income tax." *See also* I.R.C. §704(a) (partnership agreement generally determines partners' distributive shares). These provisions require the partnership to compute its own taxable income and its partners' distributive shares of income and other items. Reinforcing this point, §6031(a) requires that partnerships make returns stating income, deductions, and "such other information for the purpose of carrying out the provisions of subtitle A as the Secretary may by forms and regulations prescribe," and include "the amount of the distributive share of each individual." *See, e.g.*, *Huff v. Commissioner*, 138 T.C. 258, 263 (2012) (citations omitted).

In sum, by predicating net earnings from self-employment on the partnership's trade or business and by requiring a computation of a partner's distributive share of net earnings from self-employment, §1402 allocates responsibility for the net-earnings-from-self-employment determination to the partnership. *Cf. Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) ("context can confine a passive-voice sentence to a likely set of actors"). Net earnings from self-employment thus are items that the partnership must "take[] into account" under subtitle A. I.R.C. §6231(a)(3).

### 2. Net earnings from self-employment are more appropriately determined at the partnership level

**a.** Turning to the second part of the statutory definition, a tax item is a "partnership item" "to the extent regulations *** provide that *** such item is more appropriately determined at the partnership level than at the partner level." I.R.C. §6231(a)(3). Under the partnership-item regulation, "partnership items" include "[t]he partnership aggregate and each partner's share of *** [i]tems of income, gain[,] loss, deduction, or credit of the partnership[.]" Treas. Reg. §301.6231(a)(3)-1(a)(1)(i). Partnership items are those "both with respect to the partnership ('the partnership aggregate') and with respect to 'each partner's share of' those items." *Callaway*, 231 F.3d at 116. Partnership items also "include[] *** the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. §301.6231(a)(3)-1(b). This nonexclusive list (indicated by the words "includes" and "etc.") follows from the rule of consistency: a "partner's distributive share of any partnership item must be reported in the same manner as on the partnership's information return" — "it

must have the same amount, the same characterization, the same timing[].” *Callaway*, 231 F.3d at 108-09.

A partnership’s computation of net earnings from self-employment fits neatly within the partnership-item regulation. The net-earnings-from-self-employment determination is a “characterization” of the partnership’s income under §301.6231(a)(3)-1(b)—it distinguishes income that is net earnings from self-employment from income that is not, with different tax consequences attaching to such characterization. *See, e.g.*, *Alexander v. IRS*, 72 F.3d 938, 942 (1st Cir. 1995) (“characterization of the settlement proceeds” determines “proper tax treatment”); *Gluck*, 2022 WL 802766, at *3 (characterization of property interest is partnership item). That characterization is directly “related to” another partnership item: income. (*Cf.* Br.40-41.) The Code tasks the partnership with making that characterization by determining whether the partnership is engaged in a “trade or business”; determining (in this case) whether its partners are “limited partners, as such”; and computing net earnings from self-employment. These underlying “legal and factual determinations” are also partnership items under §301.6231(a)(3)-1(b).

**b.** Soroban's counters to this straightforward application of the partnership-item regulation are not persuasive. First, Soroban posits that "net earnings from self-employment isn't listed in Treasury's regulation compiling partnership items," which "means it isn't one." (Br.24; *see also* Br.37-38.) Soroban seeks support for this simplistic approach from *Monti* and *Field* (*e.g.*, Br.37-38), but those cases considered only subsection (a) of §301.6231(a)(3)-1—and not the additional categories in subsection (b)'s nonexclusive list, which also is at issue here. *See Monti*, 223 F.3d at 82-83 (mentioning items only from subsection (a) and holding that "an individual right to consistent [settlement] terms" is not a partnership item); *Field v. United States*, 328 F.3d 58, 59 (2d Cir. 2003) (per curiam) (quoting from subsection (a) and mentioning that it "lists various items, which do not include" the relevant item). Although net earnings from self-employment is not *explicitly* listed in §301.6231(a)(3)-1(a) or (b), it is comprised of items included in (a) and within (b)'s nonexclusive list, as the Tax Court correctly held (SA16).

Consistent with the regulation's nonexclusive language, this Court and other courts have held that items not specifically listed in the

regulation nonetheless are partnership items. For example, the period of limitations for assessing tax attributable to partnership items (I.R.C. §6229) is not specifically listed as a partnership item, but "every [] circuit court to consider this issue"—including this Court—has held that it is. *Bedrosian v. Commissioner*, 940 F.3d 467, 471-72 (9th Cir. 2019) (collecting cases, including *Chimblo v. Commissioner*, 177 F.3d 119, 125 (2d Cir. 1999)); *see Keener*, 551 F.3d at 1362-63 (quoting Treas. Reg. §301.6231(a)(3)-1(b)); *Weiner v. United States*, 389 F.3d 152, 157 (5th Cir. 2004) (same).

Soroban also suggests that the partnership-item regulation's "legal and factual determinations" provision is limited to "'items that affect the computation of partnership taxable income.'" (Br.40 (quoting 51 Fed. Reg. 13212, 13213 (April 18, 1986)).) By relying on the IRS's response to a comment in its notice promulgating the partnership-item regulation, Soroban evades the regulation's text. And net earnings from self-employment *do* affect the computation of partnership taxable income. *See Martin v. Commissioner*, 149 T.C. 293, 305 (2017) ("Self-employment tax is assessed and collected as part of the income tax[.]"); Treas. Reg. §1.1401-1(a) (same).

However, Soroban's contention (Br.23, Br.34) that the Code does not "require the partnership to calculate the amount of tax" for the Principals is a red herring. No one thinks that Soroban has to calculate its Principals' *taxes*. A partner's tax computation is a partner-level "affected item"—an "item to the extent [it] is affected by a partnership item." I.R.C. §6231(a)(5). To be sure, the partnership-level determination of net earnings from self-employment will flow through to the Principals and may ultimately affect their self-employment taxes. That is how taxes work for partnerships. But the tax computation is a partner-level matter addressed downstream, and not in this partnership proceeding. Soroban's attempt to blur these lines is contrary to TEFRA's structure and purpose.

### C. Net earnings from self-employment do not depend on siloed facts about each Principal

Soroban contends that net earnings from self-employment is not a partnership item because it "turns entirely on facts specific to the individual partners." (Br.35.) That approach ignores the statutory definition of "partnership item"; sidesteps the partnership-wide considerations in this determination; and conflicts with TEFRA by compelling duplicative partner-by-partner proceedings.

To start, Soroban's focus neglects the Code's definition of "partnership item." Partnership items, to be sure, often affect the entire partnership. *Woods*, 571 U.S. at 39. But that is not the statutory definition. *See Katz v. Commissioner*, 335 F.3d 1121, 1129 (10th Cir. 2003) ("There may be sound policy reasons for not requiring a *** partnership-level proceeding when an alleged error in one partner's return affects only one other taxpayer rather than all the partners. But *** the law is otherwise.") And §6231(a)(3)'s definition for "partnership item" is satisfied here. (*Supra* pp.19-28.)

Other partnership items also affect some partners differently. For example, only an "individual" can deduct certain "production of income" expenses under I.R.C. §212; a corporation cannot. Even though that tax item would have different impacts on individual and corporate partners, a partnership must separately state on its return "nonbusiness expenses as described in section 212." Treas. Reg. §1.702-1(a)(8)(i); *see* I.R.C. §§702(a)(7), 703(a)(1). The partnership's characterization of such expenses controls and is a partnership item. *Baylin v. United States*, 30 Fed. Cl. 248, 253 & n.8 (1993). Similarly, I.R.C. §751(a) affects the character of a partner's gain upon the sale of a partnership interest but

may have no effect on the partnership or any other partner. Nevertheless, §751(a)'s application is a partnership item. Treas. Reg. §301.6231(a)(3)-1(a)(1)(vi)(E).

What's more, the net-earnings-from-self-employment characterization—including the limited partner-exception in §1402(a)(13)—is not based entirely on siloed facts about each individual partner (*see* Br.35-37). The limited-partner exception requires analysis of, *inter alia*, the partnership's relationship to the partners, how they are (or are not) involved in controlling the partnership and generating its income, and the partners' relationships to each other, vis-à-vis the partnership's activities, their responsibilities, and their authority (if any), relative to other partners. This kind of analysis scrutinizes partnership-wide facts and other, specifically enumerated partnership items, *e.g.*, the nature of the partnership's business (I.R.C. §1402(a)); how the partnership generates income; the guaranteed payments made by the partnership to its partners (I.R.C. §1402(a)(13); Treas. Reg. §301.6231(a)(3)-1(a)(2)); and the partners' capital contributions to the partnership (Treas. Reg. §301.6231(a)(3)-1(a)(4)(i)). Such

considerations are "relevant to the partnership as a whole." *Woods*, 571 U.S. at 39 (*quoted at* Br.35).

Finally, Soroban's proposed partner-by-partner approach flouts TEFRA's purpose of ending duplicative partner-by-partner proceedings that produced inconsistent results for partners of the same partnership. *Woods*, 571 U.S. at 38. Determining each partner's status in separate judicial proceedings would be inefficient and could lead to inconsistent results for partners of the same partnership. This is the opposite of what TEFRA envisioned and is not required by the Code or the Treasury Regulations. For all these reasons, net earnings from self-employment are a partnership item, and the Tax Court had jurisdiction in this partnership proceeding.

## II. The Tax Court correctly found that Soroban's Principals were not "limited partners, as such" under §1402(a)(13)

### Standard of review

The Tax Court's interpretation of §1402(a)(13) is a legal issue reviewed *de novo*. *See Soni v. Commissioner*, 76 F.4th 49, 57 (2d Cir. 2023).[6]

### A. Social Security and self-employed individuals

The Social Security Act and related legislation establish "a comprehensive national insurance system that provides benefits for retired workers, disabled workers, unemployed workers, and their families." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 48 (2011). Among Social Security's broad remedial purposes is providing "for the decent support of elderly workmen who have ceased to labor." *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 364 (1946).

