# 25-2079 (L), 25-2250 (CON)

## In the United States Court of Appeals for the Second Circuit

SOROBAN CAPITAL PARTNERS LP,
SOROBAN CAPITAL PARTNERS GP LLC TAX MATTERS PARTNER,
*Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL REVENUE,
*Respondent-Appellee.*

On Appeal from the United States Tax Court,
Nos. 16217-22 & 16218-22,
Hon. Ronald L. Buch, *Judge of the United States Tax Court*

**REPLY BRIEF OF APPELLANTS SOROBAN CAPITAL PARTNERS LP AND SOROBAN CAPITAL PARTNERS GP LLC**

*Counsel information on inside cover*

Shay Dvoretzky
*Counsel of Record*
Parker Rider-Longmaid
Armando Gomez
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Kathleen Gregor
Elizabeth Smith
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

Raza Rasheed
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
2000 Avenue of the Stars, Ste. 200N
Los Angeles, CA 90067

*Counsel for Petitioners-Appellants Soroban Capital Partners LP & Soroban Capital Partners GP LLC*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... v

GLOSSARY .......... x

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. The IRS and Tax Court could not use TEFRA partnership-level proceedings because net earnings from self-employment isn't a "partnership item." .......... 3

A. Net earnings from self-employment doesn't meet the first requirement of TEFRA's partnership-item test. .......... 4

1. No "provision of subtitle A" "require[s]" net earnings from self-employment "to be taken into account for the partnership's taxable year." .......... 4

2. The IRS's counterarguments lack merit. .......... 5

a. Section 1402's location in subtitle A doesn't make net earnings from self-employment a partnership item. .......... 5

b. The Federal Circuit's *Keener* decision under *Chevron* doesn't help the government. .......... 8

c. A partner's need to calculate his distributive share of partnership income doesn't make net earnings from self-employment a partnership item. .......... 9

**TABLE OF CONTENTS**
(continued)

**Page**


d. The IRS otherwise fails to identify any statutory text in subtitle A that requires partnerships to take into account net earnings from self-employment in the partnership's tax reporting. .....10

e. The IRS's policy arguments lack merit. .....11

B. Net earnings from self-employment doesn't meet the second requirement of TEFRA's partnership-item test. .....12

1. Net earnings from self-employment doesn't appear in Treasury's "regulations" identifying items "more appropriately determined at the partnership level than at the partner level." .....12

2. The IRS's counterarguments lack merit. .....12

II. The limited partner exception exempts Soroban's limited partners' distributive shares of Soroban's income from self-employment tax. .....15

A. Soroban's limited partners qualify for the limited partner exception because they are partners in a limited partnership with limited liability. .....15

B. The IRS's arguments are meritless. .....16

1. Soroban's and the Fifth Circuit's definition of "limited partner" doesn't conflict with background principles of tax law .....17

a. Soroban and the Fifth Circuit's plain reading doesn't subordinate the Tax Code to state law. .....17

**TABLE OF CONTENTS**
(continued)

**Page**

b. Soroban and the Fifth Circuit's plain reading doesn't make the limited partner exception turn on "mere labels." ....20

c. Soroban and the Fifth Circuit's plain reading doesn't undermine uniformity of federal law. ....21

2. The passive investor standard contravenes § 1402(a)(13). ....21

a. In 1977, it was settled law that limited partners could participate in the business and didn't need to be passive investors. ....21

b. Other textual indicators show that Congress didn't think only passive investors could be limited partners. ....24

c. The SSA and (until recently) the IRS have not understood limited partners to be passive investors. ....29

d. Congress's rejection of the passive investor standard confirms it's wrong. ....31

3. The IRS's justifications for the passive investor test don't withstand scrutiny. ....32

a. State law restrictions on limited liability don't justify the passive investor standard. ....32

b. The limited partner exception's purpose, structure, and legislative history don't support the IRS's passive investor standard. ....34

CONCLUSION ....35

**TABLE OF CONTENTS**
(continued)

**Page**

CERTIFICATE OF COMPLIANCE ........................................................ 36

CERTIFICATE OF SERVICE ............................................................... 37

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AD Global Fund, LLC v. United States*,
481 F.3d 1351 (Fed. Cir. 2007) .......... 14

*Allright Missouri, Inc. v. Billeter*,
829 F.2d 631 (8th Cir. 1987) .......... 24

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 3, 29, 30

*Burk-Waggoner Oil Ass'n v. Hopkins*,
269 U.S. 110 (1925) .......... 19

*Burnet v. Harmel*,
287 U.S. 103 (1932) .......... 17, 18

*Chimblo v. Commissioner*,
177 F.3d 119 (2d Cir. 1999) .......... 14, 15

*City & County of San Francisco v. EPA*,
604 U.S. 334 (2025) .......... 25, 26

*Commissioner v. Culbertson*,
337 U.S. 733 (1949) .......... 19

*Commissioner v. Tower*,
327 U.S. 280 (1946) .......... 19

*Field v. United States*,
328 F.3d 58 (2d Cir. 2003) .......... 4, 6, 8, 10, 11, 12

*Frigidaire Sales Corp. v. Union Properties, Inc.*,
562 P.2d 244 (Wash. 1977) .......... 22, 23, 24, 33, 34

*Gitlitz v. Commissioner*,
531 U.S. 206 (2001) .......... 11

*Grainger v. Antoyan*,
313 P.2d 848 (Cal. 1957) (en banc) .......... 23, 24

*Heiner v. Mellon*,
304 U.S. 271 (1938) .......... 17, 18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Keener v. United States*,
551 F.3d 1358 (Fed. Cir. 2009) ........................................................8, 9

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ........................................................ 8, 9, 34

*Marx v. General Revenue Corp.*,
568 U.S. 371 (2013) ........................................................28

*Monti v. United States*,
223 F.3d 76 (2d Cir. 2000) ........................................ 4, 5, 6, 8, 10, 11, 12

*Moore v. United States*,
602 U.S. 572 (2024) ........................................................19

*Morgan v. Commissioner*,
309 U.S. 78 (1940) ........................................................ 18, 19

*Morissette v. United States*,
342 U.S. 246 (1952) ........................................................ 21, 22, 23, 24

*National Ass'n of Manufacturers v. Department of Defense*,
583 U.S. 109 (2018) ........................................................7

*PPL Corp. v. Commissioner*,
569 U.S. 329 (2013) ........................................................20