Social Security initially was funded through a tax on wages that employers pay employees (now codified at I.R.C. §§3101(a), 3111(a)).

---

[6] Soroban does not challenge any factual findings by the Tax Court and thus has forfeited any such challenges. (*See infra* pp.74-77.) *See Off. Create Corp. v. Planet Ent., LLC*, 140 F.4th 96, 102 n.5 (2d Cir. 2025).

Social Security originally did not cover self-employed individuals due to the "administrative impracticability" of determining their income and collecting the related taxes. *See generally* Harold P. Packer & George J. Leibowitz, *Coverage of the Self-Employed Under the Old-Age & Survivors Insurance Program*, 36 Calif. L. Rev. 61, 61-62 (1948).

In 1950, Congress added coverage for the self-employed. Social Security Act Amendments of 1950 ("1950 Act"), Pub. L. No. 81-734, §104(a), 64 Stat. 477, 502-04. Congress also added a new funding mechanism, the self-employment tax. 1950 Act, §208(a), 64 Stat. at 540-43 (Self-Employment Contributions Act) (now codified at I.R.C. §§1401-1403). Congress intended "self-employment income [to be] taken into account for benefit purposes to the same extent as wages[.]" H.R. Rep. No. 81-1300, at 10.

The 1950 Act defined "net earnings from self-employment" to mean: "the gross income derived by an individual from any trade or business carried on by such individual *** plus his distributive share (whether or not distributed) of the ordinary net income or loss *** from any trade or business carried on by a partnership of which he is a member[.]" 1950 Act, §208(a), 64 Stat. at 541. Under that definition,

even limited or inactive partners had to pay self-employment tax on their distributive shares of a partnership's ordinary trade or business income. *Estate of Ellsasser v. Commissioner*, 61 T.C. 241, 243-49 (1973); *see also* H.R. Rep. No. 81-1300, at 137. Amendments to the Social Security Act in 1965 added Medicare benefits and a Medicare tax, which similarly taxes income from work. *See* Social Security Amendments of 1965, Pub. L. No. 89-97, §§101-102, 321, 79 Stat. 286, 290-332, 394-96.

The treatment of limited partners changed in 1977, when Congress became "increasingly concerned about" the "solicit[ation of] investments in limited partnerships as a means for an investor to become insured for social security benefits." H.R. Rep. No. 95-702, at 40-41 (1977). (*See* Br.15-17.) Because net earnings from self-employment included *any* individual partner's distributive share of partnership ordinary business income, a person could obtain Social Security coverage by simply investing a small sum in a limited partnership—while performing no services for the partnership. This concerned Congress because "the investor in the limited partnership performs no services for the partnership," and the resulting Social

Security coverage was "based on income from an investment." *Id.* at 41. This was "inconsistent with the basic principle of the social security program that benefits are designed to partially replace lost earnings from work." *Id.*

Accordingly, Congress enacted the limited-partner exception, which excluded from the "net earnings from self-employment" definition the distributive share of income or loss of a "limited partner, as such." Social Security Amendments of 1977, Pub. L. No. 95-216, §313(b), 91 Stat. 1509, 1535-36. This change was meant "to exclude for coverage purposes certain earnings which are basically of an investment nature." H.R. Rep. No. 95-702, at 11.

This case is about the interpretation of that exception, currently codified at I.R.C. §1402(a)(13), which provides:

> there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services[.]

### B. Fundamental principles of federal taxation dictate the approach taken by the Tax Court

Three foundational principles of federal tax law support the Tax Court's functional analysis for §1402(a)(13)'s limited-partner exception and undermine the approach urged by Soroban and *amici*. First, federal—not state—law controls the interpretation of federal tax statutes. Second, federal tax law is concerned with economic realities, not labels. Third, federal tax law should be uniform nationwide.

#### 1. Federal—not state—law controls the interpretation of a federal tax statute

Federal law governs federal tax statutes. *See* Const. art. I, §8, cl. 1 (taxing power) & art. VI, cl. 2 (supremacy clause). Congress's choices in the tax arena are "not subject to state control." *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). Interpreting a term "within the meaning of the federal statute necessarily is a federal question." *Lyeth v. Hoey*, 305 U.S. 188, 193 (1938). Thus, while state law may "create[] legal interests and rights," federal law determines the federal tax consequences, "no matter what name is given to the interest or right by state law." *Morgan v. Commissioner*, 309 U.S. 78, 80-81 (1940). Whether Delaware law deems Soroban's Principals limited partners in a limited

partnership who have limited liability thus is not "the end of the matter" (Br.8) when it comes to federal taxes.

To the Tax Court's statement (backed by Supreme Court precedent) that federal tax law governs the issues here (*see* SA34), Soroban responds: "[S]o what? The Tax Code routinely borrows state-law concepts and assigns tax consequences to them." (Br.31; *see also* Br.66-68.) But the definition Soroban advocates—"a limited partner is just a partner in a limited partnership with limited liability" (Br.7)—makes federal tax consequences *wholly dependent on* current state law. (*See* Br.41-42 (arguing that the Principals "fit the bill" for §1402(a)(13)'s limited-partner exception "because they are partners in a limited partnership and have limited liability under Delaware law").)

Soroban's definition would impermissibly make federal tax law "subject to state control." *Burnet*, 287 U.S. at 110. *Morgan* refutes Soroban's reasoning and illustrates the general principle of federal tax-law supremacy. In *Morgan*, the Court determined whether a power of appointment was "general" under the federal estate tax statute. 309 U.S. at 79 & n.1. The statute did not define "general power of appointment," but the Court held that "when it used the adjective

'general[,]'" Congress must have had in mind "the distinction usually made between a general and a special power[.]" *Id.* at 81. The Court rejected the taxpayer's argument, based on specific state-law distinctions between "general" and "special" powers. *Id.* at 80-82.

Federal law also governs an entity's classification as a corporation, trust, or partnership for federal tax purposes. *See* I.R.C. §7701; Treas. Reg. §301.7701-1(a)(1). Courts have long recognized this principle. In the federal income tax's early days, the Supreme Court held that an unincorporated association, which state law deemed a partnership, was—for federal tax purposes—an "association" taxed as a "corporation." *Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 111-14 (1925). The Court explained that state law was not of "legal significance" in analyzing Congress's power to tax the entity as a corporation. *Id.* at 114. The Court recently reiterated that principle:

> Neither the conception of unincorporated associations prevailing under the local law, nor the relation under that law of the association to its shareholders, nor their relation to each other and to outsiders, is of legal significance as bearing upon the power of Congress to determine how and at what rate the income of the joint enterprise shall be taxed.

*Moore v. United States*, 602 U.S. 572, 585 (2024) (quoting *Burk-Waggoner*, 269 U.S. at 114). This is true for partnerships. Every state

has its own definition of "partnership" and "partner," but those state-law labels do not control federal taxation. *E.g.*, *Commissioner v. Tower*, 327 U.S. 280, 286-88 (1946); *Commissioner v. Culbertson*, 337 U.S. 733, 738-48 (1949).

This extends to an individual's status vis-à-vis a particular entity, like a partnership. In *Heiner v. Mellon*, for example, the Supreme Court considered whether two individuals owed income tax on their distributive shares as partners in two partnerships. 304 U.S. 271, 277-79 (1938). The Court rejected their arguments that they were not partners under state law. *Id.* at 278-79. Their claimed state-law status was "not conclusive" because "[i]t is well settled that in the interpretation of the words used in a federal revenue act, local law is not controlling[.]" *Id.* It was "clear" that the disputed income was from a "partnership 'carrying on business'" under the federal tax statutes. *Id.*

The cases that Soroban cites (Br.66-67) support the principle that federal law controls the interpretation of federal tax statutes, and where relevant, state law only helps to determine underlying issues. Those cases do not directly turn to state law to interpret or define words

in the Internal Revenue Code, as Soroban contends should happen here. For example, *United States v. National Bank of Commerce* focused on the meaning of words in a federal tax statute—"property and rights to property"—and the Supreme Court explained that federal law controls the reach of that statute, *i.e.*, "whether a state-law right constitutes 'property' or 'rights to property'" under the federal tax statute. 472 U.S. 713, 727 (1985). The Court did not simply look to see how state law defined "property" or "rights to property," as Soroban asks this Court to do regarding the meaning of "limited partner, as such" in §1402(a)(13). *See also Aquilino v. United States*, 363 U.S. 509, 513-14 (1960) (federal law resolves competing liens, and state law determines only nature of underlying property rights); *Alphonso v. Commissioner*, 708 F.3d 344, 350-51 (2d Cir. 2013) (interpreting the scope of "property" and other words in the federal tax statutes and applying state law to determine nature of property interest).

Similarly, in *Burchell v. Helvering*, it was "of course a federal question" to determine what the word "accrued" meant in a federal tax statute. 115 F.2d 681, 682-83 (2d Cir. 1940). This Court turned to state law to address underlying issues, within the federal-law meaning of

that federal tax statute. *See id.* The other cases Soroban cites follow this same general pattern. *See Saltzman v. Commissioner*, 131 F.3d 87, 89-91 (2d Cir. 1997) (interpreting federal gift-tax statute and applying state law to determine underlying issues); *Wesemann v. Commissioner*, 35 T.C. 1164, 1166-68 & n.1 (1961) (looking to Internal Revenue Code to define "head of household" and applying state law to determine underlying marital-status matters), *aff'd*, 298 F.2d 527 (2d Cir. 1962).