*RJT Investments X v. Commissioner*,
491 F.3d 732 (8th Cir. 2007) ........................................................6, 7

*Silvola v. Rowlett*,
272 P.2d 287 (Colo. 1954) (en banc) ........................................ 23, 24

*Sirius Solutions, L.L.L.P. v. Commissioner*,
165 F.4th 374 (5th Cir. 2026) ........................................ 2, 3,
........................................ 12, 15,
........................................ 17, 18, 20,
........................................ 21, 26, 27, 28,
........................................ 29, 30, 31, 32, 33

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Stanley v. City of Sanford*,
606 U.S. 46 (2025) .......... 11, 34, 35

*Summa Holdings, Inc. v. Commissioner*,
848 F.3d 779 (6th Cir. 2017) .......... 1

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989) .......... 33

*United States ex rel. Schutte v. SuperValu Inc.*,
598 U.S. 739 (2023) .......... 11

*United States v. National Bank of Commerce*,
472 U.S. 713 (1985) .......... 18

*United States v. Windsor*,
570 U.S. 744 (2013) .......... 18

*United States v. Woods*,
571 U.S. 31 (2013) .......... 4

**CONSTITUTION AND STATUTES**

U.S. Const. amend. XVI .......... 19

1 U.S.C. § 7(a) .......... 18

I.R.C. Subtitle A .......... 1, 2, 3, 4, 5, 6,
.......... 7, 8, 9, 10, 11, 14

I.R.C. § 469(h)(2) .......... 26, 28

I.R.C. § 702 .......... 4

I.R.C. § 702(a) .......... 10

I.R.C. § 703 .......... 4

I.R.C. § 703(a) .......... 10

I.R.C. § 704 .......... 4

I.R.C. § 707(a) .......... 25, 27, 28

I.R.C. § 707(a)(2)(A) .......... 25

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

I.R.C. § 707(c) .......... 24, 25, 27, 28

I.R.C. § 1402* .......... 5, 6, 10

I.R.C. § 1402(a) .......... 9, 10, 34

I.R.C. § 1402(a)(10)(A) .......... 26, 28

I.R.C. § 1402(a)(13) .......... 2, 15, 20, 21, 24, 25, 26, 27, 28, 32, 34

I.R.C. Subtitle F .......... 6, 10, 11

I.R.C. § 6031(a) .......... 10, 11

I.R.C. § 6221 (1997) .......... 15

I.R.C. § 6226(f) (1997) .......... 3

I.R.C. § 6229(a) (2000) .......... 14

I.R.C. § 6229(a)(1) (2000) .......... 14

I.R.C. § 6231(a)(3) (2002) .......... 1, 2, 3, 4, 6, 7, 8, 9, 10

33 U.S.C. § 1311 .......... 7

Social Security Amendments Act of 1977, Pub. L. No. 95-216, 91 Stat. 1509 .......... 23, 24

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 .......... 1, 3, 4, 6, 7, 9, 11, 12, 15

Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 .......... 16, 31

Del. Code Ann. title 6, § 17-303 .......... 33

* The version of I.R.C. § 1402 that is in effect today is identical in all material respects to the version that was in effect for the 2016 and 2017 tax years.

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**REGULATIONS**

20 C.F.R. § 404.1080(b)(3) .......... 16, 30

26 C.F.R. § 301.6231(a)(3)–1 .......... 12

26 C.F.R. § 301.6231(a)(3)–1(b) .......... 12, 13

*Definition of Limited Partner for Self-Employment Tax Purposes*, 62 Fed. Reg. 1702 (Jan. 13, 1997) .......... 31

*Definition of Partnership Item*, 51 Fed. Reg. 13212 (Apr. 18, 1986) .......... 13

**OTHER AUTHORITIES**

143 Cong. Rec. 13,168 (June 27, 1997) .......... 31

*Black's Law Dictionary* (4th rev. ed. 1968) .......... 15, 16

Uniform Limited Partnership Act (Uniform Law Commission 1916) § 1 .......... 15, 16

§ 12(1) .......... 22, 33

Revised Uniform Limited Partnership Act (Uniform Law Commission 1976) § 101(7) .......... 15, 16

§ 303(a) .......... 15, 16, 22, 24

§ 303(b) (1) .......... 22, 24, 33, 34

SSA, *Program Operation Manual System (POMS)*, RS 01802.304 (rev. Sept. 15, 1997), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802304 .......... 29

## GLOSSARY

| | |
|---|---|
| Code, Internal Revenue Code, I.R.C., or Tax Code | Title 26 of the United States Code |
| Form 1065 | The IRS form that partnerships use to report their income |
| IRS | Internal Revenue Service |
| Limited partner exception | The income excepted from net earnings from self-employment under 26 U.S.C. § 1402(a)(13) |
| Net earnings from self-employment | The income subject to self-employment taxes as specified in 26 U.S.C. §§ 1401 and 1402 |
| Partnership item | The tax items defined in 26 U.S.C. § 6231(a)(3) (2002) that can be properly addressed in TEFRA proceedings |
| POMS | Program Operations Manual System, the Social Security Administration's operational handbook for its employees |
| SSA | Social Security Administration |
| TEFRA | Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 |
| 1916 ULPA | Uniform Limited Partnership Act (Uniform Law Commission 1916) |
| 1976 ULPA | Revised Uniform Limited Partnership Act (Uniform Law Commission 1976) |
| 1977 Act | Social Security Amendments Act of 1977, Pub. L. No. 95-216, 91 Stat. 1509 |

## INTRODUCTION

Tax law can be complex, especially when it involves reticulated statutory provisions and specialized jurisdictional regimes unlike those governing review of district court or federal agency decisions. So the IRS often takes advantage of that complexity and unfamiliarity to impute to Congress whatever purpose would most help it collect taxes. But "purpose must be grounded in text." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 789 (6th Cir. 2017). And the text here—which the IRS ignores or distorts—makes clear that the Tax Court both lacked jurisdiction and got the merits wrong.

*First*, under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) proceedings here, the IRS and Tax Court could determine only "partnership items"—issues "required to be taken into account for the partnership's taxable year under any provision of subtitle A" of the Tax Code and listed in a particular Treasury regulation. I.R.C. § 6231(a)(3) (2002). Nothing in subtitle A requires partnerships to take into account net earnings from self-employment in their annual tax reporting, and net earnings from self-employment isn't listed in the relevant Treasury regulation. So the IRS exceeded its authority, and the Tax Court exceeded its jurisdiction, in treating net earnings from self-employment as a partnership item.