The Tax Court correctly rejected Soroban's argument that the Principals are "limited partners, as such" for federal tax purposes simply because Delaware has chosen to label them "limited partners" and grant them limited liability. Soroban's approach would subordinate federal taxation to the individual states, in contravention of longstanding Supreme Court precedent.

### 2. Federal tax law is concerned with economic realities

Federal tax law also "require[s] courts to look beyond how the parties label, or structure, themselves. Courts must rather look to the substance of the relationships." *Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 943 F.3d 49, 57-59 (1st Cir. 2019). In other words, "tax classifications *** turn on the

objective economic realities of a transaction," not "the particular form the parties employed." *Boulware v. United States*, 552 U.S. 421, 429 (2008) (internal quotations omitted). It is a "black-letter principle that tax law deals in economic realities[.]" *PPL Corp. v. Commissioner*, 569 U.S. 329, 340 (2013) (internal quotations omitted); *see also, e.g.*, *Altria Grp., Inc. v. United States*, 658 F.3d 276, 284 (2d Cir. 2011) ("substance rather than form determines tax consequences" (internal quotations omitted)); *TIFD III-E, Inc. v. United States*, 459 F.3d 220, 231 (2d Cir. 2006) (criticizing and reversing a district court for "accepting at face value the appearances and labels created by the partnership, rather than assessing the underlying economic realities").

*PPL* is instructive. That case asked whether a "windfall tax" imposed by a foreign country was creditable under I.R.C. §901(b)(1), which provides that "any 'income, war profits, and excess profits taxes' paid overseas are creditable against U.S. income taxes." *PPL Corp.*, 569 U.S. at 331. The Court held that "the way a foreign government characterizes its tax is not dispositive with respect to the U.S. creditability analysis." *Id.* at 335. Rather, "the crucial inquiry is the tax's economic effect." *Id.* The Court held that the windfall tax was in

"substance *** that of an income tax in the U.S. sense" based on its "economic effect[.]" *Id.* at 337, 339.

Here, the relevant question is not how Delaware labels or classifies Soroban's Principals but whether they are, in substance, functioning as limited partners, as Congress understood the term when it enacted §1402(a)(13) in 1977. (*See infra* pp.45-57.)

### 3. Federal tax law should be uniform nationwide

Federal tax laws are read "to establish a nationwide scheme of taxation uniform in its application." *United States v. Pelzer*, 312 U.S. 399, 402 (1941). But the approach that Soroban and *amici* press would do the opposite. It would create a patchwork scheme for federal self-employment taxation, dependent on the unique definitions of "limited partner" (or grants of limited liability) under the 50 states' laws, which may vary (and historically *have* varied) across state borders and across time.

As *Lyeth* explained, such a disjointed, state-law-based approach to federal taxation should be avoided. That case involved whether property received by a taxpayer from an estate to settle his claim as an heir was taxable income. *Lyeth*, 305 U.S. at 189. Whether property

received under an agreement settling a probate dispute was "acquired by inheritance" (and thus exempt from taxation) had been answered differently by state courts, and the lower court had applied the state law where the property was received. *Id.* at 191-93. But the Supreme Court held that that was error because "the construction of the exemption in the federal statute is not determined by local law." *Id.* at 193. Because the Internal Revenue Code "should be interpreted so as to give a uniform application to a nation-wide scheme of taxation[,]" the meaning of "acquired by inheritance" "should not be decided in one way in the case of an heir in" one state "and in another way in the case of an heir" in a different state. *Id.* at 194 (internal quotations omitted).

That is what the Tax Court's functional analysis for applying §1402(a)(13) avoids. Rather than making a hodgepodge of state-by-state determinations, the Tax Court's functional analysis looks past state-law labels and statuses and examines the substance of the relationships between the partnership and partners—and among the partners, too. It adheres to the principle that federal taxation concerns substance, and provides a "uniform rule" that is not "decided in one way in the case of" a limited partner in one state "and in another way in the

case of" a limited partner in a different state, "according to the differing views of the state courts" or legislatures. *Lyeth*, 305 U.S. at 194. It asks whether, as a matter of objective economic reality, an individual is acting like a limited partner, in the sense that Congress intended. As discussed below, the Tax Court's objective inquiry comports with the usual understanding of the term "limited partner" in 1977, when Congress enacted §1402(a)(13).

### C. The Tax Court's functional analysis is consistent with the ordinary meaning of "limited partner" in 1977

With these principles in mind, it remains for this Court to determine what Congress meant by "limited partner, as such" when it enacted §1402(a)(13), by examining that phrase's "ordinary, contemporary, common meaning" in 1977. *See Perrin v. United States*, 444 U.S. 37, 42 (1979). Soroban posits that, "in 1977, 'limited partner' meant a partner in a limited partnership with limited liability." (Br.43.) But Soroban omits that limited partners were generally akin to passive investors who had no active role in controlling the partnership's business, and their limited function in the business is what led to limited liability.

### 1. Historically, a limited partner did not participate in conducting, much less controlling, the partnership's business

In the French and Italian precursors to the American limited partnership, "the business [was] vest[ed] in the general partner," who controlled "the business committed to his care." Francis J. Troubat, *The Law of Commandatary and Limited Partnership in the United States*, 34-38 (1853). "Special partners," later dubbed "limited partners," were merely creditors of capital they contributed to the enterprise, and they shared in gains or losses. *Id*. at 38.

Limited partnerships were adopted in the United States in 1822. William Draper Lewis, *The Uniform Limited Partnership Act*, 65 U. Pa. L. Rev. 715, 716 (1917). To obtain limited liability under the early state statutes, a limited partner had to "refrain[] from participation in the conduct of the business." *Id*. at 720. From the start, the American limited partner, "so far as concerns his relations to his general partners, [was] treated as a mere contributor of capital[.]" *Skolny v. Richter*, 124 N.Y.S. 152, 157 (App. Div. 1910). Reflecting these functional roles, in 1910, Black's Law Dictionary defined a "limited partnership" as a:

> partnership consisting of one or more general partners, jointly and severally responsible as ordinary partners, *and*

> *by whom the business is conducted*, and one or more special partners, contributing in cash payments a specific sum as capital to the common stock, and who are not liable for the debts of the partnership beyond the fund so contributed.

Henry Campbell Black, *A Law Dictionary*, 877 (2d ed. 1910) (emphasis added); *accord* Stewart Rapalje & Robert L. Lawrence, *Dictionary of American and English Law*, 932 (1888).

In 1977, when Congress enacted the limited-partner exception in §1402(a)(13), a defining feature of the limited partnership remained that limited partners did not control the business—although that strict prohibition has since softened. Beginning in 1916, the Conference of Commissioners on Uniform State Laws promulgated a Uniform Limited Partnership Act ("ULPA"). Soroban offers only part of the picture in claiming that the ULPA "defined limited partners as partners 'not bound by the obligations of the partnership.'" (Br.45 (quoting ULPA §1.) Under the ULPA, limited liability depended on one's *function* within the partnership, and a limited partner became liable as a general partner (*i.e.*, lost limited liability) if he "[took] part in the control of the business." ULPA §7.

The traditional understanding of limited partnerships, which still prevailed in 1977, was that liability and control went hand-in-hand. In

1968, a leading treatise explained that general partners "have full management powers and full personal liability," while "[l]imited partners are exempt from personal liability on condition that they do not participate in management." *Crane and Bromberg on Partnership*, 141, 143, 147 (1968). *Accord* Harold Gil Reuschlein & William A. Gregory, *Handbook on the Law of Agency and Partnership*, 435 (1979) ("[L]imited partners, in return for immunity, must refrain from any participation in the management or control of the business, to include control over any of the managing partners.").

Cases decided in the decades leading up to 1977 held the same: "an individual [cannot] exercise control over the business *** while at the same time participating as an investor *** without subjecting *** himself *** to liability as a general partner." *Plasteel Prods. Corp. v. Eisenberg*, 170 F. Supp. 100, 103 (D. Mass.), *aff'd sub nom. Plasteel Prods. Corp. v. Helman*, 271 F.2d 354 (1st Cir. 1959). *Accord, e.g., Delaney v. Fid. Lease Ltd.*, 526 S.W.2d 543, 545 (Tex. 1975); *Exec. Hotel Assocs. v. Elm Hotel Corp.*, 245 N.Y.S.2d 929, 933 (Civ. Ct. 1964); *Donroy Ltd. v. United States*, 196 F. Supp. 54, 57 (N.D. Cal. 1961), *aff'd*, 301 F.2d 200 (9th Cir. 1962); *Bergeson v. Life Ins. Corp. of Am.*, 170 F.

Supp. 150, 159 (D. Utah 1958), *modified on other grounds*, 265 F.2d 227 (10th Cir. 1959); *Holzman v. de Escamilla*, 86 Cal. App. 2d 858, 859-60 (1948).

To be sure, some state courts in that era held that *some* limited-partner participation did not amount to control sufficient to destroy limited liability. (*See* Br.55-56 & RER.Br.12-14 (discussing three cases).) But none allowed a state-law limited partner to exercise the degree of control and participation exercised by Soroban's Principals. In one case, a person maintained his limited liability as a limited partner where, *e.g.*, "[i]n all matters, he acted under the direction and control of" the general partner, another individual who was solely responsible for "the control of the partnership business." *Silvola v. Rowlett*, 272 P.2d 287, 289-91 (Colo. 1954). In another, the limited partner maintained that status where he lacked control "over prices, purchases, the extension of credit, wages, salaries, employment, or the funds of the" business and "did not take part in the control of" it. *Grainger v. Antoyan*, 313 P.2d 848, 853 (Ca. 1957). And *Frigidaire Sales Corp. v. Union Properties, Inc.*, affirmed a holding that limited partners do not lose limited liability "simply because they are officers, directors, or

shareholders of the corporate general partner," which did much more than act as the general partner of the single partnership at issue. 562 P.2d 244, 245-47 (Wash. 1977). In each of these cases, moreover, the court conducted a holistic and fact-intensive analysis into whether the relevant actors were functioning as limited partners *before* holding that they maintained their limited liability. The Tax Court's functional analysis here honored such traditional aspects of limited-partner status and did not "invent something new." (Br.66.)