*Second*, on the merits, the Tax Code exempts "the distributive share of any item of income … of a limited partner, as such," from self-employment taxes. I.R.C. § 1402(a)(13). As the Fifth Circuit recently confirmed in adopting the same arguments Soroban makes here and rejecting the Tax Court's contrary opinion in this case, a "'limited partner' is a partner in a limited partnership that has limited liability." *Sirius Solutions, L.L.L.P. v. Commissioner*, 165 F.4th 374, 376 (5th Cir. 2026). The IRS doesn't dispute that Soroban's limited partners meet that definition. So the IRS and Tax Court erred in concluding that their distributive shares of Soroban's income are subject to self-employment tax.

The IRS disputes those straightforward conclusions, but its arguments make no sense of the statutory text. On jurisdiction, the IRS says net earnings from self-employment is a partnership item because the statute defining it is in subtitle A of the Tax Code and the concept loosely depends on items a partnership must calculate. But that's not the test. The IRS identifies no "provision of subtitle A" that "require[s]" net earnings from self-employment "to be taken into account for the partnership's taxable year," I.R.C. § 6231(a)(3) (2002), and cannot locate it in the relevant Treasury regulation. The statute requires both; neither exists.

On the merits, the IRS claims that "limited partner" refers only to passive investors, and Soroban's limited partners don't qualify because they helped to manage the business as officers of the limited partnership appointed by the general partner. But as the Fifth Circuit explained, the IRS's position contravenes settled partnership law principles, the Tax Code, and longstanding agency guidance (including the IRS's), and it creates a tax planning nightmare Congress cannot have intended. *Sirius*, 165 F.4th at 378-83.

The IRS offers not a reading of TEFRA and the limited partner exception, but a purposivist distortion. Most telling is its about-face from its own guidance. "When the government … speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one." *Bittner v. United States*, 598 U.S. 85, 98 n.5 (2023). The Court should reverse the Tax Court's judgment.

## ARGUMENT

### I. The IRS and Tax Court could not use TEFRA partnership-level proceedings because net earnings from self-employment isn't a "partnership item."

The Tax Court's jurisdiction was limited to determining "partnership items." I.R.C. § 6226(f) (1997). To qualify as a partnership item, an issue must be (1) "required to be taken into account for the partnership's taxable year

under any provision of subtitle A" of the Tax Code; and (2) identified in "regulations prescribed by the Secretary [of the Treasury]" as "more appropriately determined at the partnership level." I.R.C. § 6231(a)(3) (2002). Net earnings from self-employment meets neither requirement.

### A. Net earnings from self-employment doesn't meet the first requirement of TEFRA's partnership-item test.

#### 1. No "provision of subtitle A" "require[s]" net earnings from self-employment "to be taken into account for the partnership's taxable year."

Nothing in subtitle A requires partnerships to calculate the amount of their partners' distributions subject to self-employment taxes. Indeed, the subtitle A provisions defining items a partnership must determine don't even mention net earnings from self-employment. *See* I.R.C. §§ 702, 703, 704. Net earnings from self-employment thus isn't a partnership item. *See Monti v. United States*, 223 F.3d 76, 82 (2d Cir. 2000); *Field v. United States*, 328 F.3d 58, 59 (2d Cir. 2003).

That makes sense. Partnership items are supposed to be "relevant to the partnership as a whole." *United States v. Woods*, 571 U.S. 31, 39 (2013). But net earnings from-employment refers to an individual partner's business income. It turns on facts specific to that partner (Soroban Br. 35-37), and

calculating it for one partner doesn't affect the other partners or the partnership as a whole. So "there is no apparent reason why" it should be dealt with "at the partnership level." *Monti*, 223 F.3d at 82.

### 2. The IRS's counterarguments lack merit.

None of the IRS's arguments shows that subtitle A requires partnerships to take net earnings from self-employment into account in their annual tax reporting.

#### a. Section 1402's location in subtitle A doesn't make net earnings from self-employment a partnership item.

The IRS leads with a self-refuting argument. It insists that net earnings from self-employment is a partnership item because § 1402—the provision that defines the term—is "locat[ed] in subtitle A." Br. 20. It simultaneously insists that "location alone" isn't dispositive and that an item can be a partnership item "even in the absence of an explicit subtitle A reference." *Id.* Thus, says the IRS, § 1402's location in subtitle A both "removes any doubt that net earnings from self-employment" is a "partnership item" and isn't relevant to that determination. *Id.* Even Alexander couldn't cut that knot.

To start, § 1402's location in subtitle A doesn't suffice. TEFRA defines a partnership item as an item "*required to be taken into account* for the partnership's taxable year *under any provision of subtitle A*" (provided the item is also specified in the accompanying Treasury regulation). I.R.C. § 6231(a)(3) (2002) (emphases added). The italicized language means what it says. Indeed, in both *Monti*, 223 F.3d at 82, and *Field*, 328 F.3d at 59, this Court held that provisions in subtitle F did not create partnership items because they weren't located in subtitle A. The IRS's suggestion (Br. 20) that an item can count as a partnership item even if nothing in subtitle A makes it part of the partnership's annual tax reporting thus contradicts the statute. And § 1402, while located in subtitle A, doesn't require net earnings from self-employment to be taken into account for the partner's taxable year, so it cannot be a partnership item.

The IRS's reliance (Br. 20) on the Eighth Circuit's decision in *RJT Investments X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007), fails. There, the court held that any items "necessary for income tax calculation purposes" count as TEFRA partnership items. *Id.* at 736. The court reasoned that because § 6231(a)(3) (2002) used the words "under subtitle A" rather than "by … subtitle A," Congress intended the definition of "partnership item"

to encompass any item "relevan[t] or related[]" to calculation of income tax under subtitle A "even in the absence of an explicit subtitle A reference." *Id.* But the Supreme Court, unsurprisingly, has since held that the word "under," when paired with a statute, "is most naturally read to mean that the … limitation" must occur "'pursuant to' or 'by reason of the authority of'" the referenced statute. *National Ass'n of Manufacturers v. Department of Defense*, 583 U.S. 109, 124 (2018) (*NAM*). In *NAM*, the Court thus held that a regulation defining a term in the Clean Water Act wasn't promulgated "under [33 U.S.C. §] 1311" because nothing in § 1311 "authorize[d] the EPA to define" that term. *Id.* (emphasis omitted).