A Revised Uniform Limited Partnership Act ("RULPA") was published in 1976, but not adopted by *any* state until 1979, when just three states adopted it. J. William Callison & Maureen A. Sullivan, *Partnership Law & Practice: General & Limited Partnerships* §18:1 n.6 (2025-2026) (collecting dates states adopted the 1976 RULPA). The RULPA thus was not "adopted nationwide" in 1977 or "[i]n the late 1970s." (Br.25-26; *see also* Br.45 (citing 1996 case to support claim regarding adoption of 1976 RULPA).) Moreover, although the RULPA further softened restrictions on control by limited partners, it still "carrie[d] over the basic test from former [ULPA] Section 7" (*see supra* pp.47). *See* RULPA §303(a)), §303 (Comment). Under the RULPA, a

limited partner was generally liable for the limited partnership's obligations "if the limited partner's participation in the control of the business is *** substantially the same as the exercise of the powers of a general partner." RULPA §303(a). Soroban's *amicus* provides a 1974 article describing limited partners as "those who merely invest a certain amount in a business." (MFA.Br., Exs-3.)

When Congress enacted §1402(a)(13), Black's Law Dictionary continued to define "limited partnership" in the same way, describing general partners as those "by whom the business is conducted." *Black's Law Dictionary*, 1277 (Rev. 4th ed. 1968). (*See* Br.44.) Soroban cites other dictionary definitions connecting limited partners with limited liability, including the definition of "limited partner" in the 1979 edition of Black's Law Dictionary (Br.44; *see* Addendum). But Soroban ignores that definition's cross-reference to "See **Limited partnership**" and also ignores the two-paragraph "Limited partnership" definition, which states that (1) "limited partners, as such, are not bound by the obligations of the partnership"; (2) *general partners "manage business"* and have personal liability; *and* (3) *limited partners* "contribute capital and share in profits but *** *take no part in running business* and" have

limited liability. *Black's Law Dictionary*, 836 (5th ed. 1979) (emphasis added; *see* Addendum). Soroban "offer[s] only select portions of various definitions to form an oversimplified definition of 'limited partner' to support its result." *Sirius*, 165 F.4th at 393 (dissent, commenting on the same approach taken by Sirius and the *Sirius* majority).

Congress, of course, was not bound by the "control test" or any other aspect of state law, nor did it necessarily incorporate it, when it enacted the exemption from self-employment tax for "limited partners, as such." (*See supra* pp.36-41.) And dictionary definitions do not govern federal tax law. As this Court has explained, "even if a transaction's form matches the dictionary definitions of each term used in the statutory definition of the tax provision, it does not follow that Congress meant to cover such a transaction and allow it a tax benefit. Instead, 'the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended.'" *Altria*, 658 F.3d at 284 (quoting *Knetsch v. United States*, 364 U.S. 361, 365 (1960); citation and other internal quotations omitted). Here, the Tax Court's analysis effectuates Congress's intention for §1402(a)(13): to exclude earnings of those functioning as limited partners, *i.e.*, those

with an interest generally akin to passive investment and thus not in control of the partnership.

The dictionaries and other sources discussed above show that, in 1977, it was commonly understood that a limited partner was more like a corporate shareholder (a passive investor) than a controlling participant in a business enterprise. Despite increasing flexibility in some state statutes, federal courts have continued to refer to limited partners as passive investors.[7] Indeed, twelve years after Congress enacted §1402(a)(13), this Court described "limited partners or shareholders" as those "who rely on the integrity of the general partner and corporate directors who are empowered under [New York law] to manage the business into which those passive investors have placed their funds." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989) (describing the "rule of fair-dealing" for general

---

[7] *See, e.g.*, *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1092 (10th Cir. 2020); *Life Care Centers of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 503 (6th Cir. 1996); *Marin TV Servs. Partners, Ltd. v. FCC*, 993 F.2d 261, 262 (D.C. Cir. 1993); *Marlin Broad. of Cent. Fla., Inc. v. FCC*, 952 F.2d 507, 511 (D.C. Cir. 1992); *Harper v. Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1089 (D. Del. 1990); *In re Adelphia Commc'ns Corp*, 376 B.R. 87, 93-94 (Bankr. S.D.N.Y. 2007).

partners and corporate directors). This Court, in 1989, thus characterized a general partner as "manag[ing] the business" and limited partners as "passive investors." *Id.*

It only makes sense that, when Congress used the adjective "limited" in §1402(a)(13), it had in mind the traditional concept of a limited partner as one who generally functions as a passive investor—and thus does not control the entire business, as did Soroban's Principals.

### 2. The statutory purpose, context, and scheme confirm this reading

"Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Section 1402(a)(13)'s context and purpose further support the Tax Court's interpretation.

When Congress added Social Security coverage for the self-employed and included every partner's distributive share of ordinary income in "net earnings from self-employment," Congress inadvertently created a "loophole" for limited partners "who merely invest[ed] a

certain amount in a business" and "obtain[ed] Social Security coverage without working." (MFA Br., Exs-3; *see* Br.15-16 (acknowledging this "problem").) Qualifying for benefits through investment, and not work, was contrary to Social Security's purpose and "ha[d] the potential for great inequity to those who contribute to the system through their work." (MFA Br., Exs.-3 (internal quotations omitted).) It was in that context that Congress enacted §1402(a)(13). Congress meant to exclude from coverage (and from self-employment tax) only individuals who were limited partners as that term was traditionally used—those who were passively deriving income from investment and not from working.

"Statutes should be interpreted as a symmetrical and coherent regulatory scheme." *See Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) (internal quotations omitted). And §1402's surrounding text drives home this distinction between income from investment and income from work. Many of §1402's exceptions and adjustments to net earnings from self-employment delineate between income from passive-investment activities, which is excluded from net earnings from self-employment, and income from active business activities, which is included. Income from real-estate rentals; stock dividends; and interest on bonds, notes,

or other financial instruments "shall be excluded" from net earnings from self-employment, unless that income is earned "in the course of a trade or business as a real estate dealer" or stock or securities dealer. I.R.C. §1402(a)(1)-(2). Gain or loss from "capital asset" sales and from the disposition of property "shall be excluded" from net earnings from self-employment, unless the latter is inventory or "held primarily for sale to customers in the ordinary course of [a] trade or business." I.R.C. §1402(a)(3)(A), (C). Partnership payments to a retired partner "shall be excluded" from net earnings from self-employment, if "such partner rendered no services" for the "trade or business carried on by [the] partnership[.]" I.R.C. §1402(a)(10).

There is a clear throughline in §1402's text: income from passive investment is excluded from net earnings from self-employment, and income from active efforts in a business is included. The Tax Court's interpretation of the limited-partner exception honors that statutory scheme and aligns with the statute's purpose.

#### 3. Legislative history provides further support

For §1402(a)(13), there is also "authoritative legislative history that assists in discerning what Congress actually meant." *See United*

*States v. Hoskins*, 902 F.3d 69, 81 n.5 (2d Cir. 2018) (internal quotations omitted). Congress enacted §1402(a)(13) "to exclude" from coverage "earnings which are basically of an investment nature" and thereby prevent an investor who "performs no services for the partnership" from "becom[ing] insured for social security benefits." H.R. Rep. No. 95-702, at 11, 40-41.

Whether such investors enjoyed limited liability or were a limited partner under state law was not part of Congress's consideration. What mattered was that they were earning Social Security credits for income not derived from their labors. This case is the mirror image: Soroban's Principals pay no self-employment tax on their earnings paid as distributive shares, despite controlling Soroban's business and laboring full-time in it—while reaping massive monetary compensation that they claim is exempt from self-employment tax. Congress never contemplated that §1402(a)(13) would exclude such income from such individuals.[8]

---

[8] The Social Security portion of self-employment tax applies up to a capped income amount annually, and the guaranteed payments to Soroban's Principals exceeded that amount in 2016 and 2017. But there is no cap for the Medicare portion, which increases above certain

(continued…)

### 4. The Fifth Circuit's opinion in *Sirius* is fundamentally flawed and unpersuasive

In January 2026, the Fifth Circuit addressed the same merits question presented here, and the panel majority ruled against the Commissioner, holding that "[a] 'limited partner' is a partner in a limited partnership that has limited liability." *Sirius Solutions, L.L.L.P. v. Commissioner*, 165 F.4th 374, 376 (5th Cir. 2026). The *Sirius* majority's analysis "misses the mark," *id.* at 393 (Graves, J., dissenting), for the same reasons—described above—that Soroban's same position is wrong. The Commissioner respectfully urges this Court not to follow the misguided approach that the *Sirius* majority adopted, which focuses on only one aspect of what it meant to be a limited partner in 1977 (limited liability) and undermines Congress's intent in creating the self-employment tax.

The *Sirius* majority, among other issues, ignored authority showing that, when Congress enacted §1402(a)(13) in 1977, the hallmark of a limited partner was lack of control—not solely limited

---

thresholds. *See* Self-employment tax (Social Security and Medicare taxes), https://www.irs.gov/businesses/small-businesses-self-employed/self-employment-tax-social-security-and-medicare-taxes.

liability. *See* 165 F.4th at 378-82 (resting its statutory interpretation on "[d]ictionary definitions" and the Court's view of agency publications). The majority did not recognize that "overwhelming authority *** establishes that limited liability depends on whether [limited partners] are functioning as passive investors" (*id.* at 394 (dissent)), *i.e.*, that in 1977, limited liability was the state-law *result* of functioning as a limited partner, not what *caused* one to be a limited partner. (*See supra* pp.45-54.)