Here, TEFRA specifies that partnership items must be "required to be taken into account for the partnership's taxable year under … subtitle A," I.R.C. § 6231(a)(3) (2002), meaning, "'pursuant to' or 'by reason of the authority of'" subtitle A. *NAM*, 583 U.S. at 124. Provisions outside subtitle A thus cannot create partnership items. The Eighth Circuit's contrary reasoning wrote the subtitle A language out of the statute.

#### b. The Federal Circuit's *Keener* decision under *Chevron* doesn't help the government.

The IRS's reliance (Br. 19-20) on *Keener v. United States*, 551 F.3d 1358 (Fed. Cir. 2009), is misplaced. *Keener* gave *Chevron* deference to the IRS's position that "a 'partnership item' [is] anything that affects … the partnership's taxable year." 551 F.3d at 1363. The court reasoned that "the statute's phrase 'under any provision of subtitle A' modifies … 'the partnership's taxable year,'" which somehow "permits treating, as partnership items, any and all legal issues that influence the treatment of partnership items arising under subtitle A," including "items outside subtitle A." *Id.* That reasoning fails, and after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), it has no persuasive value.

*First*, *Keener*'s interpretation is wrong under the statute's plain text. "[U]nder any provision of subtitle A" is an adverbial phrase that modifies the verb "required," meaning "subtitle A" must "require[]" the item "to be taken into account for the partnership's taxable year." I.R.C. § 6231(a)(3) (2002). That is exactly how this Court read § 6231(a)(3) in *Monti*, 223 F.3d at 82, and *Field*, 328 F.3d at 59. *Keener*'s contrary reading makes no sense.

*Second*, *Keener* was a *Chevron* deference case. While it was likely incorrect even under *Chevron*, it certainly has no value now that the Supreme Court has instructed courts to "determine the best reading of the statute," rather than deferring to the government. *Loper Bright*, 603 U.S. at 400. Perhaps that's why the IRS doesn't ask the Court to adopt *Keener*'s interpretation of TEFRA.

*Third*, *Keener* doesn't help the government even on its own terms. Net earnings from self-employment is used to determine individual partners' self-employment taxes. It doesn't affect "*the partnership*'s taxable year." *Keener*, 551 F.3d at 1363 (emphasis added).

**c. A partner's need to calculate his distributive share of partnership income doesn't make net earnings from self-employment a partnership item.**

The IRS next argues (Br. 26) that net earnings from self-employment counts as a partnership item because a partner must know the partnership's income to determine "his distributive share" of that income. I.R.C. § 1402(a). But so what? Partners' use of the partnership's income to compute their taxes fails the statutory test, because it doesn't mean that "subtitle A" "require[s]" partners' net earnings from self-employment "to be taken into account for the partnership's taxable year." I.R.C. § 6231(a)(3) (2002).

**d. The IRS otherwise fails to identify any statutory text in subtitle A that requires partnerships to take into account net earnings from self-employment in the partnership's tax reporting.**

The IRS claims that "§ 1402(a) directs partnerships to compute their partners' net earnings from self-employment, applying any relevant exceptions." Br. 22. But that's not what § 1402(a) says. With emphasis added to the words the IRS ignores, § 1402 defines net earnings from self-employment as "the gross income derived by *an individual* from any trade or business carried on by such *individual* … plus *his* distributive share" of partnership income or losses. I.R.C. § 1402(a). Nothing in § 1402(a) requires *the partnership* to compute anything, much less take into account the amount of the partners' income subject to self-employment taxes as part of "the partnership's taxable year." I.R.C. § 6231(a)(3) (2002).

The IRS's references (Br. 22-23) to I.R.C. §§ 702(a), 703(a), and 6031(a) are equally unavailing. As the IRS concedes, §§ 702(a) and 703(a) "require the partnership to compute its own taxable income and its partners' distributive shares of income and other items." Br. 23. They don't require the partnership to compute the partners' net earnings from self-employment. And while § 6031(a) requires partnerships to provide any "information …

for the purpose of carrying out the provisions of subtitle A as the [Treasury] Secretary may … prescribe," I.R.C. § 6031(a)—which could include requiring the partnership to report its partners' net earnings from self-employment—§ 6031(a) is located in subtitle F, and thus cannot create partnership items. *See Monti*, 223 F.3d at 82; *Field*, 328 F.3d at 59.

**e. The IRS's policy arguments lack merit.**

Unable to satisfy TEFRA's plain text, the IRS retreats to the notion that whatever makes tax collection easier must be the law. It argues that adjusting net earnings from self-employment in partner-level proceedings "would be inefficient and could lead to inconsistent results for partners of the same partnership." Br. 31. But what matters are "the statutory terms Congress has given us." *Stanley v. City of Sanford*, 606 U.S. 46, 52 (2025). "[P]olicy arguments" "cannot supersede the clear statutory text." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 757-58 (2023); *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001).

The IRS's policy concerns also lack merit on their own terms. Net earnings from self-employment turns on partner-specific facts about the partner's income. Soroban Br. 35-37. So it's hard to see how adjusting it in partner-level proceedings could produce inconsistent results.

The IRS counters (Br. 30) that the limited partner exception requires analyzing numerous facts about partnership structure to determine the partners' roles. But that would be true only if the exception incorporated the IRS's amorphous passive investor test, rather than applying to any partner in a limited partnership with limited liability. As the Fifth Circuit recently held, it does not. *Sirius*, 165 F.4th at 388; *infra* pp. 15-35. Properly construed, the limited partner exception requires only a handful of simple, partner-specific inquiries.

**B. Net earnings from self-employment doesn't meet the second requirement of TEFRA's partnership-item test.**

**1. Net earnings from self-employment doesn't appear in Treasury's "regulations" identifying items "more appropriately determined at the partnership level than at the partner level."**

Net earnings from self-employment also flunks part two of the partnership-item test. An item isn't a partnership item if it's "not on the list" of partnership items in 26 C.F.R. § 301.6231(a)(3)–1. *Monti*, 223 F.3d at 82; *Field*, 328 F.3d at 59. And net earnings from self-employment isn't on that list.