The *Sirius* majority also did not respect Congress's purpose in enacting §1402(a)(13), *viz.*, excluding "certain earnings which are basically of an investment nature," H.R. Rep. No. 95-702, at 11 (*see supra* pp.54-57). *See* 165 F.4th at 385-86; *id.* at 396 (dissent). For state-law "limited partners" on the opposite end of the spectrum—*e.g.*, those who control and work full-time in a business—the *Sirius* majority paved the way for them to avoid taxes that fund Social Security and Medicare. And in doing so, it erroneously allowed state-law determinations of limited liability to control federal tax consequences, contrary to Supreme Court precedent, by "essentially argu[ing] that each state's definitions determine which entities are taxable" under

federal law. *See* 165 F.4th at 395 (dissent); *see id.* at 384-85. (*See supra* pp.36-41.)

Even if the majority's state-law-centric approach were correct, Delaware's current law "includes a 'control of the business' limitation, making a functional analysis test appropriate." 165 F.4th at 395-96 (dissent; citing Del. Code Ann. tit. 6, §17-303). The majority sidestepped that issue, recognizing that such limits exist but failing to consider them, instead asserting that "does not change the core of what it *means* to be a limited partner." 165 F.4th at 385. But the lynchpin of the majority's (and Soroban's) preferred test is limited liability, and under that view, "what it *means* to be a limited partner" necessarily is affected by legal limitations on what a limited partner can *do* before losing limited liability.

As Soroban attempts here (*see supra* pp.51-52), the *Sirius* majority also heavily relied on cherry-picked dictionary definitions that connected the "limited partner" label with limited liability, while overlooking related definitions—even in the same edition of Black's Law Dictionary—demonstrating that limited partners, as the term was understood in 1977, did not exercise control. *See Sirius*, 165 F.4th at

378-79 & n.2, 388; *see id.* at 393-94 (dissent). And the majority relied on informal IRS publications, *id.* at 379-81, which are not legally binding and which, in any event, are consistent with the Commissioner's position on this issue. (*See infra* pp.69-72.)

The *Sirius* majority opinion is, moreover, internally inconsistent. The majority claimed to reject the Tax Court's functional-analysis test but then indicated that a functional-analysis test would be needed for dual-status partners, by looking at whether they are "functioning as a limited partner" or "functioning as a general partner." 165 F.4th at 383-84. The *Sirius* majority did not meaningfully engage in the exercise of interpreting the meaning of "limited partner, as such" when Congress enacted §1402(a)(13) in 1977. As a result, the *Sirius* majority opinion is fundamentally flawed and unpersuasive.

### D. Soroban's and *amici*'s remaining arguments lack merit

#### 1. There is no conflict between the Tax Court's analysis and other Code provisions

Soroban claims (*e.g.*, Br.57-62) that the Tax Court's §1402(a)(13) interpretation is in tension with "[o]ther textual indicators" in the Code. But these provisions reflect Congress's understanding of limited

partners as generally passive investors and support, rather than contradict, the Tax Court's interpretation.

**a.** First, we address the limited-partner exception itself. Soroban argues that two aspects of §1402(a)(13)—the "guaranteed-payments" clause and the existence of partners who are both general and limited partners—show that it accounts for partners who perform services for the partnership. (Br.54-55, 57-59; *see also* MFA.Br.9-10.)

The Tax Court's analysis, Soroban claims, "makes the guaranteed payments carveout irrelevant." (Br.58.) Not so. To be clear: it is not the Commissioner's position—and the Tax Court's interpretation of §1402(a)(13) does not mean—that providing *any* services to (*see, e.g.*, Br.57, 69) or having *any* participation in (*see* Br.54) a partnership renders the individual not a limited partner. Soroban suggests that anyone who receives a guaranteed payment "isn't a passive investor" (Br.59), but that is a false dichotomy. Under the Tax Court's analysis, limited partners do not have to be "purely passive" (Br.57). If a limited partner does some work for the partnership and receives guaranteed payments—yet maintains a generally passive investor role by (broadly speaking) not exercising management, control, and authority—that

person can be a "limited partner, as such" under §1402(a)(13), with distributive shares excluded from net earnings from self-employment.

Here, however, this is not a close call. Soroban's Principals are at a far end of the spectrum, working full-time in a partnership where they manage and control the activities from which the partnership derives all its income. At the far other end of the spectrum are partners who perform no services. In the middle are individuals who perform *some* services for the partnership but are otherwise uninvolved in the partnership's business—*i.e.*, are "*generally* akin to passive investors," with an economic relationship to the partnership that sufficiently indicates "that it is *generally* one of passive investment." (SA34 (emphasis added; internal quotations omitted).) If those individuals receive no "guaranteed payments," then they do not include their distributive share in self-employment income. *See Hardy v. Commissioner*, T.C. Memo. 2017-16, [*29-32] (LLC member who performed weekly surgical services at LLC's center, for which he was paid directly by patients, but was uninvolved in LLC business was not subject to self-employment tax on his distributive share). But if such individuals receive "guaranteed payments" for those services (I.R.C.

§707(c)), then they pay self-employment tax on those payments (I.R.C. §1402(a)(13)), and their remaining distributive share falls under the exception.[9]

Soroban failed to show that the Principals' guaranteed payments had any connection to the value of their services. But the Principals' distributive shares *were* directly connected to the value of their services (and the services of others they managed and controlled) because their distributive shares were, "according to Soroban," "the 'net incentive and management fees earned from the Funds.'" (SA24.) Indeed, the Principals received the vast majority of their recompense through distributive shares of Soroban's ordinary income ($141.5 million), not guaranteed payments ($2.5 million). Soroban's approach, not the Tax

[9] Soroban contends that it is "significant" (Br.59-61) that §1402(a)(13) referenced guaranteed payments under §707(c), rather than §707(a), which provides that, if a partner acts as a non-partner in a transaction with the partnership, that transaction will be treated as one between a non-partner and the partnership. Soroban's argument about §707(a) makes no sense because distributive shares do not include §707(a) payments, so §1402(a)(13) need not address them. Self-employment tax already applies, moreover, to relevant §707(a) payments, such as payments to an independent contractor who also happens to be partner, but acts as a non-partner in the subject transaction with the partnership. Soroban's Principals operate the partnership *as partners*, so §707(a) does not apply to them.

Court's (Br.58), makes superfluous the lines that Congress drew between limited partners who nonetheless receive guaranteed payments and those who are not truly limited partners at all.

Soroban's dual-status-partner argument (Br.54-55) flounders for similar reasons. It invokes the House Report for the limited-partner exception as evidence that a partner can be both a general and limited partner of the same partnership. (Br.55 (citing H.R. Rep. No. 95-702, at 40).) Whatever the other benefits might have been for such dual status, those with state-law titles as both general and limited partners have not enjoyed the limited liability of limited partners. *See, e.g.*, RULPA §303(a); ULPA §§7, 12. Thus, where an individual invested as a limited partner and invested in a corporate general partner, courts have conducted a functional analysis, similar to the Tax Court's here, to determine that investor's status and liability. *Compare Delaney,* 526 S.W.2d 543, *with Frigidaire,* 562 P.2d 244.

But in any event, it is unclear why partners would still attempt such dual status today. State-law limited partnerships now allow limited partners to maintain limited liability while effectively controlling the partnership, as Soroban's Principals did. There has

been a "progressive reduction of control-based liability" for limited partners. *Bromberg and Ribstein on Partnership*, §12.14[A] (3d. ed. 2025-2 Supp.). Some states "have done away with it entirely[.]" *Id.* Delaware, for example, has "the most expansive" list of "noncontrol acts" —acts that a limited partner can perform while retaining limited liability. *Id.* at §12.14[L]; *see* Del. Code Ann. tit. 6, §17-303(b). The Tax Court's interpretation has not rendered the dual-status partner obsolete; state-law changes to provide for ever-increasing involvement and authority for partners under the limited-partner umbrella have. Given this erosion of the need for dual status, the Tax Court correctly applied a functional test to ascertain whether Soroban's Principals acted as traditional limited partners (*i.e.,* were generally akin to passive investors) or were such active participants in the business that they do not qualify for the limited-partner exception in §1402(a)(13).

**b.** Soroban further contends that the "retired-partner" exception to net earnings from self-employment in §1402(a)(10) and the limited-partnership provision in §469(h)(2) show that "Congress knows how to restrict limited partners to passive investors" but chose not to do so in §1402(a)(13). (Br.28-29; *see also* Br.61-62.) *See also Sirius*, 165 F.4th at

382 (discussing §1402(a)(10) and other statutes enacted from 1966 to 1984). This "negative implication" argument, however, is context dependent. *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 381 (2013). And context does not support this argument.

First, §1402(a)(10) and §469(h)(2) were enacted about a decade before and after, respectively, the limited-partner exception (enacted in 1977). *See* Social Security Amendments of 1967, Pub. L. No. 90-248, §118(a), 81 Stat. 821, 841 (1968) (enacting §1402(a)(10)); Tax Reform Act of 1986, Pub. L. No. 99-514, Title V, §501(a), 100 Stat. 2085, 2237 (enacting §469(h)). But negative implications "are strongest when the provisions were considered simultaneously." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (internal quotations omitted). There is little to be taken from differences in statutory language that three different Congresses enacted across a 19-year span.

Second, §1402(a)(10) and §469(h)(2) addressed issues different from the concerns in §1402(a)(13). Regarding §1402(a)(10), Congress felt that "partnership payments which are clearly retirement income should be excluded for all social security purposes[,]" so it "excluded"—"under conditions which assure that the payments are bona fide

retirement income"—"payments received by a retired partner from the partnership[.]" H.R. Rep. No. 90-544, at 35 (1967). It thus distinguished between payments to a partner for his services versus payments to that partner after withdrawing from service.