**2. The IRS's counterarguments lack merit.**

**a.** The IRS claims net earnings from self-employment is a partnership item under 26 C.F.R. § 301.6231(a)(3)–1(b) because it "is a

'characterization' of the partnership's income" in that "it distinguishes income that is" subject to self-employment taxes "from income that is not." Br. 25. The IRS misstates the regulation. Section 301.6231(a)(3)–1(b) provides that "[t]he term 'partnership item' includes … the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Examples in the regulation explain that this means things like the "*partnership's* method of accounting, taxable year, and inventory method." *Id.* (emphasis added). Put differently, the regulation says the IRS can review facts and determinations necessary for determining a partnership item. *See Definition of Partnership Item*, 51 Fed. Reg. 13212, 13213 (Apr. 18, 1986). It doesn't convert every downstream characterization of money that originated from the partnership into a partnership item. Because net earnings from self-employment isn't an input for some other partnership item like partnership income, § 301.6231(a)(3)–1(b) doesn't allow the IRS to adjust it in partnership-level proceedings.

**b.** The IRS claims (Br. 27) that not recognizing net earnings from self-employment as a partnership item would contradict *Chimblo v. Commissioner*, 177 F.3d 119, 125 (2d Cir. 1999), and other decisions holding that former I.R.C. § 6229(a)(1) (2000) is a partnership item. Not so.

Section 6229(a) (2000) extended the statute of limitations "for assessing any tax imposed by subtitle A … attributable to any partnership item" until three years after certain trigger dates. *See AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 (Fed. Cir. 2007). In *Chimblo*, the Tax Court disallowed certain losses and tax credits—each a partnership item—that were claimed by a partnership. 177 F.3d at 122. After recalculating the partnership's income, the IRS assessed tax deficiencies against the individual partners. *Id.* The partners then argued that the penalties were time-barred because the IRS's adjustment of the relevant partnership items had been untimely. *Id.* at 123. This Court held that the limitations issue should be treated as a partnership item. *Id.* at 125. That decision was correct because whether the IRS's adjustment of the partnership's returns was time-barred was a "legal … determination[] that underlie[d] the determination" of partnership items, including "the amount" and "timing … of items of … credit … [and]

loss." 26 C.F.R. § 301.6231(a)(3)–1(b). TEFRA itself confirmed as much, specifying that "any penalty … which relates to an adjustment to a partnership item" had to "be determined at the partnership level." I.R.C. § 6221 (1997).

By contrast, net earnings from self-employment is not itself a partnership item, and computing it is not necessary to determine any partnership item. Recognizing that is consistent with *Chimblo* and related cases.

## II. The limited partner exception exempts Soroban's limited partners' distributive shares of Soroban's income from self-employment tax.

The limited partner exception excludes from net earnings from self-employment "the distributive share of any item of income or loss of a limited partner, as such." I.R.C. § 1402(a)(13). Soroban's limited partners qualify for this exemption because they are partners in a limited partnership with limited liability.

### A. Soroban's limited partners qualify for the limited partner exception because they are partners in a limited partnership with limited liability.

**1.** As the Fifth Circuit recently explained, when § 1402(a)(13) was enacted in 1977, the term "limited partner" referred to partners in a limited partnership with limited liability. *Sirius*, 165 F.4th at 376-81. That is how contemporary dictionaries and widely adopted model legislation defined the

term. *See, e.g.*, *Limited Partnership*, *Black's Law Dictionary* (4th rev. ed. 1968); 1976 ULPA §§ 101(7), 303(a); 1916 ULPA § 1; Soroban Br. 44-45. It is also how the SSA and (before this case) the IRS defined it for decades. *See, e.g.*, 20 C.F.R. § 404.1080(b)(3) (SSA); Tax Ct. Doc. 13, Ex. A at 2 (IRS instructions for 2016); Soroban Br. 48-49. And Congress shot down a prior IRS attempt to deviate from that definition. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 935, 111 Stat. 788, 882; Soroban Br. 49-51.

**2.** Soroban's limited partners fit the definition. The IRS doesn't contest that they are partners in a limited partnership with limited liability. Soroban Br. 38-41. The IRS thus was required to exclude their distributive shares of Soroban's income from their net earnings from self-employment.

### B. The IRS's arguments are meritless.

The IRS contends (Br. 36-45) that Soroban and the Fifth Circuit's reading conflicts with background tax principles. In its view, in 1977, only passive investors would have qualified as limited partners, and Soroban's limited partners aren't passive investors.

Those arguments fail. Applying the plain meaning of the term "limited partner" as it was understood in 1977 doesn't contradict background tax law

principles. The passive investor standard, in contrast, does. So the IRS's argument (Br. 74-77) that Soroban's partners do not satisfy the passive investor standard on the facts found by the Tax Court fails because the IRS's standard is the wrong legal test. There is no dispute that Soroban's partners were limited partners because they had limited liability under state law, and that is all the statute requires.

#### 1. Soroban's and the Fifth Circuit's definition of "limited partner" doesn't conflict with background principles of tax law.

Contrary to the IRS's arguments, Soroban's "interpretation is entirely consistent with" relevant "tax principles," as the Fifth Circuit has held. *Sirius*, 165 F.4th at 385.

##### a. Soroban and the Fifth Circuit's plain reading doesn't subordinate the Tax Code to state law.

The IRS claims (Br. 36-41) Soroban and the Fifth Circuit's definition of "limited partner" is wrong because whether partners enjoyed limited liability turns on state law, and courts cannot "turn to state law to interpret or define words in the Internal Revenue Code." That's wrong as a matter of both tax law and federal law more generally. As the decisions the IRS itself cites recognize, "[s]tate law may control … when the federal taxing act, by

express language or necessary implication, makes its own operation dependent upon state law." *Burnet v. Harmel*, 287 U.S. 103, 110 (1932); *Heiner v. Mellon*, 304 U.S. 271, 279 (1938).

Many Tax Code concepts turn on state law. Start with the federal tax benefits for married couples. *See, e.g.*, *United States v. Windsor*, 570 U.S. 744, 753 (2013). The federal definition of marriage turns on a marital status under state law: "an individual shall be considered married if that individual's marriage is between 2 individuals and is valid in the State where the marriage was entered into." 1 U.S.C. § 7(a). Other examples abound in both tax law and federal law more generally. *See, e.g.*, *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985) (property tax turns on taxpayer's property interests under state law); *Sirius*, 165 F.4th at 385; Soroban Br. 66-68.