Section 469 was enacted to combat prolific tax-shelter activity related to passive activities. *See* S. Rep. No. 99-313, at 713-18 (1985). Soroban relies on §469(h), but there, Congress treated limited-partnership interests "as intrinsically passive" because to maintain limited-liability status, "a limited partner generally is precluded from participating in the partnership's business." *Id.* at 720; *id.* at 718 ("[A] limited partner more closely resembles a shareholder in a C corporation than an active business entrepreneur."). Section 469(h) thus supports the Commissioner's position here.

The concern motivating §1402(a)(13) was that individuals were obtaining Social Security benefits from income that was "basically of an investment nature." H.R. Rep. No. 95-702, at 11. (*See supra* pp.54-57.) It would make no sense for Congress to include a rule that, to be a limited partner, the partner must perform "no" services. In that case, investors in partnerships could obtain Social Security credits by

performing minimal services, essentially "electing out" of §1402(a)(13). That would defeat Congress's purpose of excluding income that is basically investment income.

### 2. IRS and SSA publications do not support Soroban

Soroban also seeks support from IRS and Social Security Administration (SSA) publications. (*E.g*, Br.45-49, 63-64; *see also* MFA.Br.12-20.) *See also Sirius*, 165 F.4th at 379-82 (relying on IRS instructions and an SSA regulation).

IRS publications "do not have the force of law," *United States v. Josephberg*, 562 F.3d 478, 498-99 (2d Cir. 2009), and "do not displace controlling statutes, regulations, and case law," *Gerstenbluth v. Credit Suisse Secs. (USA) LLC*, 728 F.3d 139, 147 (2d Cir. 2013). Soroban nonetheless attempts to rely on the 2016 and 2017 Form 1065 instructions as describing a limited partner as having limited liability. (*E.g.*, Br.3, Br.17, Br.26, Br.48.) But as the Tax Court pointed out (SA13-14), that appeared in the "General Instructions" for the Form 1065—not anything specific to reporting net earnings from self-employment. *See also Sirius*, 165 F.4th at 397 (dissent); 2016 Form 1065 Instructions, at 2, https://www.irs.gov/pub/irs-prior/i1065--

2016.pdf; 2017 Form 1065 Instructions, at 3, https://www.irs.gov/pub/irs-prior/i1065--2017.pdf. And those instructions are consistent with the Commissioner's position. Determining whether a state-law-denominated limited partner enjoyed limited liability requires an examination of the partner's role in the partnership. An individual having pervasive involvement in the conduct and management of the business potentially would *not* have limited liability and thus would *not* be a "limited partner," even under Soroban's approach to §1402(a)(13), and certainly under 1977 standards. The instructions simply refer to a limited partner who does not have that level of involvement and, as a *result* of that function within the partnership, both (1) has limited liability under state law and (2) is a limited partner for federal tax purposes under §1402(a)(13).

Regarding net earnings from self-employment, the instructions explained that "*[g]enerally*, a limited partner's share of partnership income (loss) isn't included," and "[l]imited partners treat as self-employment earnings only guaranteed payments *** ." 2016 Instructions at 34 & 2017 Instructions at 36 (emphasis added). (*See* Br.48; SA14.) The word "generally" is a "qualifier" and clarifies "that it

is not always true" that limited partners' distributive shares are excluded from net earnings from self-employment. (*See* SA14.) *See Sirius*, 165 F.4th at 397 (dissent; discussing *Soroban I*). That should have raised a flag for Soroban's Principals.

The SSA's regulations also support the Commissioner's position. Soroban and *amici* primarily rely on 20 C.F.R. §404.1080(b)(3). (*E.g.*, Br.46-47; MFA.Br.15-17.) But that regulation itself references the concepts of control and services: "Generally, [a limited partner] will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership for the taxable year involved." 20 C.F.R. §404.1080(b)(3) (second sentence). Indeed, the placement of the words "have to" and of the commas is most reasonably read to indicate that the limited partner generally "will not have to perform services" and "will not *** participate in the control." More broadly, the regulation's consideration of services and control is consistent with the Tax Court's functional analysis, applying the law as Congress would have understood it in 1977.

As the Tax Court has explained, moreover, "[t]he concept of 'net earnings from self-employment' used in section 1402(a) provides the

standard for determining not only liability for self-employment taxes but also eligibility for social security benefits." *Stevenson v. Commissioner*, T.C. Memo. 1989-357. Where the IRS collects and reports self-employment taxes to the SSA, the SSA credits those payments to calculate benefits eligibility. 42 U.S.C. §405(c)(2)(A). Even when a question of a limited partner's benefits eligibility arises, the SSA uses a "Partnership Questionnaire" (Form SSA-7104 (12-2024)),[10] which asks questions similar to the Tax Court's functional analysis. And we are unaware of any case where the SSA denied Social Security benefits because it determined a partner who paid self-employment taxes is a limited partner not entitled to benefits. Soroban's reliance on the SSA's sub-regulatory Program Operations Manual System ("POMS") (Br. 47) is misplaced. The POMS, like IRS publications, are non-binding and have no legal force. *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

---

[10] *See* Partnership Questionnaire, Form SSA-7104, https://www.ssa.gov/forms/ssa-7104.pdf.

### 3. The 1997 congressional moratorium does not undermine the Commissioner's position

A Senate resolution and congressional moratorium on proposed regulations in the 1990s also does not inform the meaning of "limited partner" in 1977, when Congress enacted §1402(a)(13). (*See, e.g.*, Br.49-51 (citing Sense of the Senate, 143 Cong. Rec. 13168 (June 27, 1997); Taxpayer Relief Act of 1997, Pub. L. No. 105-34, §935, 111 Stat. 788, 882); MFA.Br.25-27; RER.Br.21-22 n.21.) The temporary moratorium simply provided that no regulations "with respect to the definition of a limited partner under section 1402(a)(13)" could be issued or effective before July 1, 1998. 111 Stat. at 882. That congressional action followed proposed regulations that would have set bright-line rules barring limited-partner treatment under §1402(a)(13) when, for example, someone participated in the partnership's trade or business for more than 500 hours during the year. *See* 62 Fed. Reg. 1702, 1704 (Jan. 13, 1997). The proposed regulation, with its specific cut-offs, was very different from the holistic, facts-and-circumstances functional analysis that the Tax Court applied here, based on its interpretation of the statutory text in §1402(a)(13). Congress's reaction to specific proposed regulations, 20 years after it enacted §1402(a)(13), does not

override the statute's plain text (or Congress's original intent) and has no bearing here.

### E. Soroban has forfeited any challenge to the Tax Court's factual findings

On the merits, Soroban argues that the Tax Court applied the wrong analysis under §1402(a)(13)—and that under Soroban's preferred approach, the Principals were "limited partners" under §1402(a)(13). But Soroban does not challenge, on appeal, the Tax Court's overall factual finding that, *under the Tax Court's functional analysis*, the Principals did not function as "limited partner[s], as such" for §1402(a)(13). Soroban also does not challenge any of the underlying factual findings, and it has forfeited any factual challenges. *See Off. Create*, 140 F.4th at 102 n.5.

If this Court rejects Soroban's narrow, state-law-centric approach to interpreting §1402(a)(13), there is no other dispute to address on appeal, and this Court should affirm. There is, in any event, no reasonable question that Soroban's Principals were not functioning as limited partners, as that term was understood in 1977, because they undisputedly controlled every aspect of Soroban and undisputedly were

critical to the investment management activities from which Soroban derived all of its income. (*See supra* p.10-11; SA19-38, SA42.)

Although Soroban identifies no factual challenges, it complains that the Tax Court's test is unpredictable, by contrast to Soroban's simplistic approach of looking at state-law labels and states' ever-broadening grants of limited liability. (Br.59; *see* MFA.Br.6-7, 30.) *See also Sirius*, 165 F.4th at 383. The facts here do not present a close call, and such complaints are overblown and champion form over substance. Federal tax law requires the opposite, and the Tax Court's functional analysis reflects the longstanding principle that, in the federal tax arena, substance trumps form.

The Tax Court's approach to determinations under §1402(a)(13) examines the partners' economic relationship to the partnership's income—through their role in generating it and their capital contributions to the partnership. (SA34-38.) *See also, e.g.*, *Denham*, 2024 WL 5200039, at *8-*9; *Renkemeyer, Campbell & Weaver, LLP v. Commissioner*, 136 T.C. 137, 150-51 (2011). That is "not dictated by any set number of factors" but "is a facts and circumstances test." (SA37.) The state-law labels that are the fulcrum of Soroban's preferred

analysis "are perhaps least relevant because they may be inconsistent with the economic reality of a partner's relationship with the entity." (SA38.) A labeled "limited partner" "is not functioning as a limited partner" where, as here, he "works for the business full time," his "work is essential to generating the business's income," he "is held out to the public as essential to the business," and he "contributes little or no capital." (SA38.)

Federal tax law is, moreover, replete with similar analyses, and "[t]here is nothing new or particularly difficult about such a test." *See Culbertson*, 337 U.S. at 742-43 (discussing a test that "consider[s] all the facts" to determine intent). For example, an "all-facts-and-circumstances test" determines whether an interest is "a bona fide equity partnership participation." *TIFD III-E*, 459 F.3d at 231. The debt-versus-equity inquiry turns on "no fewer than eleven non-exclusive factors." *Hewlett-Packard Co. v. Commissioner*, 875 F.3d 494, 498 (9th Cir. 2017). Whether an activity is engaged in for profit (*e.g.*, I.R.C. §§162, 183, 212) turns on "nine factors listed in" a regulation. *Losantiville Country Club v. Commissioner*, 906 F.3d 468, 472-73 (6th Cir. 2018).