Nothing the IRS cites (Br. 37-39) suggests otherwise. To be sure, conflicting state law cannot *override* federal tax law. So in *Heiner*, for example, two partners couldn't be treated as trustees because they didn't meet the federal trustee definition, even though they may have met the Pennsylvania definition. 304 U.S. at 279. In *Burnet*, royalties couldn't be treated as capital gains because they didn't meet the federal definition, even though they met the Texas definition. 287 U.S. at 110. In *Morgan v. Commissioner*, 309 U.S. 78,

79 & n.1 (1940), property could be taxed because it passed into the decedent's estate under a "general power of appointment" as that term was used in federal law, even if Wisconsin law might have treated it differently. And in *Commissioner v. Tower*, 327 U.S. 280, 286-88 (1946), a couple's business arrangement didn't meet the federal definition of a partnership even if it qualified under Michigan law. None of those decisions held that federal tax consequences cannot turn on the taxpayer's state-law rights or status.

The other decisions the IRS cites are even farther off-base. *Moore v. United States*, 602 U.S. 572, 585 (2024), and *Burk-Waggoner Oil Ass'n v. Hopkins*, 269 U.S. 110, 114 (1925), held that particular income taxes didn't violate the Sixteenth Amendment. And *Commissioner v. Culbertson*, 337 U.S. 733, 747 (1949), held that the Tax Court applied the wrong legal test in determining whether a particular business arrangement was a partnership under the definition of partnership in a federal revenue statute. None of those decisions helps the IRS.

### b. Soroban and the Fifth Circuit's plain reading doesn't make the limited partner exception turn on "mere labels."

The IRS next argues that Soroban and the Fifth Circuit's interpretation violates the principle that "tax law is concerned with economic realities" rather than state law "labels." Br. 41-43. But a person doesn't become "a 'limited partner' under § 1402(a)(13) simply because a particular State calls him such"—a state could not, for example, recharacterize a sole proprietor as a limited partner. *Sirius*, 165 F.4th at 384. Soroban's limited partners qualify for the limited partnership exception because they meet the qualifications for that exception under federal law, not because "Delaware labels" them "as limited partners." IRS Br. 43. For that reason, the IRS gets nowhere by pointing (Br. 42) to *PPL Corp. v. Commissioner*, 569 U.S. 329 (2013). There, the Supreme Court rejected the IRS's argument that it needed to follow the UK government's characterization of a UK tax as a tax on value when the underlying algebra showed that the tax was a tax on profits. *Id.* at 336-41. That's consistent with the point here: federal law defines a "limited partner" as a partner generally afforded limited liability, and then looks to state law to determine whether a partner has that status. That's a question of substance and economic reality, not labels.

#### c. Soroban and the Fifth Circuit's plain reading doesn't undermine uniformity of federal law.

The IRS contends (Br. 43-45) that Soroban and the Fifth Circuit's reading violates the principle that tax law should be uniform nationwide. Not true. "[B]ecause the federal exception is explicitly tethered to state interests and rights, if there are any differences among the States in creating these interests and rights, there is no lack of uniformity in the federal law." *Sirius*, 165 F.4th at 385 (emphasis omitted). Further, "most States have adopted uniform limited partnership acts today, so there is very little risk of" inconsistent outcomes. *Id.*

### 2. The passive investor standard contravenes § 1402(a)(13).

According to the IRS, the limited partner exception turns on a passive investor standard. That's wrong. The IRS's passive investor standard contradicts blackletter partnership law principles, textual indicators in the Tax Code, and longstanding agency guidance. No wonder Congress rejected the IRS's attempt to impose a similar test in 1997.

#### a. In 1977, it was settled law that limited partners could participate in the business and didn't need to be passive investors.

***i.*** When Congress "borrows terms of art," like limited partner, courts presume that Congress "kn[e]w[] and adopt[ed] the cluster of ideas

that were attached to each borrowed word." *Morissette v. United States*, 342 U.S. 246, 263 (1952). That principle dooms the IRS's passive investor standard. When Congress adopted the limited partner exception, it was settled law that limited partners didn't need to be passive investors. Rather, they could and often did play significant roles in the business. For example:

- The widely adopted 1916 Uniform Limited Partnership Act recognized that a "person may be a general partner and a limited partner in the same partnership at the same time." 1916 ULPA § 12(1).
- The 1976 Revised Uniform Limited Partnership Act gave a limited partner limited liability "unless he is also a general partner or … he takes part in the control of the business," in which case he would maintain his limited liability except as to persons who knew he was a controller. 1976 ULPA § 303(a).
- The 1976 ULPA recognized a "limited partner does not participate in the control of the business … solely by … being … an agent or employee of the limited partnership or of a general partner." *Id.* § 303(b)(1).

All those provisions contemplate that a limited partner could play a substantial role in the business, either by acting as a general partner or working for the general partner, without losing their limited partner status.

Caselaw points the same way. When Congress enacted the limited partner exception, several state high courts had held that limited partners

could play a significant role in the business without losing their limited partner status. *Frigidaire Sales Corp. v. Union Properties, Inc.*, 562 P.2d 244, 245-46 (Wash. 1977), for example, held that limited partners didn't lose limited liability just "because they exercised the day-to-day control and management" over the corporation that served as the partnership's general partner. Other decisions reached similar results. *E.g.*, *Grainger v. Antoyan*, 313 P.2d 848, 853 (Cal. 1957) (en banc); *Silvola v. Rowlett*, 272 P.2d 287, 290-91 (Colo. 1954) (en banc); Soroban Br. 56. In short, the background principles Congress incorporated didn't require limited partners to be passive investors.

***ii.*** The IRS's responses lack merit.

*First*, the IRS claims (Br. 65) that the existence of dual-status partners doesn't undermine the passive investor test because dual-status partners have broader liability exposure than limited partners. But the IRS misses the point: Because someone can be a general and limited partner at the same time, Congress couldn't have expected that only passive investors could be limited partners.

*Second*, the IRS claims (Br. 50) that the Court should ignore the 1976 ULPA because it wasn't adopted by most states until the 1980s, after Congress enacted the limited partner exception. But the 1976 ULPA would have

been part of "the cluster of ideas that were attached to" the term 'limited partner' when Congress "borrowed" it for the 1977 Act, *Morissette*, 342 U.S. at 263, particularly since 49 states had adopted its predecessor. *See Allright Missouri, Inc. v. Billeter*, 829 F.2d 631, 636 (8th Cir. 1987). Regardless, the IRS doesn't dispute that by 1977, a limited partner could significantly participate in the business without losing his limited partner status. 1976 ULPA § 303(a), (b)(1). It couldn't, given the numerous pre-1977 cases recognizing that same principle. *Supra* pp. 22-23.