The facts here stack up at one end of the spectrum, and it is straightforward to apply the functional analysis here. But we acknowledge that such tests are not always simple to apply. That is because they seek to reveal the true nature of economic events and relationships—not the labels or surface-level characteristics that taxpayers claim in service of a preferred tax result. Tests like the Tax Court's functional analysis for the limited-partner exception in §1402(a)(13) tease out the substance, rather than the form, of disputed transactions and relationships—a fundamental tenet of federal tax law. (*Supra* pp.41-43.)

By focusing on substance, rather than form, the Tax Court here correctly found that Soroban's Principals did not function as "limited partners, as such" and that their $141.5 million in distributive shares of Soroban's ordinary income must be included in net earnings from self-employment.

## CONCLUSION

The Tax Court's decision was correct and should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
JOSHUA WU
*Deputy Assistant Attorney General*

/s/ Norah E. Bringer

ELLEN PAGE DELSOLE (202) 514-8128
NORAH E. BRINGER (202) 307-6224
*Attorneys, Tax Litigation Branch*
*Civil Division, U.S. Department of Justice*
*Post Office Box 502, Washington, D.C. 20044*

MARCH 9, 2026

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and 2d Cir. R. 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X] this document contains 13,984 words, **or**

[ ] this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ] this brief has been prepared in a monospaced typeface using ____________________ with ________________.

(s) /s/ Norah E. Bringer

Attorney for Commissioner of Internal Revenue

Dated: March 9, 2026

# STATUTORY ADDENDUM

## Internal Revenue Code (26 U.S.C.):

§ 469 (2016 & 2017) .......... 81
§ 701 .......... 82
§ 702 .......... 82
§ 703 .......... 83
§ 707 (2016 & 2017) .......... 84
§ 1401 .......... 84
§ 1402 (2016 & 2017) .......... 85
§ 6221 (2016 & 2017) .......... 90
§ 6226 (2016 & 2017) .......... 90
§ 6031 (2016 & 2017) .......... 91
§ 6231 (2016 & 2017) .......... 91

## Code of Federal Regulations

20 C.F.R. § 404.1080 .......... 92
26 C.F.R. § 301.6231(a)(3)-1 .......... 93

**Internal Revenue Code (26 U.S.C.)**

**§ 469. Passive activity losses and credits limited (2016 & 2017)**

(a) Disallowance.--

(1) In general.--If for any taxable year the taxpayer is described in paragraph (2), neither--

(A) the passive activity loss, nor

(B) the passive activity credit,

for the taxable year shall be allowed.

(2) Persons described.--The following are described in this paragraph:

(A) any individual, estate, or trust,

(B) any closely held C corporation, and

(C) any personal service corporation.

***

(c) Passive activity defined.--For purposes of this section--

(1) In general.--The term "passive activity" means any activity--

(A) which involves the conduct of any trade or business, and

(B) in which the taxpayer does not materially participate.

***

(h) Material participation defined.--For purposes of this section--

(1) In general.--A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is--

(A) regular,

(B) continuous, and

(C) substantial.

(2) Interests in limited partnerships.--Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates.

***

**§ 701. Partners, not partnership, subject to tax**

A partnership as such shall not be subject to the income tax imposed by this chapter. Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities.

**§ 702. Income and credits of partner**

(a) General rule.--In determining his income tax, each partner shall take into account separately his distributive share of the partnership's--

(1) gains and losses from sales or exchanges of capital assets held for not more than 1 year,

(2) gains and losses from sales or exchanges of capital assets held for more than 1 year,

(3) gains and losses from sales or exchanges of property described in section 1231 (relating to certain property used in a trade or business and involuntary conversions),

(4) charitable contributions (as defined in section 170(c)),

(5) dividends with respect to which section 1(h)(11) or part VIII of subchapter B applies,

(6) taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States,

(7) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary, and

(8) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

***

**§ 703. Partnership computations**

(a) Income and deductions.--The taxable income of a partnership shall be computed in the same manner as in the case of an individual except that--

(1) the items described in section 702(a) shall be separately stated, and

(2) the following deductions shall not be allowed to the partnership:

(A) the deductions for personal exemptions provided in section 151,

(B) the deduction for taxes provided in section 164(a) with respect to taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States,

(C) the deduction for charitable contributions provided in section 170,

(D) the net operating loss deduction provided in section 172,

(E) the additional itemized deductions for individuals provided in part VII of subchapter B (sec. 211 and following), and

(F) the deduction for depletion under section 611 with respect to oil and gas wells.

***

**§ 707. Transactions between partner and partnership (2016 & 2017)**

(a) Partner not acting in capacity as partner.--

(1) In general.--If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

***

(c) Guaranteed payments.--To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

**§ 1401. Rate of tax**

(a) Old-age, survivors, and disability insurance.--In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to 12.4 percent of the amount of the self-employment income for such taxable year.

(b) Hospital insurance.--

(1) In general.--In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax equal to 2.9 percent of the amount of the self-employment income for such taxable year.

(2) Additional tax.--

(A) In general.--In addition to the tax imposed by paragraph (1) and the preceding subsection, there is hereby imposed on every taxpayer (other than a corporation, estate, or trust) for each taxable year beginning after December 31, 2012, a tax equal to 0.9 percent of the self-employment income for such taxable year which is in excess of--

(i) in the case of a joint return, $250,000,

(ii) in the case of a married taxpayer (as defined in section 7703) filing a separate return, ½ of the dollar amount determined under clause (i), and

(iii) in any other case, $200,000.

(B) Coordination with FICA.--The amounts under clause (i), (ii), or (iii) (whichever is applicable) of subparagraph (A) shall be reduced (but not below zero) by the amount of wages taken into account in determining the tax imposed under section 3121(b)(2) with respect to the taxpayer.

***

**§ 1402. Definitions (2016 & 2017)**

(a) Net earnings from self-employment.--The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business

carried on by a partnership of which he is a member; except that in computing such gross income and deductions and such distributive share of partnership ordinary income or loss--

(1) there shall be excluded rentals from real estate and from personal property leased with the real estate (including such rentals paid in crop shares, and including payments under section 1233(2) of the Food Security Act of 1985 (16 U.S.C. 3833(2))1 to individuals receiving benefits under section 202 or 223 of the Social Security Act) together with the deductions attributable thereto, unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provisions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) with respect to any such agricultural or horticultural commodity;

(2) there shall be excluded dividends on any share of stock, and interest on any bond, debenture, note, or certificate, or other evidence of indebtedness, issued with interest coupons or in registered form by any corporation (including one issued by a government or political subdivision thereof), unless such dividends and interest are received in the course of a trade or business as a dealer in stocks or securities;

(3) there shall be excluded any gain or loss--

(A) which is considered as gain or loss from the sale or exchange of a capital asset,

(B) from the cutting of timber, or the disposal of timber, coal, or iron ore, if section 631 applies to such gain or loss, or

(C) from the sale, exchange, involuntary conversion, or other disposition of property if such property is neither--

(i) stock in trade or other property of a kind which would properly be includible in inventory if on hand at the close of the taxable year, nor

(ii) property held primarily for sale to customers in the ordinary course of the trade or business;

(4) the deduction for net operating losses provided in section 172 shall not be allowed;

(5) if--

(A) any of the income derived from a trade or business (other than a trade or business carried on by a partnership) is community income under community property laws applicable to such income, the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the spouse carrying on such trade or business or, if such trade or business is jointly operated, treated as the gross income and deductions of each spouse on the basis of their respective distributive share of the gross income and deductions; and

(B) any portion of a partner's distributive share of the ordinary income or loss from a trade or business carried on by a partnership is community income or loss under the community property laws applicable to such share, all of such distributive share shall be included in computing the net earnings from self-employment of such partner, and no part of such share shall be taken into account in computing the net earnings from self-employment of the spouse of such partner;

(6) a resident of Puerto Rico shall compute his net earnings from self-employment in the same manner as a citizen of the United States but without regard to section 933;

(7) the deduction for personal exemptions provided in section 151 shall not be allowed;

(8) an individual who is a duly ordained, commissioned, or licensed minister of a church or a member of a religious order shall compute his net earnings from self-employment derived from the performance of service described in subsection (c)(4) without regard to section 107 (relating to rental value of parsonages), section 119 (relating to meals and lodging furnished for the convenience of the employer), and section 911 (relating to citizens or residents of the United States living abroad), but shall not include in such net earnings from self-employment the rental value of any parsonage or any parsonage allowance (whether or not excludable under section 107) provided after the individual retires, or any other retirement benefit received by such individual from a church plan (as defined in section 414(e)) after the individual retires;

(9) the exclusion from gross income provided by section 931 shall not apply;

(10) there shall be excluded amounts received by a partner pursuant to a written plan of the partnership, which meets such requirements as are prescribed by the Secretary, and which provides for payments on account of retirement, on a periodic basis, to partners generally or to a class or classes of partners, such payments to continue at least until such partner's death, if--

(A) such partner rendered no services with respect to any trade or business carried on by such partnership (or its successors) during the taxable year of such partnership (or its successors), ending within or with his taxable year, in which such amounts were received, and

(B) no obligation exists (as of the close of the partnership's taxable year referred to in subparagraph (A)) from the other partners to such partner except with respect to retirement payments under such plan, and

(C) such partner's share, if any, of the capital of the partnership has been paid to him in full before the close of the partnership's taxable year referred to in subparagraph (A);

(11) the exclusion from gross income provided by section 911(a)(1) shall not apply;

(12) in lieu of the deduction provided by section 164(f) (relating to deduction for one-half of self-employment taxes), there shall be allowed a deduction equal to the product of--

(A) the taxpayer's net earnings from self-employment for the taxable year (determined without regard to this paragraph), and

(B) one-half of the sum of the rates imposed by subsections (a) and (b) of section 1401 for such year (determined without regard to the rate imposed under paragraph (2) of section 1401(b));

(13) there shall be excluded the distributive share of any item of income or loss of a limited partner, as such, other than guaranteed payments described in section 707(c) to that partner for services actually rendered to or on behalf of the partnership to the extent that those payments are established to be in the nature of remuneration for those services;

(14) in the case of church employee income, the special rules of subsection (j)(1) shall apply;

(15) in the case of a member of an Indian tribe, the special rules of section 7873 (relating to income derived by Indians from exercise of fishing rights) shall apply;

(16) the deduction provided by section 199 shall not be allowed; and

(17) notwithstanding the preceding provisions of this subsection, each spouse's share of income or loss from a qualified joint venture shall be taken into account as provided in section 761(f) in determining net earnings from self-employment of such spouse.