*Third*, the IRS argues (Br. 49-50) that *Frigidaire*, *Grainer*, and *Silvola* are distinguishable because the partners there weren't as important to their partnerships as Soroban's limited partners were to Soroban. The IRS again misses the point. If only "those with an interest generally akin to passive investment" could be limited partners in 1977, Br. 52-53, then those decisions would have come out differently. The IRS has no response.

#### b. Other textual indicators show that Congress didn't think only passive investors could be limited partners.

***i.*** Other clues in the Tax Code show that Congress didn't intend for the "limited partner[s]" referenced in § 1402(a)(13) to be limited to passive investors. For instance, the limited partner exception carves out and

subjects to self-employment tax "guaranteed payments described in section 707(c) to [a] partner for services actually rendered to or on behalf of the partnership." I.R.C. § 1402(a)(13). That carveout would be superfluous if the limited partner exception were limited to passive investors, because passive investors couldn't normally "render[]" "services … to or on behalf of the partnership." *Id.*

What's more, the carveout references § 707(c), which covers payments the partner is promised to receive regardless of whether the partnership is profitable, rather than § 707(a), which gives the IRS authority to recharacterize distributions to partners as payments for a service (akin to a salary or bonus) if that is what they are in substance. *Compare* I.R.C. § 707(c); *with* I.R.C. § 707(a)(2)(A); *see also* Soroban Br. 59-61. Adopting the passive investor standard would make that choice meaningless, since it would effectively give the IRS the power to recharacterize limited partner distributions as salaries solely for § 1402(a)(13) even though Congress chose not to incorporate § 707(a) into the limited partner exception.

Further, Congress explicitly adopted passive investor standards elsewhere in the Tax Code, making clear that not adopting the test in the limited partner exception was intentional. *See, e.g.*, *City & County of San Francisco v.*

*EPA*, 604 U.S. 334, 344 (2025). For example, in I.R.C. § 1402(a)(10)(A), Congress provided that a retired partner's distributions are exempt from net earnings from self-employment if he "rendered no services with respect to any trade or business carried on by such partnership." And I.R.C. § 469(h)(2) provides that "no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates" for purposes of claiming certain losses and tax credits. *See also Sirius*, 165 F.4th at 382 (collecting three more examples). Congress's choice not to use similar language in § 1402(a)(13) shows that Congress didn't intend to restrict the limited partner exception to passive investors.

***ii.*** The IRS's responses are unpersuasive.

*First*, the IRS argues (Br. 62) that adopting the passive investor standard wouldn't make the guaranteed payment carveout superfluous because a partner could engage in "some participation" in the business while retaining his limited partner status, as long as the participation was "not too much—as determined by [the IRS]." *Sirius*, 165 F.4th at 382. That makes no sense. The IRS spends most of its brief arguing that when Congress enacted the limited partner exception, "it had in mind the traditional concept of a limited partner as one who generally functions as a passive investor." Br. 54.

That's not true, as discussed. *Supra* pp. 21-26. But if Congress *had* meant to cabin the limited partner exception to passive investors, then the IRS would be violating the statute by allowing partners who participated in the business to claim the limited partner exception.

The test would also be unworkable. If limited partner status turns on how the IRS chooses "to balance [the] infinite number of factors" relevant to its passive investor test, "how are thousands of limited partners across the country to determine ex ante what their tax liability will be?" *Sirius*, 165 F.4th at 383. "The short answer: Only with the help of an army of lawyers and accountants—and a whole lot of luck." *Id.* While the IRS notes (Br. 76-77) that tax law contains other tests that turn on a taxpayer's particular circumstances, none of its examples are as amorphous as its passive investor approach, which lacks any basis in the statutory text.

*Second*, the IRS asserts that the passive investor standard wouldn't negate Congress's decision to reference § 707(c) rather than § 707(a) in the guaranteed payment carveout because "distributive shares do not include § 707(a) payments, so § 1402(a)(13) need not address them." Br. 64 n.9. That response ducks the issue. The passive investor standard effectively allows

the IRS to recharacterize limited partner distributions as payments for services rendered to the partnership. If Congress wanted the IRS to have that power, it would have referenced § 707(a), which contemplates such recharacterizations. Congress's choice to reference the narrower § 707(c) instead is strong evidence that it didn't envision a free-wheeling inquiry into a partner's involvement with the business.

*Third*, the IRS argues (Br. 61-69) that other provisions explicitly adopting the passive investor standard, like §§ 1402(a)(10)(A) and 469(h)(2), don't undermine its position because those provisions were enacted at different times and for different purposes. So what? Congress's ability and choice to write the passive investor limitation into other partner-specific tax provisions, but not § 1402(a)(13), is strong evidence that Congress didn't intend for that limitation to apply to § 1402(a)(13). *See Sirius*, 165 F.4th at 382. And *Marx v. General Revenue Corp.*, 568 U.S. 371, 384 (2013)—which the IRS embraces (Br. 67)—confirms that even when statutory provisions were enacted at different times and in different contexts, the inference remains that Congress intends differences in wording to signify differences in meaning.

#### c. The SSA and (until recently) the IRS have not understood limited partners to be passive investors.

***i.*** Longstanding agency guidance also rejects the passive investor standard. Soroban Br. 45-49, 63-64. The SSA's POMS handbook warns that the "terms 'silent partner' and 'inactive partner' are sometimes confused with limited partner," but "[t]hey are not the same." RS 01802.304, (rev. Sept. 15, 1997), https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802304. And for the tax years at issue here, the IRS's instructions on who qualifies for the limited partner exception state that "[l]imited partners treat as self-employment earnings only guaranteed payments for services they actually rendered to, or on behalf of, the partnership to the extent that those payments are payment for those services." Tax Ct. Doc. 13, Ex. A at 34; Ex. B at 36. So even the IRS acknowledged that limited partners include partners who provide services to the business. The government's unexplained about-face is another reason to doubt its passive investor standard. *See Sirius*, 165 F.4th at 379-81.

***ii.*** The IRS's responses lack merit.

*First*, the IRS notes (Br. 69) that its and the SSA's guidance lack the force of law, so the Court can ignore them. But the Supreme Court rejected that exact argument in *Bittner*. While "guidance documents" aren't binding,

when "the government has repeatedly issued guidance to the public at odds with the interpretation it now asks [the Court] to adopt … surely that counts as one more reason yet to question whether its current position represents the best view of the law." 598 U.S. at 97.