***

## § 6221. Tax treatment determined at partnership level (2016 & 2017)

Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.

## § 6226. Judicial review of final partnership administrative adjustments (2016 & 2017)

(a) Petition by tax matters partner.--Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with--

(1) the Tax Court,

(2) the district court of the United States for the district in which the partnership's principal place of business is located, or

(3) the Court of Federal Claims.

***

(f) Scope of judicial review.--A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to

which the notice of final partnership administrative adjustment relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

(g) Determination of court reviewable.--Any determination by a court under this section shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Court of Federal Claims, as the case may be, and shall be reviewable as such. With respect to the partnership, only the tax matters partner, a notice partner, or a 5-percent group may seek review of a determination by a court under this section.

***

**§ 6031. Return of partnership income (2016 & 2017)**

(a) General rule.--Every partnership (as defined in section 761(a)) shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A, and such other information for the purpose of carrying out the provisions of subtitle A as the Secretary may by forms and regulations prescribe, and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual.

***

**§ 6231. Definitions and special rules (2016 & 2017)**

(a) Definitions.--For purposes of this subchapter—

***

(3) Partnership item.--The term “partnership item” means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more

appropriately determined at the partnership level than at the partner level.

(4) Nonpartnership item.--The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.

(5) Affected item.--The term "affected item" means any item to the extent such item is affected by a partnership item.

(6) Computational adjustment.--The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

***

**Code of Federal Regulations**

**20 C.F.R. § 404.1080 Net earnings from self-employment.**

***

(b) Income or loss from a partnership.

***

(3) You are a limited partner if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership. Generally, you will not have to perform services in the operation of, or participate in the control of, the business carried on by the partnership for the taxable year involved.

***

**26 C.F.R. (Treas. Reg.) § 301.6231(a)(3)-1 Partnership items.**

(a) In general. For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

(1) The partnership aggregate and each partner's share of each of the following:

(i) Items of income, gain loss, deduction, or credit of the partnership;

(ii) Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

(iii) Items of the partnership which may be tax preference items under section 57(a) for any partner;

(iv) Income of the partnership exempt from tax;

(v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year); and

(vi) Other amounts determinable at the partnership level with respect to partnership assets, investments, transactions and operations necessary to enable the partnership or the partners to determine—

(A) The investment credit determined under section 46(a);

(B) Recapture under section 47 of the investment credit;

(C) Amounts at risk in any activity to which section 465 applies;

(D) The depletion allowance under section 613A with respect to oil and gas wells; and

(E) The application of section 751 (a) and (b);

(2) Guaranteed payments;

(3) Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and

(4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

(i) Contributions to the partnership;

(ii) Distributions from the partnership; and

(iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

(b) Factors that affect the determination of partnership items. The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with

the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.

***

# ADDENDUM

Black's Law Dictionary (5th ed. 1979).

KF
156
.B627
Copy 4
- mm -

# BLACK'S LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

FIFTH EDITION

BY

THE PUBLISHER'S EDITORIAL STAFF

Contributing Authors

JOSEPH R. NOLAN
Associate Justice, Massachusetts Superior Court
and
M. J. CONNOLLY
Associate Professor of Linguistics
and Eastern Languages, Boston College

LIBRARY
Department of Justice

ST. PAUL MINN.
WEST PUBLISHING CO.
1979

COPYRIGHT © 1891, 1910, 1933, 1951, 1957, 1968 By WEST PUBLISHING COMPANY
COPYRIGHT © 1979 By WEST PUBLISHING CO.
All rights reserved
Printed in the United States of America

**Library of Congress Cataloging in Publication Data**

Black, Henry Campbell, 1860–1927.
Black's Law dictionary.

First ed., 1891, has title: A dictionary of law.
1. Law—Dictionaries. I. Nolan, Joseph R.
II. Connolly, Michael J. III. West Publishing Company,
St. Paul. IV. Title. V. Title: Law dictionary.
KF156.B53 1979 340'.03 79-12547
**ISBN** 0-8299-2041-2
**ISBN** 0-8299-2045-5 deluxe

**Limited.** Restricted; bounded; prescribed. Confined within positive bounds; restricted in duration, extent, or scope.

As to limited Company; Divorce; Fee; and Partnership, see those titles.

*Ltd.* A designation following a corporate business name and indicating its corporate and limited liability status. It is found most commonly after British and Canadian corporate names, though it is sometimes used in the United States.

**Limited administration.** An administration of a temporary character, granted for a particular period, or for a special or particular purpose.

**Limited admissibility.** In law of evidence, testimony or things may be admitted into evidence for a restricted purpose, and the trial judge should so instruct the jury at the time of its admission; *e.g.* prior contradictory statements are admissible to impeach but not admissible for the truth of the statements. However, if the evidence has multiple purposes, one being in violation of a constitutional protection for a criminal defendant, such evidence should not be admitted. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

Similarly, evidence may frequently be competent as against one party, but not as against another, in which event the practice is to admit the evidence, with an instruction, if requested, that the jury are to consider it only as to the party against whom it is competent. Fed.Evid.R. 105.

**Limited appeal.** An appeal from only adverse portions of a decree; such is limited to the particular portions of the decree appealed from. Fox v. River Heights, 22 Tenn.App. 166, 118 S.W.2d 1104, 1114. See also **Interlocutory appeal; Interlocutory Appeals Act.**

**Limited court.** Where special authority, in derogation of common law, is conferred by statute on a court of general jurisdiction, it becomes an "inferior or limited court". For example, a probate court is a court of limited jurisdiction. Partlow v. Partlow, 246 Ala. 259, 20 So.2d 517, 518. See **Limited or special jurisdiction.**

**Limited divorce.** A divorce decree or judgment may be restricted to a dissolution of the marriage with no provision for support. In another sense, term refers to a divorce a mensa et thoro (from bed and board) with no right to remarry.

**Limited executor.** An executor whose appointment is qualified by limitations as to the time or place wherein, or the subject-matter whereon, the office is to be exercised; as distinguished from one whose appointment is absolute, *i.e.,* certain and immediate, without any restriction in regard to the testator's effects or limitation in point of time.

**Limited guaranty.** A limited guaranty is ordinarily one restricted in its application to a single transaction. Cooling v. Springer, 3 Terry 228, 30 A.2d 466, 469.

**Limited** or **special jurisdiction.** Jurisdiction which is confined to particular causes, or which can be exercised only under the limitations and circumstances prescribed by the statute. A court's power over an action is governed generally by statute and some courts have limited authority or power and the limitation is in terms of the nature of the case (*e.g.* probate courts), or the amount in controversy, or the type of crime with which the defendant is charged or the age of the accused (*e.g.* juvenile courts). See also **Limited court.**

**Limited owner.** A tenant for life, or by the curtesy, or other person not having absolute ownership.

**Limited partner.** A partner whose liability to third party creditors of the partnership is limited to the amount invested by such partner in the partnership. See **Limited partnership.**

**Limited partnership.** An unincorporated association, or firm, in which one or more of the partners are, on compliance with the provisions of various state statutes regulating such partnerships, relieved from liability beyond the amount of the capital contributed by them. A partnership formed by two or more persons under the provisions of the Uniform Limited Partnership Act, having as members one or more general partners and one or more limited partners. The limited partners, as such, are not bound by the obligations of the partnership. Uniform Limited Partnership Act § 1. Most all states have adopted the Uniform Limited Partnership Act.

Limited partnership is type of partnership comprised of one or more general partners who manage business and who are personally liable for partnership debts, and one or more limited partners who contribute capital and share in profits but who take no part in running business and incur no liability with respect to partnership obligations beyond contribution. Evans v. Galardi, 16 Cal.3d 300, 128 Cal.Rptr. 25, 30, 546 P.2d 313.

See also **General partner; Limited partner.**

**Limited payment plan.** A policy upon a "limited payment plan" is a paid-up policy, and insurance upon which no further premium is to be paid. Bankers Life & Loan Ass'n v. Chase, Tex.Civ.App., 114 S.W.2d 374, 376.

**Limited policy.** Insurance policy specifically excluding certain classes or types of loss. State Compensation Ins. Fund v. Industrial Accident Commission, 56 Cal. App.2d 443, 132 P.2d 890, 894.

**Limited power of appointment.** Power of appointment is limited when it is exercisable only in favor of persons or a class of persons designated in the instrument creating the power. Johnstone v. Commissioner of Internal Revenue, C.C.A.9, 76 F.2d 55, 57.

**Limited publication.** Communication to a select number on condition, express or implied, that it is not intended to be thereafter common property. A limited publication is one which is restricted both as to persons and as to purpose and is a publication which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public. Masterson v. McCroskie, Colo. App., 556 P.2d 1231, 1233.

**Limit order.** A restriction on the sale or purchase of a security placed by a customer with a broker, limiting the price at which the customer is willing to buy or sell.