*Second*, the IRS says its instructions somehow gave notice of the passive investor test because they explained that "*[g]enerally*, a limited partner's share of partnership income (loss) isn't included." Br. 70-71. But as the Fifth Circuit explained in rejecting this same argument, "*[t]he very next sentence* … demonstrates that the word 'generally' refers only to the carve-out for guaranteed payments." *Sirius*, 165 F.4th at 386.

*Third*, the IRS references (Br. 71) language in SSA regulations saying that "[g]enerally, [a partner] will not have to perform services in the operation of, or participate in the control of, the business" to qualify as a limited partner. 20 C.F.R. § 404.1080(b)(3). The IRS says that means limited partners cannot participate in control of the business. But § 404.1080(b)(3) "does not say that [limited] partners cannot or generally do not perform services for the partnership." *Sirius*, 165 F.4th at 381. "Instead, it indicates that there is no requirement that one must perform services for the partnership to be a

'limited partner.'" *Id.* "So this statement" doesn't "support[] the … passive-investor interpretation." *Id.*

**d. Congress's rejection of the passive investor standard confirms it's wrong.**

Congress has also rejected the passive investor approach. In 1997, the IRS proposed regulations calling for a "functional approach" to determining limited partner status that would have excluded partners who worked too much for the business. *See Definition of Limited Partner for Self-Employment Tax Purposes*, 62 Fed. Reg. 1702, 1704 (Jan. 13, 1997). Six months later, the Senate passed a resolution expressing "concern[] that the proposed change … would effectively change the law administratively without congressional action." 143 Cong. Rec. 13,168 (June 27, 1997). Congress then enacted a law temporarily blocking the regulation, 111 Stat. 788, 882, and the IRS abandoned it.

The IRS says (Br. 73-74) that its 1997 proposed regulations were "very different" from its current test. Not so. The 1997 proposed regulations called for a "functional approach" capping the hours a partner could work while maintaining limited partner status. *See* 62 Fed. Reg. 1703-04. That discredited

approach mirrors the test the IRS urges here, and any minor differences only underscore that its reading doesn't reflect the statute Congress wrote.

### 3. The IRS's justifications for the passive investor test don't withstand scrutiny.

The IRS doesn't bother defending the Tax Court's reasoning that the words "as such" in § 1402(a)(13) require the passive investor test. "And for good reason. It fails." *See Sirius*, 165 F.4th at 383; Soroban Br. 64-66. Instead, the IRS invokes its view of principles of limited partnership law, plus purposivism from legislative history. But partnership law in 1977 didn't require limited partners to be passive investors. Nor is the passive investor test necessary to advance the limited partner exception's purpose (and legislative-history-purposivism isn't legitimate statutory interpretation anyway).

#### a. State law restrictions on limited liability don't justify the passive investor standard.

The IRS claims (Br. 46-54) "limited partner" refers only to passive investors because limited partners could lose their limited liability protections if they participated in control of the business. That argument fails.

To start, the IRS conflates "restrictions on" limited liability with "what it *means* to be a limited partner." *Sirius*, 165 F.4th at 385. Even though a limited partner could incur general liability by acting like a general partner, he

remained a limited partner, just with qualified limited liability. Soroban Br. 54-55. Indeed, by 1916, it was well-established that person could be a general and limited partner at the same time. 1916 ULPA § 12(1) (1916). That couldn't be true if a partner lost his limited partner status merely by exposing himself to general partner liability.

The IRS collects (Br. 46-54) various sources observing that limited partners were often passive investors, *see, e.g.*, *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989), and that limited partners who controlled the business were not (and are not today) completely shielded from liability, *see e.g.*, Del. Code Ann. title 6, § 17-303. But those sources don't say that someone couldn't be a limited partner if they participated in the business, because limited partner status has never turned on whether a partner exceeded the conditions of his limited liability. *Sirius*, 165 F.4th at 385.

Even if limited partner status hinged on whether the partner participated in control of the business, that wouldn't justify the passive investor standard. It was well-settled by 1977 that a "limited partner does not participate in the control of the business … solely by … being … an agent or employee of the limited partnership or of a general partner." 1976 ULPA

§ 303(b)(1); *Frigidaire*, 562 P.2d at 245-46; *supra* pp. 22-24. So a partner could do significant work for the business without being considered a controller.

**b. The limited partner exception's purpose, structure, and legislative history don't support the IRS's passive investor standard.**

Citing legislative history, the IRS says (Br. 56-57, 67-69) Congress enacted the limited partner exception to prevent pensioned workers from using passive investment income to qualify for Social Security benefits. The IRS also notes (Br. 54-56) that other exceptions in § 1402(a) exclude passive income from net earnings from self-employment. It thus argues that the Court should adopt the passive investor standard to prevent partners from using passive income to qualify for Social Security benefits.

But the Court must apply the exception's plain text, *see Loper Bright*, 603 U.S. at 409, not what the IRS thinks would best "advance [the] statute's putative goal," *Stanley*, 606 U.S. at 58. Congress exempted "the distributive share of any item of income or loss of a *limited partner*" from self-employment taxes. I.R.C. § 1402(a)(13) (emphasis added). In 1977, the term "limited partner" wasn't confined to passive investors. Soroban Br. 42-51. So the Court cannot treat "limited partner" as covering only passive investors just because the IRS thinks that would better match the statute's purpose. "[W]hat

Congress (possibly) expected matters much less than what it (certainly) enacted." *Stanley*, 606 U.S. at 58. Moreover, applying the exception to all limited partners still ensures that partners cannot use passive limited partner distributions to qualify for Social Security benefits. So Soroban and the Fifth Circuit's interpretation fully respects Congress's purpose.

## CONCLUSION

The Court should reverse the Tax Court's judgment.

Dated: April 29, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
*Counsel of Record*
Parker Rider-Longmaid
Armando Gomez
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Kathleen Gregor
Elizabeth Smith
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

Raza Rasheed
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Ste. 200N
Los Angeles, CA 90067

*Counsel for Petitioners-Appellants Soroban Capital Partners LP & Soroban Capital Partners GP LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) and Local Rule 32.1(a)(4)(B) because, as calculated by Microsoft Word, it contains 6,995 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: April 29, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners-Appellants Soroban Capital Partners LP & Soroban Capital Partners GP LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 29, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners-Appellants Soroban Capital Partners LP & Soroban Capital Partners GP LLC*